## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ELM HAVEN CONSTRUCTION, L.P., | : | CIVIL NO. 3:01-CV-01307 (WIG) |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| NERI CONSTRUCTION, LLC, | : | May 18, 2005 |
| Defendant. | : |  |

## THE PARTIES' JOINT TRIAL MEMORANDUM

Pursuant to the Court's Bench Trial Order dated July 14, 2004, the parties hereby submit this Joint Trial Memorandum.

    1.    <u>Trial Counsel</u>.

        For the Plaintiff:        Thomas G. Librizzi
Pepe & Hazard LLP
Goodwin Square
225 Asylum Street
Hartford, CT 06103-4302
(860) 522-5175

        For the Defendant:      John J. O'Brien, Jr.
Law Offices of Peck & O'Brien, P.C.
433 Silas Deane Highway
Wethersfield, CT 06109-2115
(860) 563-5500

1

2.    Jurisdiction. Diversity jurisdiction pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and because there is complete diversity of citizenship between the parties.

3.    Jury - Nonjury. This is a court case.

4 A.    Nature of Case (Plaintiff). The cause of action alleged by the Plaintiff, Elm Haven Construction, L.P. ("Elm Haven"), and the relief sought is as follows:

Breach of construction subcontract against Defendant Neri Construction, LLC ("Neri"). Elm Haven entered into a subcontract ("the Subcontract") with Neri, pursuant to which Neri agreed to provide materials, tools, equipment, and labor necessary to complete the site work on a residential public housing complex construction project known as Elm Haven Hope VI Urban Revitalization Housing Project (the "Project") in New Haven, Connecticut. Elm Haven claims that Neri breached the Subcontract by, among other things:

a.    failing to complete the Work;

b.    providing defective workmanship;

c.    failing to perform the Work in compliance with the plans and specifications;

2

d.    failing to pay its subcontractors and suppliers;

e.    failing to perform the Work in accordance with the Project's construction schedule, as updated from time to time during the course of the Project, and to otherwise comply with Elm Haven's scheduling requirements;

f.    failing to provide adequate and properly trained manpower;

g.    failing to submit proper and adequate shop drawings in a timely manner;

h.    failing to coordinate its Work with the work of other subcontractors; and

i.    failing to provide proper scheduling and billing information as requested by Elm Haven.

As a result of Neri's breaches as outlined above, Elm Haven exercised its contractual rights and, at various points in time, arranged for other contractors and vendors to provide labor, materials and equipment necessary to perform Neri's work, and withheld payments from Neri. The relief sought is damages in the amount of Three Hundred Fifty Thousand One Hundred Twenty-Six Dollars ($350,126), exclusive of interest and costs.

4 B.    Nature of Case (Defendant).

Defendant has asserted a Counterclaim against the Plaintiff and a third party claim against American Casualty Company of Reading, Pennsylvania. Defendant's Counterclaim against Plaintiff includes: Count One. Defendant alleges that Plaintiff

3

breached the Contract in that it failed to fully compensate Defendant for Contract work performed, it improperly defaulted Defendant on the Project, and it failed to compensate Defendant for extra work it was required to perform to complete the Project. Count Two. Defendant asserts a claim in Quantum Meruit for the reasonable value of the work completed for which Defendant has not been paid. Defendant's claim against American Casualty includes: Count One. Defendant has made a claim on the Payment Bond posted by American Casualty for the work completed for which there has not been payment. Count Two. Defendant alleges that American Casualty breached its duty of good faith and fair dealing in that it did not perform an independent investigation of the claim made by Defendant on the Payment Bond.

By way of its claims, Neri is seeking damages of $2,113,551 prior to the assessment of the appropriate credit for the work Neri did not perform.

5 A.    Stipulations of Fact.

a.      Elm Haven is a Delaware limited partnership with its principal place of business at 150 Mount Vernon Street, Boston, Massachusetts 02125, and was, at all times material hereto, engaged as the construction manager and general contractor for the Project.

b.      Elm Haven Rental Limited Partnership I and II (the "Owner") is the Owner of the Project, which was funded by both the City of New Haven Housing Authority and the

4

United States Department of Housing and Urban Development.

  c.  Neri is a Connecticut limited liability company with its principal place of business at 112 Nod Road, Clinton, Connecticut 06901 and was, at all times material hereto, engaged in the business of performing site work.

  d.  United States Fidelity & Guaranty Company ("USF&G") is a Maryland corporation with its principal place of business at TW 3001 P.O. Box 1138, Baltimore, Maryland 27203-1138, and was, at all times material hereto, engaged in the business of providing, for a monetary premium, performance and payment surety bonds for the construction industry.

  e.  Loureiro Engineering Associates, Inc. ("LEA"), is a Connecticut corporation with its principal place of business at 100 Northwest Drive, Plainville, Connecticut 06062, and was, at all times material hereto, engaged in the business of engineering and environmental services.  LEA was under contract with the Owner to provide Project inspection services for the Owner and the City of New Haven with respect to the construction of all public roadways, public utilities, and rights of way that were part of the Project.

  f.  Fletcher Thompson, Inc., is a Connecticut corporation with its principal place of business at Three Corporate Drive, Shelton, Connecticut 06484, and was, at all times material

RJT/29497/3/723242v1
05/18/05-HRT/

hereto, engaged in the business of architecture, engineering, and interior design. Fletcher
Thompson was the Architect of record on the Project.

g.    On January 26, 1999, Elm Haven and the Owner entered into a contract for the
construction of the Project.

h.    On March 5, 1999, Elm Haven and Neri executed a lump sum Subcontract in
the amount of $3,642,500.00 for the site work on the Project. The work under the Subcontract
was broken into two parts for administrative purposes and was known as Project No. 204 and
Project No. 207. As is more fully set forth in the Subcontract, Neri was to perform site work
required by the Subcontract documents, including Phase 1B and certain roadways and four
blocks labeled D, E, F, and G, for $2,470,258.00 of the Subcontract price (Project No. 204).
Neri also was to perform site work on Phase 1C, including the Ashmun Street area and two
blocks labeled B and C, for $1,172,242.00 of the Subcontract price (Project No. 207). Per
Article 2.1 of the Subcontract, Neri's date of commencement was the date of execution, March
5, 1999.

i.    Per Article 2.1 of the Subcontract, time was of the essence of the Subcontract.

j.    On March 16, 1999, USF&G issued a performance bond and a payment bond,
each in the Subcontract sum of $3,642,500.00, to guaranty Neri's performance of the work

