*Plaintiff's Witness List*

During the Project Neri was required to perform certain extra work for which it has not been paid. The total value for this work is $813,551.93.

Neri claims that it is properly due $1,300,000 for the unpaid contract balance prior to any reasonable credit for the work Neri did not perform. Neri's position is that at most the credit should be measured by the cost or value of the work, as if Neri had performed the work.

8 A. <u>Legal Issue (Plaintiff)</u>. Whether Neri breached the Subcontract, in that it failed to complete the work; provided defective workmanship; failed to perform the work in compliance with plans and specifications; failed to pay its subcontractors and suppliers; failed to perform the work in compliance with the construction schedule; failed to provide adequate and properly trained manpower; failed to submit proper and adequate shop drawings in a timely manner; and failed to coordinate its work with that of other subcontractors.

8 B. <u>Legal Issues (Defendant)</u>.

Whether Plaintiff breached the Contract for which Defendant is entitled to recover the unpaid Contract balance and payment for the extra work it performed.

9. <u>Voir Dire Questions</u>. This is a court case.

10 A. <u>List of Witnesses (Plaintiff)</u>.

a. James Canning. Mr. Canning was Elm Haven's Vice President and the Project

21

RJT/29497/3/723242v1
05/18/05-HRT/

Executive through August 2000. Mr. Canning will testify as to events, meetings, discussions and decisions with respect to Neri's work during his tenure as the Project Executive, including the progress of Neri's work, change orders issued to Neri, Neri's scope of work, and the adequacy of Neri's work.

    b.    <u>Jonathan Woods</u>. Mr. Woods succeeded Mr. Canning as Project Executive. Mr. Woods will testify as to the same subject matter as Mr. Canning, during his tenure as Project Executive.

*[handwritten: Cast Dennis, Moss]*

*[handwritten: 4-23-05]*   c.  <u>Lorraine Beckwith</u>.[1] Ms. Beckwith was the original Project Manager for Elm Haven, until the spring of 2000. Ms. Beckwith will testify as to the negotiation of the Subcontract; the progress and quality of Neri's work; meetings, discussions, and correspondence with Neri concerning the scheduling, progress and quality of its work; progress payments to Neri; positions taken by Elm Haven in response to change order requests submitted by Neri; the overall scope of Neri's work; and change orders issued to Neri.

*[handwritten: North Haven, CT.]*

*[handwritten: P-  6-6-05, 6-7-05, 6-8,9,10-05, 10-4-05, 10-5-05]*   d.  <u>John Ford</u>. Mr. Ford succeeded Ms. Beckwith as Project Manager. Mr. Ford will testify as to the same subject matter as Ms. Beckwith, during his tenure as Project Manager. Mr. Ford will also testify as to Elm Haven's decisions to issue various notices of default to Neri; arrangements made by Elm Haven to have other subcontractors and vendors

22

perform various portions of Neri's work; the issuance and substance of Change Order No. 204-55; all efforts undertaken by Elm Haven to complete Neri's work; and the ultimate cost to Elm Haven to complete Neri's work under the Subcontract.

 e. <u>Thomas Jensen</u>.  Mr. Jensen was the Project Superintendent from August 2000 through the end of Neri's involvement with the Project.  Mr. Jensen will testify as to the project-level interactions between Neri and Elm Haven and Neri's day-to-day performance; levels of supervision, manpower and equipment employed by Neri; meetings with Neri representatives; and the extent to which Neri performed work for which it sought payment.

 f. <u>Robert Sweeney</u>.  Mr. Sweeney is the President of Sweeney Excavation, which was the primary subcontractor retained to perform Neri's work in the spring of 2001.  Mr. Sweeney will testify as to the work performed by Sweeney; its contract with Elm Haven for said work and associated change orders; and its billings to Elm Haven.

 g. <u>Salvatore A. Palaia, P.E.</u>  Mr. Palaia is the Vice President of Loureiro Engineering Associates (LEA), the engineers of record on the project.  Mr. Palaia will testify as to inspections of Neri's work for compliance with the Subcontract documents, assessments of extra work claims submitted by Neri, and as to inspection reports and correspondence prepared and issued by LEA during the course of construction.

  h. <u>Jacques Kressmann, P.E.</u>  Mr. Kressman was the Chief of Construction, City of New Haven Engineering Department.  Mr. Kressman will testify as to positions taken by the City of New Haven Engineering Department concerning Neri's work on the Project.

  i. <u>Michael Annatone</u>.  Mr. Annatone is the owner and President of Executive Landscaping, a subcontractor retained by Elm Haven to perform some of Neri's landscaping work under the Subcontract.  Mr. Annatone will testify as to the work performed by Executive Landscaping; its contract with Elm Haven for said work and associated change orders; and its billings to Elm Haven.

  j. <u>Mario Smith</u>.  Mr. Smith is the owner and President of Waters Construction Company, Inc., a subcontractor retained by Elm Haven to perform much of Neri's incomplete work during the fall of 2000.  Mr. Smith will testify as to the work performed by Waters; its contract with Elm Haven for said work and associated change orders; and its billings to Elm Haven.

  k. <u>David Latimer, P.E.</u>  Mr. Latimer is a Senior Associate with the Mazza Consulting Group.  Mr. Latimer will testify as to his analysis of change order requests submitted by Neri, which was forwarded to Neri by Elm Haven on May 14, 2001.

  l. <u>Jay Metha</u>.  Mr. Metha is a Project Manager for Santos Foundation, Inc., a

subcontractor retained to perform portions of Neri's work. Mr. Metha will testify as to the work performed by Santos; its contract with Elm Haven for said work; and its billings to Elm Haven.

  m. <u>Charles A. Warren, Jr.</u>  Mr. Warren is an employee of Della Vecchia Consulting, Inc., a construction and project management consulting firm hired by Fleet Bank to assess the validity of requisitions for payment. Mr. Warren and Della Vecchia Consulting issued periodic Observation Reports for Fleet Bank prior to the bank's authorization of Elm Haven's requisitions. Mr. Warren will testify as to sums paid to Elm Haven for Neri's work throughout the course of construction.

[handwritten: chicago, Ill]  [handwritten: testified by phone at conference]

[handwritten: 10-5-05]  n. Elm Haven intends to call <u>Laurence P. Jortner</u> as a defense witness to Counts One and Two of Neri's Third Party Complaint against American Casualty Company of Reading, Pennsylvania ("American"). Mr. Jortner is a Senior Surety Claims Counsel for American, Elm Haven's surety for the Project. He will testify as to the actions undertaken by American in response to correspondence it received from Neri, and Neri's failure to cooperate with American's investigation of its claims. In addition to Mr. Jortner, Elm Haven may call one or more of its witnesses identified above in further defense to the Neri counterclaim and the Third Party Complaint. Elm Haven may also call <u>David Rosen</u>, a Vice President of Elm

[handwritten: R- 9-22-05 James Canning, Malden, Mass.]

25