6

and payment of its subcontractors.

k.    During the course of the Project, Elm Haven issued the following change orders

for Project No. 204:

## Phase 1B - Project No. 204

| CO | Description | Amount | Revised Contract |
|----|-------------|--------|------------------|
| | **ORIGINAL CONTRACT AMOUNT** | | **2,470,258** |
| 1 | Install 20 insulation blankets – window protection | 860 | 2,471,118 |
| 2 | Credit for backflow preventer valves | (20,000) | 2,451,118 |
| 3 | Install temporary power | 1,103 | 2,452,221 |
| 4 | Demolish/remove elevator pit – excavate/backfill for new walls | 2,967 | 2,455,188 |
| 5 | Remove 96.185 cy unsuitable material, units F27-28 | 3,366 | 2,458,554 |
| 6 | Additional foundation excavation, interior footings & walls | 3,405 | 2,461,959 |
| 7 | Revisions to water & sewer laterals per SK drawings | 13,020 | 2,474,979 |
| 8 | Install new sanitary manhole at Canal St. & New St. 2 – T & M | 19,692 | 2,494,671 |
| 9 | Core bore for sanitary laterals, Blocks E & F | 1,184 | 2,495,855 |
| 10 | Excavation for foundation, not in contract drawings, bldg. E7-E13 | 799 | 2,496,654 |
| 11 | Additional work due to winter conditions/saturated soil | 10,070 | 2,506,724 |
| 12 | Concrete encasement of underground conduit | 13,855 | 2,520,579 |
| 13 | Block G revisions | 188,766 | 2,709,345 |
| 14 | Underground electrical work, Blocks E & F | 17,448 | 2,726,793 |
| 15 | Overpayment reductions (from COs 10 & 12) | (7,832) | 2,718,961 |
| 16 | Concrete driveway aprons at parking areas, Blocks E, F & G | 3,200 | 2,722,161 |
| 17 | Additional site lighting conduit (Block G) | 4,438 | 2,726,599 |
| 18 | Tree removal from parking lot G | 1,500 | 2,728,099 |

RJT/29497/3/723242v1
05/18/05-HRT/

| CO | Description | Amount | Revised Contract |
|----|-------------|--------|------------------|
| 19 | Removal of 5 trees in Blocks G/E | 8,525 | 2,736,624 |
| 20 | Second crew for granite curb installation | 6,359 | 2,742,983 |
| 21 | Construction of chimney foundations in Block E | 1,446 | 2,744,429 |
| 22 | (Change Order Not Used) | 1,279 | 2,745,708 |
| 23 | Webster & Foote Street roadway width adjustment, Grade C Base material, and tree removals: Foote, New Sts. 3 & 4, and Webster | 104,000 | 2,849,708 |
| 24 | Block E grade changes | 7,587 | 2,857,295 |
| 25 | Block F revised drainage @ townhouses | 1,472 | 2,858,767 |
| 26 | Block E revised roof leader drains @ townhouses | 5,100 | 2,863,867 |
| 27 | Block G temp drainage connection @ Webster St. | 7,500 | 2,871,367 |
| 28 | Block F additional site stairs | 2,000 | 2,873,367 |
| 29 | Block F additional HC Ramp at Parking Lot | 1,100 | 2,874,467 |
| 30 | Block F – Revisions to parking lot area | 1,130 | 2,875,597 |
| 31 | Block F additional haunch detail for concrete patio @ steps | 2,900 | 2,878,497 |
| 32 | Block F relocate site stairs due to design error | 182 | 2,878,679 |
| 33 | Block E & F excavate for Sonatube supports @ TH Front | 1,200 | 2,879,879 |
| 34 | Block E & F additional costs for revised TH roof leader drainage re-routing | 13,000 | 2,892,879 |
| 35 | Block F – Modification to rear concrete HC patio and walks @ Unit #1 | 1,900 | 2,894,779 |
| 36 | Additional excavation and grading Foote St north | 16,064 | 2,910,843 |
| 37 | Void CO #23 reissue as CO #38 & 39 | (104,000) | 2,806,843 |
| 38 | Tree removals and Rwdy width adjustments at Webster & Foote St. | 46,600 | 2,853,443 |
| 39 | Grade C Base Material | 51,153 | 2,904,596 |
| 40 | Added cost for HC Ramps @ RDWY | 13,515 | 2,918,111 |
| 41 | Block E Bit Walk revisions @HC Unit | 6,000 | 2,924,111 |
| 42 | Widen Concrete Pads at Wood steps, Block E & F | 2,506 | 2,926,617 |
| 43 | Video inspection of Sanitary laterals E, F and G | 3,114 | 2,929,731 |
| 44 | Block G Drainage Revisions along Webster St. | 25,856 | 2,955,587 |
| 45 | Revised Patio @ Unit 25/E-10 | 2,848 | 2,958,435 |
| 46 | Backfill Block E – Unit E-23 | 735 | 2,959,170 |

RJT/29497/3/723242v1
05/18/05-HRT/

| CO | Description | Amount | Revised Contract |
|---|---|---|---|
| 47 | New Street 3 & 4 additional sidewalk @ HC Ramps | 6,311 | 2,965,481 |
| 48 | Bit. Shims at Block C Rdwys | 2,400 | 2,967,881 |
| 49 | EHC Directed work in Block E & F | 1,454 | 2,969,335 |
| 50 | Site Light Conduit (Semac) | 0 | 2,969,335 |
| 51 | Credit back CO # 204-27 | (7,500) | 2,961,835 |
| 52 | Manhole to Grade @ Foote Street | 1,997 | 2,963,832 |
| 53 | Reset Manhole @ Foote Street | 1,997 | 2,965,829 |
| 54 | Concrete Patio Caps | 3,956 | 2,969,785 |
| 55 | Neri Backcharge Deduct Change Order[1] | (430,130) | 2,539,655 |
| | **TOTAL PHASE 1B CHANGE ORDERS** | **69,397** | **2,539,655** |

1.      During the course of the Project, Elm Haven issued the following change orders

for Project No. 207:

### Phase 1C - Project No. 207

| CO | Description | Amount | Revised Contract |
|---|---|---|---|
| | **ORIGINAL CONTRACT AMOUNT** | | **1,172,242** |
| 1 | Remove/replace 376 cy of unsuitable material | 13,160 | 1,185,402 |
| 2 | Additional sanitar work in Block B | 6,414 | 1,191,816 |
| 3 | Tank removal in B/water & sewer lateral revisions | 20,280 | 1,212,096 |
| 4 | Installation electrical ductbank in Blocks A1 & A2 | 21,660 | 1,233,756 |
| 5 | Revise location of electrical pedestals, Block C | 7,027 | 1,240,783 |
| 6 | Remove/replace unsuitable material in conduit trenches | 29,723 | 1,270,506 |
| 7 | Revisions to electrical ductbank at Block A-2 | 1,985 | 1,272,491 |

---

[1] The sum of ($430,130) differs from the original Change Order No. 204-55 sum of ($483,097). In preparation for trial, the sum was adjusted to include reductions in the amount backcharged for the repair of light poles damaged by Neri forces (tab 3 to original Change Order No. 204-55) and the video inspections of the sewer laterals (tab 8), as well as the elimination of the direct payments to North Carolina Granite (tabs 14 and 21) and Tilcon Construction (tab 20). Also added is a five percent markup for overhead per Article 9.2.1 of the Subcontract. A summary of the adjustments to Change Order No. 204-55 is set forth in **Exhibit 292.**

9

| CO | Description | Amount | Revised Contract |
|---|---|---|---|
| 8 | Repair sanitary laterals – work out of sequence | 1,749 | 1,274,240 |
| 9 | Clean up on T&M basis/remove utility pole | 2,179 | 1,276,419 |
| 10 | Core bore for sanitary laterals, Blocks B & C | 7,399 | 1,283,818 |
| 11 | Excavate/replace unsuitables at drainage C1-C8 | 1,322 | 1,285,140 |
| 12 | Install sanitary chimneys on existing sewer main | 15,174 | 1,300,314 |
| 13 | Remove uncharted foundation in Block B | 1,474 | 1,301,788 |
| 14 | Additional compensation – for record only | 45,829 | 1,347,617 |
| 15 | Removal/replacement of concrete curb, Block C | 300 | 1,347,917 |
| 16 | Tree removal | 1,000 | 1,348,917 |
| 17 | Placement of topsoil, Block B | 8,890 | 1,357,807 |
| 18 | Additional mobilization costs – Block B bituminous paving | 900 | 1,358,707 |
| 19 | Temporary overlay on Ashmun Street | 8,244 | 1,366,951 |
| 20 | Removal/replacement of concrete sidewalk, Block B | 6,565 | 1,373,516 |
| 21 | Removal/replacement driveway aprons, Block B | 14,000 | 1,387,516 |
| 22 | Remove/replace handicap ramps, Block B | 10,000 | 1,397,516 |
| 23 | Removal of debris on Canal Street | 8,118 | 1,405,634 |
| 24 | Block C handicap ramp revisions | 6,590 | 1,412,224 |
| 25 | Remove/replace driveway aprons, New Street 2 | 5,250 | 1,417,474 |
| 26 | Block B parking area bituminous shim work | 1,500 | 1,418,974 |
| 27 | Additional drainage at Canal Street | 7,079 | 1,426,053 |
| 28 | Install concrete driveway apron – parking area Block C | 1,000 | 1,427,053 |
| 29 | Placement of topsoil, Block C Credit back | 0 | 1,427,053 |
| 30 | Rework walks in Block C at HC units | 3,150 | 1,430,203 |
| 31 | Resetting of 2 manholes in parking lot drive Block C | 1,883 | 1,432,086 |
| 32 | Importing subbase material for Block C | 14,072 | 1,446,158 |
| 33 | Construction of HC ramps at Webster, Ashmun & Canal | 1,590 | 1,447,748 |
| 34 | Resetting existing manholes on Webster & Canal | 3,500 | 1,451,248 |
| 35 | Block C parking area sublease material | 7,822 | 1,459,070 |
| 36 | Remove and replace sidewalks at trees & add belgin block | 4,300 | 1,463,370 |

RJT/29497/3/723242v1
05/18/05-HRT/

| CO | Description | Amount | Revised Contract |
|----|-------------|--------|------------------|
| 37 | Tree removal credit back CO #16 & 17 | (9,890) | 1,453,480 |
| 38 | Block B weather protection for sidewalks | 2,858 | 1,456,338 |
| 39 | Misc. added work, Block B | 1,939 | 1,458,277 |
|    | **TOTAL PHASE 1C CHANGE ORDERS** | **286,035** | **1,458,277** |

m.    The parties stipulate that all change orders issued by Elm Haven to Neri, with

the exception of Change Order No. 204-55, should be factored into the adjusted contract value.

n.    Throughout the Project, Elm Haven issued payments to Neri totaling

$2,822,034.26.

o.    Per Article 11.7 of the Subcontract, the Subcontract is governed by the laws of

the State of Connecticut.

5 B. Stipulations of Law.

General.

In diversity actions involving construction contracts to build structures in Connecticut,

the Connecticut courts will apply Connecticut's contract law. *See, e.g., Clee v. Remillard*

*Bldg., Inc.*, 649 F. Supp. 1127 (D. Conn. 1986).

Breach of Contract - Damages.

In breach of contract cases, the general rule is that the award of damages is designed to

place the injured party, so far as can be done by money, in the same position as that which he

would have been in had the contract been performed. *See, e.g., Ambrogio v. Beaver Road*

RJT/29497/3/723242v1
05/18/05-HRT/

*Assocs.*, 267 Conn. 148, 155 (2003).

    6.    <u>Plaintiff's Contentions</u>.

On March 5, 1999, Elm Haven and Neri executed the Subcontract. Neri's surety, USF&G, issued performance and payment bonds for the work on March 16, 1999, and construction began shortly thereafter.

Time was of the essence for the work under the Subcontract, and Article 3.1 of the Subcontract required Neri to begin, prosecute, and complete the work in a prompt and diligent manner and to make adjustments to the schedule required by Elm Haven for the prompt and adequate performance of the work under the Subcontract. All of the site work, roads and utilities in Block B were due to be completed by December 31, 1999. Anticipating this deadline and the pending winter season, Elm Haven provided Neri with schedules for completion of that portion of the work in November 1999. However, Neri refused to commit to any schedule for completion of the work, and would not perform all of the work necessary to meet this deadline unless and until it was paid additional money for work already included in its scope of work under the Subcontract. In December 1999, Neri's workforce blocked access to the site by other subcontractors and tradesmen, in an effort to coerce additional payments from Elm Haven. From December 1999 to March 2000, minimal site work was performed

RJT/29497/3/723242v1
05/18/05-HRT/

due to the winter weather conditions.  When work resumed, Neri began excavating without proper permits.  By March 2000, Neri's work relating to Block B was still not complete.

On April 14, 2000, Neri accepted Change Order No. 204-13, which set forth a new baseline schedule for completion of Blocks C, E and F, and committed Neri to completing Block G by May 15, 2000.  However, by May 4, 2000, Neri had already failed to follow this updated schedule.  As a result, on May 18, 2000, Elm Haven issued a Notice of Default to Neri per Article 9 of the Subcontract for failing to meet the Project schedule for work in Block C, and informed Neri that without its assurances that the work in Block C would be completed before May 25, 2000, Elm Haven would hire another subcontractor to perform the work in Block C.  Elm Haven remained concerned that Neri would not complete the work on Blocks E, F and G in a timely manner but, in an effort to keep the Project moving, Elm Haven offered various concessions to Neri if it would commit to completing the Block C work by May 26, 2000.

Neri failed, however, to give adequate assurances that it would timely complete work under the Subcontract.  As a result, Elm Haven made several attempts to schedule a meeting with Neri and its surety.  As of June 8, 2000, a meeting still had not occurred, and by that time, Neri's provided manpower was inadequate to meet the Project schedule.  Neri also

13

unreasonably insisted that certain work -- such as cast-in-place concrete staircases -- was not within the contractually required scope of work, even though such work was expressly listed in the Subcontract.

Therefore, on June 8, 2000, Elm Haven wrote to Neri and USF&G, and informed them that it believed Neri lacked the financial capacity to perform the remainder of the Subcontract work in a reasonable amount of time, based on Neri's failure to meet completion dates in Blocks B, C, and G. Elm Haven informed Neri and USF&G of Neri's disregard for clear provisions in the Subcontract, including those pertaining to sedimentation and erosion control (Item 6.C of Attachment "A"); traffic mitigation (Item 6.X of Attachment "A"); street cleaning (Item 6.GG of Attachment "A"); scope of work items; definitions of terms such as "unsuitable" (Item 6.G and 6.GG of Attachment "A"); and safety requirements (Items 9 and 13 of Attachment "A"), citing two gas main breaks during Neri's excavations. One week later, on June 15, 2000, Elm Haven provided Neri with seventy-two hour notice, in accordance with Article 9.2.1 of the Subcontract, that Elm Haven intended to complete Neri's work in Block G with other contractors, and that Elm Haven's landscaping subcontractor, Executive Landscaping, would perform the fine grading of topsoil in Block C. On June 26, 2000, in accordance with Article 3.1 and General Conditions Section 3.10.1 of the Subcontract, Elm

RJT/29497/3/723242v1
05/18/05-HRT/

Haven requested a recovery schedule for Neri to make up for lost time in the completion of Block C.

Neri excavated what it deemed "unsuitable" materials from Blocks E and G, and stockpiled those "unsuitable" materials at those blocks, in violation of the Subcontract. These stockpiles hindered the progress of other workers on those Blocks, and on August 10 and 14, 2000, Elm Haven directed Neri to remove the "unsuitable" material from Blocks E and G, or Elm Haven would do so at Neri's expense. Neri claimed that the removal of "unsuitable" material was a scope-of-work issue, despite the clear language of Item 6.G of Attachment "A," which reads that "all unsuitable material within cut material and as noted in the Geotechnical Report [is] to be removed from site and legally disposed of." Therefore, beginning on September 25, 2000, Elm Haven retained Executive Landscaping to remove the "unsuitable" material from Blocks E and G. Neri did not mobilize its forces to remove the materials until the next day, when nearly all of the material was removed.

By September 2000, Neri's failure to perform work in accordance with plans and specifications, along with its inexplicable delays and failure to adequately staff the job, created substantial delays on the Project. Once again, Elm Haven asked Neri to submit a schedule for the remaining work, which Neri provided on September 14, 2000. This schedule called for a

15

completion of Blocks E, F, and G, including the surrounding roadways, by no later than October 27, 2000. On October 4, 2000, when Neri was already 13 days behind this schedule, Neri committed to installing topsoil in Blocks F and G within one week, and failed to do so.

Work in Blocks E, F and G needed to be complete by October 27, 2000. Accordingly, on October 4, 2000, Elm Haven requested that Neri confirm that it had contracted with a paving subcontractor to perform the necessary work. When Neri failed to do so, Elm Haven put Neri on notice that arrangements would be made to have the work performed by others. By October 13, 2000, Neri was significantly behind its own schedule of September 14, 2000. Elm Haven was then forced to retain other subcontractors and vendors to complete certain fine grading, paving, granite installation, concrete work, sanitary testing, sanitary repairs, and utility work in Neri's scope of work under the Subcontract. Specifically, Elm Haven hired Waters Construction Company, Inc., to perform fine grading, paving, repairs to sanitary sewers, resetting of manhole frames and covers, and removal and replacement of sidewalks and handicapped access ramps at a cost to Elm Haven of $289,768.90; Santos Foundation, Inc., to perform installation of concrete steps for $33,823.00; and sixteen other subcontractors and vendors, who performed various Neri work items for $106,538.29. Accordingly, Elm Haven issued backcharges to Neri on March 27, 2001 with Change Order No. 204-55, which

16

outlined the efforts of Waters, Santos, and the other subcontractors and vendors. These backcharges totaled $430,130.19. Thereafter, six subcontractors and vendors provided an additional $21,284 in labor and materials in Block G that were part of Neri's scope of work under the Subcontract.

In November 2000, the geotechnical engineer for the Project, Heynen-Teale Engineers, inspected Neri's footing excavations in Block G and determined them to be "not in accordance with the contract documents," and recommended that Neri remove the fill and re-excavate the trenches to the contractually mandated widths. Nevertheless, on March 19, 2001, Neri represented that the foundation excavation work was complete and ready for footing installation. When Santos poured the foundations, it was discovered that the excavation work was not performed properly. Neri eventually reworked the excavations, but did so without appropriate supervision, in violation of Article 2.5 of the Subcontract.

Thus, as the following spring season of 2001 arrived, the work that remained incomplete under the Subcontract included Block G-2 (involving the townhouses); Ashmun Street; Admiral Street; Henry Street; Webster Street; Dixwell Avenue; portions of Foote Street and Canal Street; water and sewer laterals; drainage, trenching, and backfilling for electrical conduit and light bases; granite curbing; and concrete sidewalks. Elm Haven requested,

17

therefore, another schedule for completion from Neri. At that point, Neri refused to do work along an area identified as Ashmun Street South, and had failed to secure the required permits to complete the remaining roadwork. The Ashmun Street South area at issue is clearly identified as part of Neri's scope as per drawing SS-16 in the List of Drawings & Specifications, Attachment "B," Phase 1B, of the Subcontract documents.

At various points in time from March through May, 2001, Neri failed to supply sufficient manpower and equipment to the Project in order to complete its work in a prompt, timely, and diligent manner, in accordance with Elm Haven's scheduling requirements and directives. Elm Haven, therefore, exercised its right under the Subcontract to arrange for various portions of Neri's work to be completed by others, and Elm Haven held Neri responsible for the costs incurred by Elm Haven to perform this work with other subcontractors and vendors. In fact, Elm Haven eventually completed all of Neri's remaining work with other subcontractors and vendors.

Specifically, Elm Haven incurred the following costs in 2001 to complete Neri's work under the Subcontract:

| | |
|---|---:|
| General Requirements | 52,800 |
| Mobilization & Demobilization | 21,962 |
| Sweeney Excavation | 1,103,471 |
| Executive Landscaping | 14,626 |

RJT/29497/3/723242v1
05/18/05-HRT/

| | |
|---|---:|
| National Rent-a-Fence | 4,392 |
| Arrow Concrete | 4,278 |
| Merritt Printers | 962 |
| Paul P's Welding | 546 |
| Blue Diamond Quarry | 452 |
| Semac Electric | 420 |
| Total Completion Costs | 1,203,909 |
| | |
| Total Completion Costs | 1,203,909 |
| Nicholas Murano Claim Reimbursement | 5,500 |
| 5% Overhead Mark-up per Article 9.2.1 | 60,470 |
| **Total Cost-to-Complete** | **1,269,879** |

The calculation of Neri's unpaid Subcontract balance and retainage is as follows:

| | |
|---|---:|
| Original Contract Amount, Project No. 204 | 2,470,258 |
| Original Contract Amount, Project No. 207 | 1,172,242 |
| Change Orders to Project No. 204 | 69,397 |
| Change Orders to Project No. 207 | 286,035 |
| Adjustment, Tilcon Construction Premium | 22,276 |
| Deleted Work | (278,421) |
| Final Contract Amount | 3,741,787 |
| | |
| Final Contract Amount | 3,741,787 |
| Work Complete to Date | (3,108,192) |
| Contract Balance | 633,165 |
| | |
| Work Complete to Date | 3,108,192 |
| Total Paid to Neri to Date | (2,822,034) |
| Retainage | 286,158 |
| | |
| Contract Balance | 633,165 |

RJT/29497/3/723242v1
05/18/05-HRT/

| | |
|---|---|
| Retainage | 286,158 |
| **Unpaid Contract Balance and Retainage** | **919,323** |

Therefore, Elm Haven's claim for relief is for the difference between the costs to complete Neri's work under the Subcontract and Neri's unpaid Subcontract balance as follows:

| | |
|---|---|
| Total Cost-to-Complete | 1,269,879 |
| Unpaid Contract Balance and Retainage | (919,323) |
| | |
| **ELM HAVEN'S CLAIM FOR RELIEF**<br>**(excluding prejudgment interest and costs)** | **$    350,126** |

7.    Defendant's Contentions.

The Project was from the outset characterized by design problems, coordination problems and extra work issues all of which complicated and delayed the performance of Neri's work. These problems continued to plague the Project until the spring, 2001 at which time Elm Haven Construction to mitigate further problems because of design and coordination issues decided to delete this work under the pretense that Neri was delaying the completion of the Project. Instead the work deleted was either the subject of ongoing design and coordination issues or was not even part of Neri's scope of work. While having deleted the remaining work for its own purposes, Elm Haven Construction is not entitled to recover from Neri its significantly increased costs to finish the Project with an alternate contractor.

RJT/29497/3/723242v1
05/18/05-HRT/

During the Project Neri was required to perform certain extra work for which it has not been paid. The total value for this work is $813,551.93.

Neri claims that it is properly due $1,300,000 for the unpaid contract balance prior to any reasonable credit for the work Neri did not perform. Neri's position is that at most the credit should be measured by the cost or value of the work, as if Neri had performed the work.

8 A.    Legal Issue (Plaintiff). Whether Neri breached the Subcontract, in that it failed to complete the work; provided defective workmanship; failed to perform the work in compliance with plans and specifications; failed to pay its subcontractors and suppliers; failed to perform the work in compliance with the construction schedule; failed to provide adequate and properly trained manpower; failed to submit proper and adequate shop drawings in a timely manner; and failed to coordinate its work with that of other subcontractors.

8 B.    Legal Issues (Defendant).

Whether Plaintiff breached the Contract for which Defendant is entitled to recover the unpaid Contract balance and payment for the extra work it performed.

9.    Voir Dire Questions. This is a court case.

10 A.    List of Witnesses (Plaintiff).

a.    James Canning. Mr. Canning was Elm Haven's Vice President and the Project

RJT/29497/3/723242v1
05/18/05-HRT/

Executive through August 2000. Mr. Canning will testify as to events, meetings, discussions and decisions with respect to Neri's work during his tenure as the Project Executive, including the progress of Neri's work, change orders issued to Neri, Neri's scope of work, and the adequacy of Neri's work.

      b.    <u>Jonathan Woods</u>. Mr. Woods succeeded Mr. Canning as Project Executive. Mr. Woods will testify as to the same subject matter as Mr. Canning, during his tenure as Project Executive.

      c.    <u>Lorraine Beckwith</u>. Ms. Beckwith was the original Project Manager for Elm Haven, until the spring of 2000. Ms. Beckwith will testify as to the negotiation of the Subcontract; the progress and quality of Neri's work; meetings, discussions, and correspondence with Neri concerning the scheduling, progress and quality of its work; progress payments to Neri; positions taken by Elm Haven in response to change order requests submitted by Neri; the overall scope of Neri's work; and change orders issued to Neri.

      d.    <u>John Ford</u>. Mr. Ford succeeded Ms. Beckwith as Project Manager. Mr. Ford will testify as to the same subject matter as Ms. Beckwith, during his tenure as Project Manager. Mr. Ford will also testify as to Elm Haven's decisions to issue various notices of default to Neri; arrangements made by Elm Haven to have other subcontractors and vendors

22

perform various portions of Neri's work; the issuance and substance of Change Order No. 204-55; all efforts undertaken by Elm Haven to complete Neri's work; and the ultimate cost to Elm Haven to complete Neri's work under the Subcontract.

      e.      <u>Thomas Jensen</u>. Mr. Jensen was the Project Superintendent from August 2000 through the end of Neri's involvement with the Project. Mr. Jensen will testify as to the project-level interactions between Neri and Elm Haven and Neri's day-to-day performance; levels of supervision, manpower and equipment employed by Neri; meetings with Neri representatives; and the extent to which Neri performed work for which it sought payment.

      f.      <u>Robert Sweeney</u>. Mr. Sweeney is the President of Sweeney Excavation, which was the primary subcontractor retained to perform Neri's work in the spring of 2001. Mr. Sweeney will testify as to the work performed by Sweeney; its contract with Elm Haven for said work and associated change orders; and its billings to Elm Haven.

      g.      <u>Salvatore A. Palaia, P.E.</u> Mr. Palaia is the Vice President of Loureiro Engineering Associates (LEA), the engineers of record on the project. Mr. Palaia will testify as to inspections of Neri's work for compliance with the Subcontract documents, assessments of extra work claims submitted by Neri, and as to inspection reports and correspondence prepared and issued by LEA during the course of construction.

RJT/29497/3/723242v1
05/18/05-HRT/

h.      Jacques Kressmann, P.E.  Mr. Kressman was the Chief of Construction, City of

New Haven Engineering Department.  Mr. Kressman will testify as to positions taken by the

City of New Haven Engineering Department concerning Neri's work on the Project.

i.      Michael Annatone.  Mr. Annatone is the owner and President of Executive

Landscaping, a subcontractor retained by Elm Haven to perform some of Neri's landscaping

work under the Subcontract.  Mr. Annatone will testify as to the work performed by Executive

Landscaping; its contract with Elm Haven for said work and associated change orders; and its

billings to Elm Haven.

j.      Mario Smith.  Mr. Smith is the owner and President of Waters Construction

Company, Inc., a subcontractor retained by Elm Haven to perform much of Neri's incomplete

work during the fall of 2000.  Mr. Smith will testify as to the work performed by Waters; its

contract with Elm Haven for said work and associated change orders; and its billings to Elm

Haven.

k.      David Latimer, P.E.  Mr. Latimer is a Senior Associate with the Mazza

Consulting Group.  Mr. Latimer will testify as to his analysis of change order requests

submitted by Neri, which was forwarded to Neri by Elm Haven on May 14, 2001.

l.      Jay Metha.  Mr. Metha is a Project Manager for Santos Foundation, Inc., a

24

subcontractor retained to perform portions of Neri's work. Mr. Metha will testify as to the work performed by Santos; its contract with Elm Haven for said work; and its billings to Elm Haven.

m.    Charles A. Warren, Jr.  Mr. Warren is an employee of Della Vecchia Consulting, Inc., a construction and project management consulting firm hired by Fleet Bank to assess the validity of requisitions for payment. Mr. Warren and Della Vecchia Consulting issued periodic Observation Reports for Fleet Bank prior to the bank's authorization of Elm Haven's requisitions. Mr. Warren will testify as to sums paid to Elm Haven for Neri's work throughout the course of construction.

n.    Elm Haven intends to call Laurence P. Jortner as a defense witness to Counts One and Two of Neri's Third Party Complaint against American Casualty Company of Reading, Pennsylvania ("American"). Mr. Jortner is a Senior Surety Claims Counsel for American, Elm Haven's surety for the Project. He will testify as to the actions undertaken by American in response to correspondence it received from Neri, and Neri's failure to cooperate with American's investigation of its claims. In addition to Mr. Jortner, Elm Haven may call one or more of its witnesses identified above in further defense to the Neri counterclaim and the Third Party Complaint. Elm Haven may also call David Rosen, a Vice President of Elm

RJT/29497/3/723242v1
05/18/05-HRT/

Haven Construction, as a witness in defense of Neri's counterclaim.

10 B.   <u>List of Witnesses (Defendant)</u>.

a.   <u>Steven Simoncini</u>.   Mr. Simoncini was involved with the bidding and negotiation of the Project, and the pricing of certain extra work issues.  He will testify as to Neri's original Contract scope of work, the negotiation of the Subcontract, extra work issues with which he was involved, and certain values of the work deleted by Elm Haven Construction.

b.   <u>Vincent Neri</u>.   Mr. Vincent Neri was one of the Project Managers for the Project.  He will testify as to the scope of Neri's work, the progress of Neri's work, and the performance of extra work on the Project.

c.   <u>Carl Neri</u>.   Mr. Carl Neri was employed by Neri and was involved with the negotiation of the Subcontract.  He was also involved with the discussions, pricing, preparation and negotiation of extra work issues.  He will testify as to the negotiation of the Subcontract, Neri's scope of work, the progress of Neri's work and the extra work issues.

d.   <u>Kim Neri</u>.   Ms. Kim Neri was involved with Neri's requisitions for payment, payments received from Elm Haven Construction, and the pricing and preparation of Neri's charge order requests.  She will testify regarding

RJT/29497/3/723242v1
05/18/05-HRT/

these issues. Moreover, she is the managing member of Hammonassett Construction and will testify as to the paving that Hammonassett was to perform on the Project as Neri's listed WBE Subcontractor for the Project.

e. <u>Mark Rossetti</u>. Mr. Rossetti was a Project Manager for Neri. He was involved with particular extra work issues. He will testify as to the progress of Neri's work and the performance of extra work.

f. <u>Earl Tucker</u>. Mr. Tucker is the President of Empire Paving. He will testify as to the contract Empire had to pave certain portions of the Project in the spring, 2000.

g. <u>Ivan Carlson</u>. Mr. Carlson was Elm Haven Construction's Project Superintendent until August, 2000. He was involved in reviewing and approving change order requests and will testify to them.

h. <u>Doug King</u>. Mr. King was a consultant to Neri and was involved with reviewing outstanding contract scope in the spring, 2001. Moreover, Mr. King was involved with the Payment Bond claim Neri made to Elm Haven Construction's surety with regard to unpaid balances. He may testify as to both issues.

RJT/29497/3/723242v1
05/18/05-HRT/

i.  <u>Salvatore Palaia, P.E.</u>  Mr. Palaia is the Vice President of LEA, the engineers for the Project.  He will testify as to the design changes made during the Project, and as to daily reports prepared by LEA during the Project with regard to extra work performed by Neri.

j.  <u>Earl Gaven</u>.  Mr. Gaven is a principal of Blades & Gaven.  He will testify as to the design changes made during the Project; in particular regarding handicap ramps, concrete driveway aprons and sidewalks.

k.  <u>Representative for Midway Trucking</u>.  To testify as to Truck Tickets for materials hauled.

l.  <u>Representative from L. Suzio Concrete</u>.  To testify as to delivery of materials relating to the performance of extra work.

m.  <u>Representative from Valley Sand & Gravel</u>.  To testify as to delivery of materials relating to the performance of extra work.

n.  <u>Representative from Levesque Trucking</u>.  To testify as to Truck Tickets relating to the performance of extra work.

RJT/29497/3/723242v1
05/18/05-HRT/

11 A.  <u>Exhibits (Plaintiff)</u>.

| | | | | |
|---|---|---|---|---|
| **Elm Haven Construction Limited Partnership / Neri Construction LLC - Subcontract** | | | | |
| 1 | 03/05/99 03/18/99 | EHC | Neri | Subcontract with, Attachments A thru F |
| 2 | | | | Addendums 1 thru 4 |
| 3 | | EHC | Neri | Specifications: Volume I, Volume II |
| 4 | | EHC | Neri | Subcontract Geotechnical Reports |
| 5 | | EHC | Neri | Subcontract Drawings |
| 6 | | EHC | | Elm Haven Unit Address Plan (with added text) |
| 7 | | EHC | | Elm Haven Unit Address Plan (with added text & color coding) |
| **Owner Contracts** | | | | |
| 8 | | | | Owner/EHC Contract |
| 9 | | | | Owner/Architect Contract |
| 10 | | | | Owner/Landscape Architect Contract |
| 11 | | | | Owner/Engineer Contract |
| 12 | | | | Owner/City of New Haven Development Agreement |
| **Elm Haven/Neri Project Correspondence and Schedules** | | | | |
| 13 | 22-Jun-99 | EHC | Neri | FAX |
| 14 | 15-Sep-99 | | | Schedule |
| 15 | 15-Mar-00 | EHC | Neri | Letter |
| 16 | 15-Mar-00 | Neri | EHC | FAX |

29

| 17 | 27-Mar-00 | EHC | Neri | Letter |
|---|---|---|---|---|
| 18 | 12-Apr-00 | EHC | Neri | Letter |
| 19 | 13-Apr-00 | EHC | Neri | Letter |
| 20 | 18-Apr-00 | | | Schedule |
| 21 | 19-Apr-00 | EHC | Neri | FAX |
| 22 | 19-Apr-00 | EHC | Neri | FAX |
| 23 | 26-Apr-00 | EHC | Neri | Letter |
| 24 | 29-Apr-00 | EHC | Neri | FAX |
| 25 | 12-May-00 | EHC | Neri | Letter |
| 26 | 16-May-00 | EHC | Neri | Letter |
| 27 | 16-May-00 | EHC | Neri | Letter |
| 28 | 16-May-00 | EHC | Neri | Letter |
| 29 | 16-May-00 | EHC | Neri | Letter |
| 30 | 18-May-00 | EHC | Neri | Letter |
| 31 | 19-May-00 | EHC | Neri | Letter |
| 32 | 22-May-00 | EHC | Neri | Letter |
| 33 | 23-May-00 | EHC | Neri | Letter |
| 34 | 23-May-00 | EHC | Neri | Letter |
| 35 | 26-May-00 | EHC | Neri | Letter |
| 36 | 26-May-00 | Neri | EHC | Letter |
| 37 | 31-May-00 | EHC | Neri | Letter |
| 38 | 1-Jun-00 | EHC | Neri | Letter |
| 39 | 1-Jun-00 | EHC | Neri | Letter |
| 40 | 1-Jun-00 | EHC | Neri | Letter |
| 41 | 2-Jun-00 | EHC | Neri | Letter |

RJT/29497/3/723242v1
05/18/05-HRT/

| 42 | 5-Jun-00 | EHC | Neri | Letter |
|---|---|---|---|---|
| 43 | 6-Jun-00 | Neri | EHC | Letter |
| 44 | 8-Jun-00 | Neri | EHC | Letter |
| 45 | 8-Jun-00 | EHC | USF&G | Letter |
| 46 | 8-Jun-00 | EHC | | Notes |
| 47 | 9-Jun-00 | EHC | Neri | Letter |
| 48 | 12-Jun-00 | EHC | Neri | Letter |
| 49 | 14-Jun-00 | EHC | | Note to File |
| 50 | 15-Jun-00 | EHC | Neri | Letter |
| 51 | 15-Jun-00 | EHC | Neri | Letter |
| 52 | 16-Jun-00 | EHC | Neri | Letter |
| 53 | 16-Jun-00 | EHC | Neri | Letter |
| 54 | 21-Jun-00 | EHC | Neri | Letter |
| 55 | 26-Jun-00 | EHC | Neri | Letter |
| 56 | 1-Aug-00 | EHC | Neri | Letter |
| 57 | 8-Aug-00 | EHC | Neri | Letter |
| 58 | 14-Aug-00 | EHC | Neri | Letter |
| 59 | 13-Sep-00 | EHC | Neri | Draft Letter |
| 60 | 13-Sep-00 | EHC | Neri | Punch List |
| 61 | 14-Sep-00 | Neri | EHC | Schedule |
| 62 | 14-Sep-00 | EHC | Neri | EHC's graphic depiction of Neri's 9/14/00 Schedule |
| 63 | 25-Sep-00 | EHC | Neri | Letter |
| 64 | 22-Sep-00 | EHC | Neri | Letter |
| 65 | 22-Sep-00 | EHC | Neri | Letter |
| 66 | 22-Sep-00 | EHC | Neri | Letter |

31

| 67 | 22-Sep-00 | EHC | Neri | Letter |
|----|-----------|-----|------|--------|
| 68 | 22-Sep-00 | EHC | Neri | Letter |
| 69 | 25-Sep-00 | EHC | Neri | Letter |
| 70 | 26-Sep-00 | EHC | Neri | Letter |
| 71 | 27-Sep-00 | EHC | Neri | Letter |
| 72 | 3-Oct-00 | EHC | Neri | Letter |
| 73 | 4-Oct-00 | Neri | EHC | Letter |
| 74 | 4-Oct-00 | EHC | Neri | Letter |
| 75 | 5-Oct-00 | EHC | Neri | Letter |
| 76 | 6-Oct-00 | EHC | Neri | Letter |
| 77 | 6-Oct-00 | EHC | Neri | Letter |
| 78 | 6-Oct-00 | EHC | Neri | Letter |
| 79 | 10-Oct-00 | | | *Murano Letter* |
| 80 | 11-Oct-00 | Waters | EHC | Contract |
| 81 | 11-Oct-00 | EHC | Neri | Letter |
| 82 | 11-Oct-00 | EHC | Neri | Letter |
| 83 | 11-Oct-00 | EHC | Neri | Letter |
| 84 | 11-Oct-00 | EHC | Neri | Letter |
| 85 | 12-Oct-00 | EHC | Neri | Letter |
| 86 | 12-Oct-00 | EHC | Neri | Letter |
| 87 | 12-Oct-00 | EHC | | Meeting Minutes |
| 88 | 13-Oct-00 | EHC | Neri | Letter |
| 89 | 13-Oct-00 | EHC | Neri | Letter |
| 90 | 13-Oct-00 | EHC | Neri | Letter |
| 91 | 13-Oct-00 | EHC | Neri | Letter |

RJT/29497/3/723242v1
05/18/05-HRT/

| 92 | 13-Oct-00 | EHC | Neri | Letter |
|---|---|---|---|---|
| 93 | 13-Oct-00 | EHC | Neri | Letter |
| 94 | 16-Oct-00 | EHC | Neri | Letter |
| 95 | 16-Oct-00 | EHC | Neri | Letter |
| 96 | 16-Oct-00 | EHC | Neri | Letter |
| 97 | 17-Oct-00 | EHC | Neri | Letter |
| 98 | 17-Oct-00 | EHC | Neri | Letter |
| 99 | 19-Oct-00 | EHC | Neri | Letter |
| 100 | 1-Nov-00 | EHC | Neri | Letter |
| 101 | 2-Nov-00 | EHC | Neri | Meeting Minutes |
| 102 | 6-Nov-00 | EHC | Neri | Letter |
| 103 | 6-Nov-00 | EHC | Neri | Letter |
| 104 | 6-Nov-00 | EHC | Neri | Letter |
| 105 | 6-Nov-00 | EHC | Neri | Letter |
| 106 | 6-Nov-00 | EHC | Neri | Letter |
| 107 | 6-Nov-00 | EHC | Neri | Letter |
| 108 | 6-Nov-00 | EHC | Neri | Letter |
| 109 | 6-Nov-00 | EHC | Neri | Letter |
| 110 | 6-Nov-00 | EHC | Neri | Letter |
| 111 | 6-Nov-00 | EHC | Neri | Letter |
| 112 | 17-Nov-00 | EHC | Neri | Letter |
| 113 | 15-Jan-01 | Neri | EHC | Letter |
| 114 | 18-Jan-01 | EHC | Neri | Letter |
| 115 | 18-Jan-01 | EHC | Neri | Letter |
| 116 | 18-Jan-01 | EHC | Neri | An Attachment to EHC's January 18, 2001 letter to Neri |

RJT/29497/3/723242v1
05/18/05-HRT/

| | | | | |
|---|---|---|---|---|
| 117 | 18-Jan-01 | EHC | USF&G | Letter |
| 118 | 22-Jan-01 | EHC | Neri | Letter |
| 119 | 24-Jan-01 | EHC | Neri | Letter |
| 120 | 24-Jan-01 | EHC | Neri | Letter |
| 121 | 7-Feb-01 | EHC | Neri | Letter |
| 122 | 9-Feb-01 | EHC | USF&G | Letter |
| 123 | 15-Feb-00 | City | Neri | Excavation Permit |
| 124 | 22-Feb-01 | | | *Murano Letter* |
| 125 | 2-Mar-01 | EHC | Neri | Letter |
| 126 | 7-Mar-01 | Neri | CNA | Letter |
| 127 | 12-Mar-01 | EHC | Neri | Letter |
| 128 | 13-Mar-01 | Neri | EHC | Letter |
| 129 | 14-Mar-01 | EHC | USF&G | Letter |
| 130 | 15-Mar-01 | EHC | Neri | Letter |
| 131 | 16-Mar-01 | EHC | Neri | Letter |
| 132 | 16-Mar-01 | EHC | Neri | Letter |
| 133 | 19-Mar-01 | EHC | Neri | Letter |
| 134 | 19-Mar-01 | EHC | USF&G | FAX w/ Letter & RFIs |
| 135 | 26-Mar-01 | EHC | Neri | Letter |
| 136 | 26-Mar-01 | EHC | EHC | Memo |
| 137 | 28-Mar-01 | Neri | EHC | FAX |
| 138 | 28-Mar-01 | Neri | EHC | Letter |
| 139 | 28-Mar-01 | EHC | Neri | Letter |
| 140 | 28-Mar-01 | EHC | Neri | Letter |
| 141 | 29-Mar-01 | EHC | | Field Notes |

RJT/29497/3/723242v1
05/18/05-HRT/

| 142 | 30-Mar-01 | Neri | EHC  | Letter |
| 143 | 2-Apr-01  | EHC  | Neri | Letter |
| 144 | 2-Apr-01  | CNA  | Neri | Letter |
| 145 | 4-Apr-01  | EHC  |      | Handwritten Note |
| 146 | 6-Apr-01  | Neri | EHC  | FAX |
| 147 | 10-Apr-01 | EHC  | Neri | Letter |
| 148 | 12-Apr-01 | EHC  | Neri | Letter |
| 149 | 13-Apr-01 | CNA  | Neri | Letter |
| 150 | 18-Apr-01 | CNA  | Neri | Letter |
| 151 | 19-Apr-01 | Neri | EHC  | Transmittal |
| 152 | 19-Apr-01 | EHC  | Neri | Letter |
| 153 | 19-Apr-01 | EHC  | Neri | Letter |
| 154 | 20-Apr-01 | EHC  | Neri | Letter |
| 155 | 25-Apr-01 | EHC  | Neri | Letter |
| 156 | 25-Apr-01 | EHC  | Neri | Letter |
| 157 | 25-Apr-01 | EHC  | Neri | Letter |
| 158 | 30-Apr-01 | EHC  | Neri | Letter |
| 159 | 1-May-01  | EHC  | Neri | Letter |
| 160 | 1-May-01  | EHC  | Neri | Punch List |
| 161 | 1-May-01  | EHC  | Neri | Letter |
| 162 | 1-May-01  | EHC  | Neri | Letter |
| 163 | 1-May-01  | EHC  | Neri | Letter |
| 164 | 1-May-01  | EHC  | Neri | Letter |
| 165 | 2-May-01  | EHC  | Neri | Letter |
| 166 | 10-May-01 | EHC  | Neri | Letter |

35