219.   See **Responses 1 to 23** regarding the extra work claim in **Exhibit 594**, for a description of the relevant Subcontract provisions that are also applicable to **Exhibit 556**, and which require the rejection of this claim.

220.   Lorraine Beckwith expressly rejected this extra work claim on May 30, 2000. *See* **Exhibit 447**, Elm Haven letter to Neri, dated May 30, 2000.  Neri did not respond to this objection.  *See* Vincent Neri Testimony on Cross-Examination, June 24, 2005, at 72:21-73:04.

- **Exhibit 557 - Neri Extra Work Claim No. NC-039-207-2-B**

221.   **Exhibit 557**, Neri Extra Work Claim No. NC-039-207-2-B, in the amount of $2,119.02, is invalid because the work described thereon is included in Neri's scope of work under the Subcontract.

222.   The extra work claim included in this exhibit is for $2,119.02 in additional compensation to install four feet of granite curbing on the Project.  *See* **Exhibit 557**.  Vincent Neri testified that this claim is for additional time required to install granite curbing after most of the area along Ashmun Street in Block B had been completed.  *See* Vincent Neri Direct Testimony, June 14, 2005, at 189:01-189:15.

223.   Under the Subcontract, Neri was obligated to furnish and install all granite curbing:

> Furnish and install all concrete curb, granite curb, concrete
> sidewalks (both city and residential) and all handicap ramp
> depressions where indicated on plans.  Work shall include but not
> limited to establishment of line and grade (baseline and
> benchmark by other) excavation and backfill for curbs and
> sidewalks, subbase material and installation, forming,
> rebar/WWM including installation, expansion joint material,
> concrete and placement of, finishing as required, curing/sealing,
> stripping of forms, etc.  Remove and salvage granite curb as
> shown, if alternate is selected.

**Exhibit 1**, Attachment "A" to the Subcontract, Paragraph 6.P (emphasis added); *see also* John Ford Direct Testimony, June 6, 2005, at 76:22-76:24.

RJT/29497/3/761609v1
02/27/06-HRT/

224.    Elm Haven had the authority to control all matters relative to the timely and orderly performance and completion of the Subcontract Work.

> The <u>Contractor shall have the right to decide the time, order and priority</u> in which the various portions of the Work shall be performed and <u>all other matters relative to the timely and orderly performance and completion of the Subcontractor's Work</u>.

**Exhibit 1**, Article 3.4 of the Subcontract (emphasis added).

225.    Moreover, Neri was further obligated to coordinate its work with the performance of work by all other contractors, subcontractors and suppliers on the Project site. *See* **Exhibit 1**, Article 3.5 of the Subcontract.

226.    The exhibit does not contain an Elm Haven signature anywhere, and there is no indication that anyone from Elm Haven authorized Neri to perform this work. *See* **Exhibit 557**.

227.    Notwithstanding Neri's contractual obligations to install granite curbing on the Project, Neri's pricing for this extra work claim is mathematically flawed.  The sketch included with the exhibit indicates that the work was performed from 9:30 in the morning until 2 o'clock in the afternoon, or a total of four hours (assuming a half-hour break). *See* **Exhibit 557**, Sketch.  However, the receiving ticket indicates that three laborers worked for twelve hours -- even though the driver, cut off saw, JD710B Combo, and miscellaneous tools were only used for four hours each. *See* **Exhibit 557**, Receiving Ticket dated Mar. 24, 2000.  Three laborers working for four hours at a rate of $40.00 per hour should have totaled $480.00, not the $1,440.00 sought by Neri for this "work," which is <u>three</u> times the actual amount, and a likely an overcharge of $960.00. *See* **Exhibit 557**.

228.    The party alleging that there has been a modification to a contract bears the burden of proof as to that issue. *See, e.g., Lar-Rob Bus Corp. v. Town of Fairfield*, 170 Conn. 397, 402 (1976), *citing* 17A C.J.S. *Contracts* § 588.  It is clear that Neri has not met its burden, because the installation of granite curbing was included in Neri's scope of work under the Subcontract, and because Elm Haven was free to control the timing, order and priority of work on the Project.  Neri has offered no credible evidence that Elm Haven ever agreed to pay

197

Neri additional money to perform work that was clearly a part of its scope of work under the Subcontract. Therefore, this claim must be denied.

- **Exhibit 583 - Neri Extra Work Claim No. NC-074-207-2-B**

229.   **Exhibit 583**, Neri Extra Work Claim No. NC-074-207-2-B, in the amount of $2,373.56, is invalid because it is completely unsupported by evidence.

230.   Neri was obligated to provide sufficient, safe and proper facilities at all times for the protection of the Subcontract Work. *See* **Exhibit 1**, Article 6.1.3 of the Subcontract; *see also* **Exhibit 3**, Project Specifications Vols. I and II, § 01500 ¶ 2.03.

231.   The exhibit consists of a lone receiving ticket without any backup or indication that it was authorized by any Elm Haven representative. *See* **Exhibit 583**.

232.   In fact, the exhibit does not specify a location where the purportedly damaged curb and sidewalks are supposedly located, and does not identify who damaged the curb or include any evidence that Neri itself did not cause this damage. Additionally, there are no costs for materials included in these "repair" charges. *See* **Exhibit 583**.

233.   At trial, Vincent Neri acknowledged that the exhibit lacked both an authorization and a location of the "work," and could not himself identify where the purportedly damaged curb and sidewalks were located.

> Q.: . . . [S]ir, we have no information exactly -- we have no -- on this documentation <u>we don't even know where these damaged curbs and sidewalks took place, where the damage occurred?</u>
>
> A.: <u>I think it was somewhere B and C</u>.
>
> Q.: You said, think somewhere B and C?
>
> A.: (Inaudible.)
>
> . . .

RJT/29497/3/761609v1
02/27/06-HRT/

> Q.: Okay, but as you sit here today, you can't tell us other than somewhere in B and C precisely where this damage took place and exactly what the nature of the damage was?
>
> A.: I'm sure there's other documents that would tell us that.
>
> Q.: You don't recall independently as you sit here today what this damage was about?
>
> A.: It's not specifically attached to this exhibit.
>
> Q.: Sir, that wasn't my question. My question is you, forget the exhibit, sitting here today, have independent knowledge, regardless of the exhibit, exactly what these damages were and exactly where the damage was located?
>
> A.: The damages are the curbs and sidewalks and edgings and improvements in the area of B and C.
>
> Q.: Okay, and that's as specific as you can get.
>
> A.: Yes.

Vincent Neri Testimony on Cross-Examination, June 28, 2005, at 105:25-107:02 (emphasis added).

234.    Notwithstanding Neri's contractual obligations to provide facilities to protect its work on the Project, Neri's pricing for this extra work claim is mathematically flawed. The exhibit lists operators and materials on the "job" for two to six hours each. However, the line item for laborers specifies that two workers worked for twelve hours each, when they likely only worked six hours apiece. Two laborers working six hours each, at $40.00 per hour, totals $480.00 -- not the $960.00 sought by Neri for this work, which is twice the actual cost, and a likely overcharge of $480.00. *See* **Exhibit 583**.

235.    The party alleging that there has been a modification to a contract bears the burden of proof as to that issue. *See, e.g., Lar-Rob Bus Corp. v. Town of Fairfield*, 170

RJT/29497/3/761609v1
02/27/06-HRT/

Conn. 397, 402 (1976), *citing* 17A C.J.S. *Contracts* § 588.  It is clear that Neri has not met its burden, because there is no indication that there was any damage at all, and if there was, there is no credible evidence that Elm Haven authorized the work; nor is there any evidence as to who committed the damage or what the damage consisted of.  Therefore, this claim must be denied.

- **Exhibit 584 - Neri Extra Work Claim No. NC-076-207-3-C**

236.    **Exhibit 584**, Neri Extra Work Claim No. NC-076-207-3-C, in the amount of $2,540.06, is invalid because it is completely unsupported by evidence.

237.    As with **Exhibit 583**, Neri was obligated to provide sufficient, safe and proper facilities at all times for the protection of the Subcontract Work.  *See* **Exhibit 1**, Article 6.1.3 of the Subcontract; *see also* **Exhibit 3**, Project Specifications Vols. I and II, § 01500 ¶ 2.03. Neri was present on the Project site, and had the opportunity to control and protect its work

238.    The exhibit includes a receiving ticket and field sketch, but does not include a signature by any Elm Haven representative.  *See* **Exhibit 584**.  As with **Exhibit 583**, the receiving ticket does not specify any materials costs.  *See* **Exhibit 584**.

239.    Notwithstanding Neri's contractual obligations to provide facilities to protect its work on the Project, Neri's pricing for this extra work claim is mathematically flawed.  The field sketch indicates that the work was performed from 7 o'clock in the morning until 3:30 in the afternoon, a period of eight hours (assuming a half-hour break).  This eight-hour period is reflected in the receiving ticket, which lists a foreman/operator, as well as tools and equipment, being on the site for eight hours on that day.  However, the receiving ticket states that two laborers were on the job site for 16 hours.  Two laborers working for eight hours each, at a rate of $40.00 per hour, totals $640.00 -- not the $1,280.00 sought by Neri for this work, which is twice the actual cost, and a likely overcharge of $640.00.  *See* **Exhibit 584**.

240.    The field sketch also suggests that the workers who purportedly "repaired" the damaged curb also installed granite curbing on Canal Street.  *See* **Exhibit 584**, Sketch.  Even if work on the "damaged" curb had been authorized as extra by Elm Haven, the installation of granite curbing on the Project is strictly included in Neri's scope of work under the Subcontract.  *See* **Exhibit 1**, Attachment "A" to the Subcontract, Paragraph 6.P.

200

241.    The party alleging that there has been a modification to a contract bears the burden of proof as to that issue. *See, e.g., Lar-Rob Bus Corp. v. Town of Fairfield*, 170 Conn. 397, 402 (1976), *citing* 17A C.J.S. *Contracts* § 588. It is clear that Neri has not met its burden, because there is no indication that there was any damage at all, and if there was, whether Elm Haven authorized the work or who committed the damage. Therefore, this claim must be denied.

- **Exhibit 585 - Neri Extra Work Claim No. NC-076-207-6-B**

242.    **Exhibit 585**, Neri Extra Work Claim No. NC-076-207-6-B, in the amount of $6,709.86, is invalid because the work described thereon was included in a change order granted by Elm Haven to Neri.

243.    The exhibit consists of a lone receiving ticket without any backup or indication that it was authorized by any Elm Haven representative. *See* **Exhibit 585**.

244.    Although **Exhibit 585** states that it is for work performed on the Block B concrete parking lot entrance apron, Vincent Neri testified that "Block B" is a typographical error, and the work actually took place at the entrance to the Block C parking lot. *See* Vincent Neri Direct Testimony, June 15, 2005, at 13:14-14:08.

245.    Vincent Neri also testified that the work was performed in accordance with revisions after Neri had installed the curb originally, in late 1999 or early 2000. *See* Vincent Neri Direct Testimony, June 15, 2005, at 14:12-14:18.

246.    On May 1, 2000, Elm Haven issued Change Order No. 207-28 to Neri, in the amount of $1,000.00, which covered labor to replace the entrance to the Block C parking lot, to comply with design revisions. Under this change order, Neri was obligated to:

> Furnish all labor, equipment, materials, project management, and coordination necessary to complete the work described below.
>
> Furnish and install the concrete driveway apron at the parking area drive for Block C using the detail for a commercial drive. (See Detail 5/L13 Rev. 1/10/00.)

RJT/29497/3/761609v1
02/27/06-HRT/

**Exhibit 320**, Change Order No. 207-28, dated May 1, 2000 (emphasis added).

247.    The exhibit indicates that the work was performed on May 22, 2000. *See* **Exhibit 585**.

248.    Furthermore, even if the work described in **Exhibit 585** had not been covered by Change Order No. 207-28, there is a substantial mathematical error in the receiving ticket. The ticket states that the foreman/operator, as well as an additional operator, driver, and various equipment worked on this project for 6.5 hours on May 22, 2000. *See* **Exhibit 585**. However, the ticket also indicates that four laborers worked <u>twenty-six hours each</u> on that date. *See id.* Setting aside both the physical impossibility of working more than twenty-four hours in a day, and the fact that this work was included in a change order, the ticket grossly overcharges for Neri's labor, and suggests that the laborers worked four times longer than their supervision and/or equipment were located on the jobsite. Four laborers working 6.5 hours each, at a rate of $40.00 per hour, totals $1,040.00-- not the $4,160.00 sought by Neri for this work, which is <u>four times</u> the actual cost, and a likely overcharge of $3,120.00. *See* **Exhibit 585**.

249.    The party alleging that there has been a modification to a contract bears the burden of proof as to that issue. *See, e.g., Lar-Rob Bus Corp. v. Town of Fairfield*, 170 Conn. 397, 402 (1976), *citing* 17A C.J.S. *Contracts* § 588. Because Neri already received a change order for this extra work claim, Neri has not met its burden, and this claim must be denied.

- **Exhibit 586 - Neri Extra Work Claim No. NC-207-115**

250.    **Exhibit 586**, Neri Extra Work Claim No. NC-207-115, in the amount of $1,684.30, is invalid because the work described thereon is included in Neri's scope of work under the Subcontract.

251.    This claim involves the removal of metal posts, stumps and brush at Webster Street and Canal Street, which was within the Project limits. *See, e.g.,* **Exhibit 5**, Drawing SS-12.

252.    Neri, however, was obligated to clear and grub trees to the limits indicated by the contract drawings. **Exhibit 1**, Attachment "A" to the Subcontract, Paragraph 6.E.

RJT/29497/3/761609v1
02/27/06-HRT/

253.    As both Ivan Carlsen and James Canning testified, Elm Haven's Project Superintendents were permitted to verify time and material, but not to unilaterally approve requests for change orders or additional compensation. *See* Ivan Carlsen Direct Testimony, Sep. 22, 2005, at 24:19-24:23; Ivan Carlsen Testimony on Cross-Examination, Sep. 22, 2005, at 85:03-87:04; James Canning Direct Testimony, Sep. 22, 2005, at 218:14-218:19.

254.    Ivan Carlsen testified that he signed the "Rapid Memo" accompanying Exhibit 586 to direct Neri to proceed with the removal of post fencing, stumps, and construction debris at Webster Street. *See* Ivan Carlsen Direct Testimony, Sep. 22, 2005, at 50:05-50:07.

255.    The party alleging that there has been a modification to a contract bears the burden of proof as to that issue. *See, e.g., Lar-Rob Bus Corp. v. Town of Fairfield*, 170 Conn. 397, 402 (1976), *citing* 17A C.J.S. *Contracts* § 588.  It is clear that Neri has not met its burden, because the clearing and grubbing of the Project site was included in Neri's scope of work under the Subcontract, and Neri has offered no credible evidence that Elm Haven ever considered the work at issue to constitute a valid basis for an extra work claim.  Therefore, this extra work claim must be denied.

- **Exhibit 587 - Neri Extra Work Claim No. NC-207-126**

256.    **Exhibit 587**, Neri Extra Work Claim No. NC-207-126, in the amount of $5,133.55, is invalid because the scope of work described therein was included in Neri's scope of work under the Subcontract.

257.    Neri is not entitled to additional compensation for this claim because, pursuant to Paragraph 6.D of Attachment "A" to the subcontract, Neri was obligated to demolish and remove from within the limits of the Phase 1B and 1C site all existing utilities and streets including, but not limited to, asphalt paving, concrete sidewalks, bluestone curb, granite curb, concrete curbs, underground water lines and hydrants, underground storm lines and sanitary lines and all associated structures, electric pole and lines, and guardrails, as shown on the contract documents, including removal and disposal off-site.

258.    The debris that is the subject matter of this claim was existing debris located on the east side of Canal Street, which was within the limits of Phase 1B and 1C of the project.

RJT/29497/3/761609v1
02/27/06-HRT/

In addition, the Subcontract requires that Neri haul and dispose of all unsuitable and/or surplus material off-site.  *See* **Exhibit 1**, Attachment "A" of the Subcontract, Paragraph 6.G.

259.    Elm Haven never agreed that the removal of the unsuitable material at issue involved additional work and Elm Haven did not sign off on the Neri job invoice that is part of **Exhibit 587**.  No written authorization was given to Neri by Elm Haven authorizing additional compensation for the performance of this work, and Neri failed to provide proper notice of its intention to make a claim for this work.  *See* **Exhibit 587**.

- **Exhibit 588 - Neri Extra Work Claim No. NC-207-129**

260.    **Exhibit 588**, Neri Extra Work Claim No. NC-207-129, in the amount of $1,253.48, is invalid because the work and materials described thereon are included in Neri's scope of work under the Subcontract.

261.    Neri was required to maintain erosion and sedimentation control measures in accordance with the Subcontract Drawings throughout its performance of work under the Subcontract:

> Provide all Erosion & Sedimentation Control work required by Contract Drawings including the maintenance of all [Erosion & Sedimentation Control] measures during the time [Neri] is on the job.  [Neri] shall remove these [Erosion & Sedimentation Control] measures at the end of the Project after all landscaping is complete and the grass has taken hold.  Non-construction areas with [Erosion & Sedimentation Control] measures shall be returned as much as possible to their original condition, as indicated on the plans, unless disturbed by Neri.

**Exhibit 1**, Attachment "A" to the Subcontract, Paragraph 6.C.

262.    Neri was obligated to clean the streets and areas around the Project under the Subcontract.

> This subcontractor shall be responsible for . . . street cleaning during activities by Neri Construction.

**Exhibit 1**, Attachment "A" to the Subcontract, Paragraph 6.W(e) (emphasis added).

> This subcontractor is responsible for <u>clean up and removal of all</u> <u>debris and material</u> caused by this operation from the site and the legal disposal thereof.

**Exhibit 1**, Attachment "A" to the Subcontract, Paragraph 6.GG (emphasis added).

263.    Anti-tracking pad materials were listed as an erosion and sedimentation control measure in the Subcontract Drawings.  *See* **Exhibit 5**, Drawing G-7, Detail: Anti-Tracking Pad.  The drawing includes both 2" crushed stone and filter fabric to cover an area 55 feet long and 15 feet wide, a total of 825 square feet, or 91.67 square yards.  *See id.*

264.    The exhibit requests money for the application of 93.67 square yards of filter fabric and 22.09 tons of 2" crushed stone in Block K-1 on June 12, 2000.  *See* **Exhibit 588**. The field sketch included therein indicates that the fabric and stone was intended to cover an area of 91.67 square yards, matching the anti-tracking pad detail in Drawing G-7.  *See id.*

265.    Vincent Neri testified that in June 2000, Neri was using the area in Block K-1 to store materials and equipment.  *See* Vincent Neri Testimony on Cross-Examination, June 28, 2005, at 116:01-117:04.

266.    Given that Neri's trucks and equipment were moving in and out of Block K-1 -- directly across New Street 1 from the occupied Block B -- such erosion and sedimentation control measures were necessary to keep the area clean.  John Ford testified that after tracking pad material -- which he called a "proactive measure in erosion and sedimentation control" -- was installed in the area of Block G, sweeping was no longer necessary there.  *See* John Ford Direct Testimony, June 8, 2005, at 183:25-184:09.

267.    The exhibit does not include any signature or other indication that this work was authorized by anyone at Elm Haven to constitute an extra work claim.  *See* **Exhibit 588**.

268.    The party alleging that there has been a modification to a contract bears the burden of proof as to that issue.  *See, e.g., Lar-Rob Bus Corp. v. Town of Fairfield*, 170 Conn. 397, 402 (1976), *citing* 17A C.J.S. *Contracts* § 588.  Because Neri was obligated to provide erosion and sedimentation control measures in accordance with the Subcontract

RJT/29497/3/761609v1
02/27/06-HRT/

Drawings, and because anti-tracking pad fabric and stone are designated on Drawing G-7, the labor and materials included in this exhibit are in Neri's scope of work under the Subcontract. Neri has clearly not met its burden of proof, and this extra work claim must be denied.

- **Exhibit 590 - Neri Extra Work Claim No. NC-207-138**

269.    **Exhibit 590**, Neri Extra Work Claim No. NC-207-138, in the amount of $1,060.53, is invalid because the work described thereon was included in a change order granted by Elm Haven to Neri.

270.    The exhibit indicates that Neri poured two revised handicap ramps in Block C, on Canal Street, on May 2, 2000, and includes both a receiving ticket and an unclear field sketch. *See* **Exhibit 590**. Neither the receiving ticket nor the field sketch is signed by any Elm Haven representative. *See id.*

271.    On April 20, 2000, Elm Haven issued Change Order No. 207-24 to Neri, in the amount of $6,590.00, which covered labor to replace the handicap ramps at the corners of Ashmun Street and New Street 2, and Canal Street and New Street 2, to comply with design revisions:

> This change order is being issued to cover the additional cost to remove the HC Ramps located at the corner of Ashmun Street/New Street 2, and New Street 2/Canal Street. In addition, this price also includes the replacement of the HC ramps at Ashmun Street/New Street 2, New Street 2/Canal Street, in accordance with Blades & Goven design revisions dated 4/19/00.

**Exhibit 316**, Change Order No. 207-24, dated Apr. 20, 2000 (emphasis added).

272.    Despite the issuance of Change Order No. 207-24 in the amount of $6,590.00, Vincent Neri testified that this extra work claim covers an additional four hours that it supposedly took Neri to "rework" forms, in order to make "corrections" that he claims were based on directions from Earl Goven of Blades & Goven, yet Neri offered no evidence as to what the "corrections" or changes were that would entitle Neri to yet another change order on top of an existing change order:

RJT/29497/3/761609v1
02/27/06-HRT/

Q.: You're testifying you go out there and start doing the form work for the change order work and then <u>Earl Goven comes out to the job, looks at your work, request some changes and you rework the form work and that's what your ticket is about.</u>

A.: <u>Correct</u>.

Q.: So, the change order for $6,590 just wasn't enough. You just needed another thousand dollars.

A.: No, we --

Q.: Is that what you're saying?

A.: No, <u>we needed four hours to fix the -- make the corrections and that's what we charged for, four hours</u>.

Q.: Just need another four hours and you charged for that, not withstanding that you already had a change order issued for $6,590.

A.: Correct. <u>This change order didn't include cost for reworking the forms</u>.

Vincent Neri Testimony on Cross-Examination, June 28, 2005, at 122:18-123:09 (emphasis added).

273. However, the change order explicitly included all costs associated with completing the work in a timely manner:

All work described above is to include <u>all labor</u>, equipment, material, survey, layout, <u>project management</u>, and <u>coordination</u> deemed necessary to complete the work in a timely manner.

**Exhibit 316**, Change Order No. 207-24, dated Apr. 20, 2000 (emphasis added).

207

274.    Vincent Neri also testified that the claimed "detail change" is not included in **Exhibit 590**, and he was unsure whether the ticket was ever provided to Elm Haven:

> Q.: . . . What's not set forth here is exactly what the detail change was. That's set forth in this documentation exactly what was changed?
>
> A.: I didn't see a copy of what revision Earl gave us --
>
> Q.: Right, and I don't see --
>
> A.: -- attached to that.
>
> Q.: Yeah, I don't see the revision that he gave -- I don't see any notification that day to anyone at Elm Haven that we were just told to make this revision and we want to be paid more for it. I see no daily ticket for that day given to Elm Haven, correct?
>
> A.: There may have been a ticket. I'm not sure.

Vincent Neri Testimony on Cross-Examination, June 28, 2005, at 123:15- 124:02.

275.    Notwithstanding the fact that Elm Haven has already issued a change order to Neri for the performance of this work, Neri's pricing for this extra work claim is mathematically flawed. Furthermore, even the work claimed in this exhibit was extra work under the Subcontract, the receiving ticket included therein is mathematically incorrect. Although Vincent Neri testified that this extra work claim was for four hours of work, the ticket indicates that two laborers worked eight hours each. *See* **Exhibit 590**. Two laborers working four hours each at a rate of $40.00 totals $320.00, but the ticket indicates that the cost of this work was $640.00 -- or twice the actual cost, a likely overcharge of $320.00. *See id.*

276.    The party alleging that there has been a modification to a contract bears the burden of proof as to that issue. *See, e.g., Lar-Rob Bus Corp. v. Town of Fairfield*, 170 Conn. 397, 402 (1976), *citing* 17A C.J.S. *Contracts* § 588. Because Neri already received a change order for the work that is the subject of this claim, failed to offer any evidence as to the nature of the "change" to the change order, and failed to provide any notice of the change

208

request to Elm Haven, Neri has not met its burden, and this claim must be denied.

- **Exhibit 592 - Neri Extra Work Claim No. NC-207-146**

277.    **Exhibit 592**, Neri Extra Work Claim No. NC-207-146, in the amount of $2,564.77, is invalid because the work described thereon is included in Neri's scope of work under the Subcontract.

278.    The work that is the basis for this claim involves the resetting of three manholes on Ashmun Street based on the City of New Haven's requirements, to make them flush with the first course of pavement so as not to create a hazard for vehicular traffic. The exhibit consists of a lone, unsigned receiving ticket without any backup or indication that it was ever agreed to by any Elm Haven representative. *See* **Exhibit 592**. The exhibit indicates "attached Exclusion list details work outside our scope," but does not include an attached "Exclusion list." *See id.*

279.    Neri was obligated to install sanitary and storm sewer systems, including manholes, and was required to adjust both the new structures and existing structures to grade:

> Furnish and install complete all sanitary sewer lines and appurtenances including but not limited to trenching, backfilling, fill material, compaction, sheeting and shoring, pipe, manholes w/covers, laterals to within 5'-0" of buildings, construction of inverts, cutting of existing sanitary manholes, cleaning of existing catch basins as noted, adjustments to existing structures to grade as noted on plans, testing and taps into existing sanitary sewer systems, and complete installation of new sewer system as shown. This subcontractor responsible for all coordination with City, other utilities, other work proceeding on site, other contractors, and related work by the City of New Haven for separation of sewer/storm systems.

**Exhibit 1**, Attachment "A" to the Subcontract, Paragraph 6.I (emphasis added).

> Furnish and install complete all storm sewer lines and appurtenances including but not limited to trenching, backfilling,

209

RJT/29497/3/761609v1
02/27/06-HRT/

> fill material, compaction, sheeting and shoring, pipe, manholes
> w/covers, inlets w/grates, lateral stubs from inlets/manholes for
> roof collection system, perimeter wall drainage system and under
> pavement drainage system and taps into existing storm sewer
> systems, RCP pipe as shown if value engineering not chosen,
> PVC pipe as shown, lawn inlets, construction of inverts,
> <u>adjustments to existing structures as noted to grade</u>, testing and
> taps into existing storm system, cleaning existing basins as noted,
> inspections, and complete installation of new storm drainage
> system as shown.  This subcontractor responsible for all
> coordination with City, other utilities, other work proceeding on
> site, other contractors, and related work by the City of New
> Haven for separation of sewer/storm systems.  Abandon, remove,
> modify all existing drainage structures as indicated.

**Exhibit 1**, Attachment "A" to the Subcontract, Paragraph 6.J (emphasis added).

280.    Vincent Neri testified that this work would have been unnecessary if the top course had been immediately applied to the pavement around these manholes:

> Q.:  . . . Well, how would these manholes have otherwise be
> handled relative to the permanent paving?  When would they have
> been lowered?
>
> A.:  Well, they wouldn't have been lowered.  You just permanent
> pave the job, but I don't think, you know -- I could look at the
> drawings, but I recall there was a sequence note in the drawing
> about having all the paving finished before the people occupied
> the blocks.

Vincent Neri Direct Testimony, June 15, 2005, at 33:01-33:08.

281.    However, the Subcontract explicitly contemplated delaying the application of the top course until the end of the Project, or until a time to be determined by Elm Haven:

> Asphalt "wearing" course shall not be installed <u>until the end of</u>

210

<u>the project or as determined by [Elm Haven]</u>.

**Exhibit 1**, Attachment "A" to the Subcontract, Paragraph 6.Q (emphasis added).

282.    This work was included in Neri's work under the Subcontract, *see* **Exhibit 1**, Attachment "A" to the Subcontract, Paragraphs 6.I and 6.J, and was necessary to protect work and provide for safety on the Project site, given that Ashmun Street North was in operation at this time.

283.    The party alleging that there has been a modification to a contract bears the burden of proof as to that issue. *See, e.g., Lar-Rob Bus Corp. v. Town of Fairfield*, 170 Conn. 397, 402 (1976), *citing* 17A C.J.S. *Contracts* § 588.  Since this work is part of Neri's Subcontract and was never agreed to by Elm Haven, it should be denied.  In addition, the exhibit and testimony offered at trial by Neri includes only an unsigned receiving ticket and no further backup or indication as to the true nature of the work.

- **Exhibit 595 - Neri Extra Work Claim No. NC-015-204**

284.    **Exhibit 595**, Neri Extra Work Claim No. NC-015-204, in the amount of $1,031.08 is invalid because it is improperly priced.

285.    The exhibit includes a memorandum from Lorraine Beckwith to Stephen Simoncini directing Neri to perform core drilling into existing mains as directed by the City Inspector for $291.00 each, and to construct chimneys on lateral connections as directed by the City Inspector for $153.00 each, at designated sewer mains. *See* **Exhibit 595**, Elm Haven letter to Neri, dated Mar. 31, 1999.

286.    Ivan Carlsen testified that his signature on the receiving ticket included in this exhibit was intended to verify that Neri performed the designated coring:

Q.:  Do you have [**Exhibit 595**] in front of you?

A.:  Yes.

Q.:  Okay.

211

And whose signature is that at the bottom?

A.: Mine.

Q.: And what was the purpose of your signing this job invoice?

A.: Verifying the coring.  It says right there.

Q.: Verifying the coring?

A.: Yes, the work to be done.

Ivan Carlsen Testimony on Cross-Examination, Sep. 22, 2005, at 54:15-54:24.

287.    Vincent Neri testified that Ivan Carlsen approved the increased rate for the two drillings in **Exhibit 595**, but Ivan Carlsen testified that he only verified the actual coring, and that he never had the authority to approve additional work.  *See* Ivan Carlsen Direct Testimony, Sep. 22, 2005, at 24:19-24:23; *see also* **Exhibit 13**, Letter from Lorraine Beckwith to Stephen Simoncini, dated June 22, 1999 ("[i]n no case is the Project Superintendent authorizing dollars").

288.    Furthermore, even if the work included in **Exhibit 595** had been authorized, the rates on the receiving ticket are fifty percent higher than those indicated in Lorraine Beckwith's memorandum of March 31, 1999.  *See* **Exhibit 595**.  Lorraine Beckwith's memorandum states that core drilling into the top of existing mains as directed by the City Inspector is to be performed at a rate of $291.00 each, yet the receiving ticket in **Exhibit 595** seeks $437.00 for each of two such drillings.  *See id.*

289.    Two corings at $291.00 each, plus an additional ten percent markup for overhead and profit, *see* **Exhibit 1**, Article 2.6 of the Subcontract, totals $640.20.

290.    If the work in this extra work claim is deemed valid, the correct amount to be charged in accordance with Lorraine Beckwith's memorandum of March 31, 1999, is $640.20, and not $1,031.08.  *See* **Exhibit 595**.

- **Exhibit 597 - Neri Extra Work Claim No. NC-015-204-G**

RJT/29497/3/761609v1
02/27/06-HRT/

291.    **Exhibit 597**, Neri Extra Work Claim No. NC-015-204, in the amount of $1,082.98, is invalid because it is improperly priced.

292.    The exhibit seeks compensation for the drilling of two sanitary chimney/risers in Block G, in June 2000.  *See* **Exhibit 597**.  Vincent Neri testified that this exhibit relates to the Lorraine Beckwith memorandum included in **Exhibit 595**, *supra*.  *See* Vincent Neri Direct Testimony, June 15, 2005, at 40:21:40:24.

293.    However, the exhibit treats the unit rate in the Lorraine Beckwith memorandum as if it is a per-linear-foot unit price.  The receiving ticket states that Neri performed six linear feet of drilling, at the purported unit price of $153.00 per linear foot.  *See* **Exhibit 597**.  However, Lorraine Beckwith's memorandum states that the unit price is to be rated <u>per chimney/riser</u>, not per linear foot:

> Construct chimneys on lateral connections to mains 30" in
> diameter only on mains below 8' and as directed by City
> Inspector, in the amount of <u>$153.00 each</u>.

**Exhibit 595**, Elm Haven letter to Neri, dated Mar. 31, 1999.

294.    As with **Exhibit 595**, Ivan Carlsen's signature on the draft receiving ticket reads "verify installation."  *See* **Exhibit 597**.

295.    Two chimneys at $153.00 each, plus an additional ten percent markup for overhead and profit, *see* **Exhibit 1**, Article 2.6 of the Subcontract, totals $336.60.

296.    If the work in this extra work claim is deemed valid, the correct amount to be charged in accordance with Lorraine Beckwith's memorandum of March 31, 1999, *see* **Exhibit 595**, is $336.60, and not $1,082.98.  *See* **Exhibit 597**.

- **Exhibit 600 - Neri Extra Work Claim No. NC-019-204-1-G**

297.    **Exhibit 600**, Neri Extra Work Claim No. NC-019-204-1-G, in the amount of $30,625.00, is invalid because the unsuitable material that is the subject of this claim was located within the contract limit lines for either the parking lot area or a utility trench line in Block G.  Vincent Neri was not sure of the location.  *See* Vincent Neri Testimony on Cross-

213

Examination, June 24, 2005, at 118:13-126:11.  In either case, Neri is not entitled to additional compensation because the excavation, removal and replacement of this material were included in its original scope of work.  *See* John Ford Direct Testimony, Oct. 4, 2005, at 118-120.

298.    On August 10, 2000, Elm Haven specifically directed Neri to remove the unsuitable material that Neri was stockpiling on Block G because it was impeding the progress of other work for other trades on the project.  Mr. Ford's direction to Neri was as follows:

> As previously stated by EHC on several occasions, the subject material was excavated from areas within the original cut lines of the contract documents.  Therefore, removal and disposal are included in your firm's original contract scope.  Reference is made to EHC-Neri Subcontract Agreement, Rider page 2 of 10, item G,

> "Subcontract includes hauling and disposal of all unsuitable and/or surplus material off-site.  All excavation shall be performed on an unclassified basis.  All unsuitable material within cut material and as noted in the geo-technical report to be removed from site and legally disposed of."

**Exhibit 444**, Elm Haven letter to Neri, dated Aug. 10, 2000.

299.    John Ford testified that Neri attempted to use this material elsewhere on the Project but could not, and therefore, Neri was required to remove the material, under the Subcontract:

> We had a big pile of material in Block E and G that didn't pass for anything that he tried to -- Neri tried to get it approved for. At one time, he tried to get this pile approved for gravel sub-base.  It wasn't approved, too many [fines].   Then he tried topsoil, couldn't get it approved for that, and it became unsuitable to him.

214

> I mean, as far as I'm concerned, and what the contract says, is
> that material is included in your contract. You can't use it, you
> have to remove it.

John Ford Direct Testimony, Oct. 4, 2005, at 116:20-117:04.

300. Neri is not, therefore, entitled to additional compensation in the amount of $30,625.

301. See **Responses 1 to 23** regarding the extra work claim in **Exhibit 594**, for a description of the relevant Subcontract provisions that are also applicable to **Exhibit 600**, and which require the rejection of this claim.

- **Exhibit 601 - Neri Extra Work Claim No. NC-019-204-2-G**

302. **Exhibit 601**, Neri Extra Work Claim No. NC-019-204-2-G, in the amount of $1,925.00, is invalid because the unsuitable material that is the subject of this claim was located within the contract limit lines for the storm drainage trench line at issue. *See* Vincent Neri Testimony on Cross-Examination, June 24, 2005, at 126:18-127:25. As such, Neri is not entitled to additional compensation because this work was included as part of its original scope of work. *See* John Ford Direct Testimony, Oct. 4, 2005, at 117-118.

303. See **Responses 1 to 23** regarding the extra work claim in **Exhibit 594**, for a description of the relevant Subcontract provisions that are also applicable to **Exhibit 601**, and which require the rejection of this claim.

304. Elm Haven never agreed to compensate Neri for the work associated with this extra work claim. *See* **Exhibit 601**.

- **Exhibit 605 - Neri Extra Work Claim No. NC-045-204-1**

305. **Exhibit 605**, Neri Extra Work Claim No. NC-045-204-1, in the amount of $1,533.64, is invalid because the materials described thereon were included in Neri's scope of work under the Subcontract.

306. Neri claims that this request is for "price increases" for "materials" due to work

RJT/29497/3/761609v1
02/27/06-HRT/

performed out-of-sequence, but Neri also testified that it may be because of having to purchase smaller quantities, and not necessarily price increases. Moreover, Neri did not offer any evidence as to what the "materials" were that are the subject of this claim, what work was performed out of sequence or what the vendor prices were for purchasing large quantities as opposed to small quantities. The best that Vincent Neri could offer was his testimony that this "may have been related to water services, or something like that," and that "Jim Canning worked something out with us." *See* Vincent Neri Direct Testimony, June 15, 2005, at 56:15-57:10.

307.     Nevertheless, the Subcontract specifically obligated Neri to provide all labor, materials, equipment, tools and supervision to install the on-site water lines and appurtenances. *See* **Exhibit 1**, Attachment "A" to the Subcontract, Paragraph 6.L.

308.     Vincent Neri testified that he believed that there was correspondence between Elm Haven and Neri concerning this claim for "smaller quantities of construction materials," *see* Vincent Neri Direct Testimony, June 15, 2005, at 56:17-56:23, but such correspondence is not included with **Exhibit 605**, and was not entered into evidence at trial. The exhibit consists of an unsigned receiving ticket and a transmittal page. *See* **Exhibit 605**; *see also* Vincent Neri Testimony on Cross-Examination, June 28, 2005, at 126:16-128:01.

309.     Although Vincent Neri claimed that there was an agreement made with James Canning that Neri would be compensated extra for this extra work claim, James Canning testified that no such "agreement" was ever made:

> Q.: Sir . . . <u>did you ever approve such price increases</u> for Neri Construction?
>
> A.: <u>I don't have an idea what this is all about. I just have no idea</u>.
>
> Q.: Did you ever approve --
>
> A.: <u>No</u>.
>
> Q.: -- any price increase for Neri?

216

> A.: <u>No.  No, I don't even know what the increase of materials --</u>
> <u>No, I don't have a clue what this is.</u>
>
> Q.: Did you ever see -- Did you ever receive this document, that
> you can recall?
>
> A.: This here?
>
> Q.: Yes.
>
> A.: No.  Nope, I never did.

James Canning Direct Testimony, Sep. 23, 2005, at 03:13-04:01 (emphasis added).

310.    The party alleging that there has been a modification to a contract bears the burden of proof as to that issue.  *See, e.g., Lar-Rob Bus Corp. v. Town of Fairfield*, 170 Conn. 397, 402 (1976), *citing* 17A C.J.S. *Contracts* § 588.  Neri has failed to offer any credible evidence to support any entitlement for additional compensation and was not even sure as to what the "materials" at issue included or what the specific price increases at issue were about.  Also, to the extent that the price increases "may" have related to water services, the provision of water services materials was included in Neri's scope of work under the Subcontract.  Because the exhibit includes only an unsigned receiving ticket with no further backup or indication that this work was authorized by Elm Haven, Neri has not met its burden.  Therefore, this extra work claim must be denied.

- **Exhibit 607 - Neri Extra Work Claim No. NC-075-204-1-E**

311.    **Exhibit 607**, Neri Extra Work Claim No. NC-075-204-1-E, in the amount of $7,951.56, is invalid because the work described therein was covered by change orders issued from Elm Haven to Neri.

312.    **Exhibit 607** consists of Neri receiving tickets covering labor to construct chimney foundations at townhouses in Block E in March 2000, with rebar, form material, and concrete to be provided by Elm Haven.  *See* **Exhibit 607**.

313.    In May and June 2000, Elm Haven issued two change orders in total amounts of

217

$2,725.28 to Neri for labor, materials and equipment required to construct these chimney foundations. *See* **Exhibit 254**, Change Order No. 204-21, dated May 30, 2000, in the amount of $1,446.28 (based on tickets from March 2 and 5, 2000); **Exhibit 255**, Change Order No. 204-22, dated June 30, 2000, in the amount of $1,279.00 (based on ticket from March 6, 2000).

314.    Ivan Carlsen signed four of the twelve tickets included in this exhibit, relating to amounts totaling $2,352.60, or nearly the amount of the change orders approved by Elm Haven. *See* **Exhibit 607**.

315.    The party alleging that there has been a modification to a contract bears the burden of proof as to that issue. *See, e.g., Lar-Rob Bus Corp. v. Town of Fairfield*, 170 Conn. 397, 402 (1976), *citing* 17A C.J.S. *Contracts* § 588. Neri has not met its burden. Because Elm Haven has already issued change orders covering the verified work included in **Exhibit 607**, this extra work claim must be denied.

- **Exhibit 608 - Neri Extra Work Claim No. NC-204-56**

316.    **Exhibit 608**, Neri Extra Work Claim No. NC-204-56, in the amount of $10,628.45, is invalid because the stockpile of unsuitable materials that is the subject of this claim was excavated from areas within the contract limit lines within Block E of the project. As such, the excavation, removal and replacement of this material were within the scope of Neri's original subcontract obligations. *See* John Ford Direct Testimony, Oct. 4, 2005, at 113-116.

317.    See **Responses 1 to 23** regarding the extra work claim in **Exhibit 594**, for a description of the relevant Subcontract provisions that are also applicable to **Exhibit 608**, and which require the rejection of this claim.

318.    Elm Haven never agreed to issue additional compensation to Neri to perform this work. Rather, Neri was specifically directed by Elm Haven to remove the stockpiled material as it was obligated to under the original scope of the subcontract. *See* **Exhibit 444**, Elm Haven letter to Neri, dated Aug. 10, 2000. Neri is not, therefore, entitled to additional compensation in the amount of $10,628.45 for this work.

218

319.    The party alleging that there has been a modification to a contract bears the burden of proof as to that issue. *See, e.g., Lar-Rob Bus Corp. v. Town of Fairfield*, 170 Conn. 397, 402 (1976), *citing* 17A C.J.S. *Contracts* § 588. Neri has not met its burden. Because no Elm Haven representative ever approved or accepted that Neri should receive additional compensation for this work, this extra work claim must be denied.  .

- **Exhibit 609 - Neri Extra Work Claim No. NC-204-57**

320.    **Exhibit 609**, Neri Extra Work Claim No. NC-204-57, in the amount of $1,893.14, is invalid because Neri was obligated to provide for testing and inspection of the Subcontract work at all times, without exception.

321.    Under the Subcontract, Neri was obligated to allow for the testing of all items, at all times, without exception:

> The Subcontractor shall, <u>at its own expense</u>, provide facilities <u>at all times</u> for the inspection or testing of the work by the Contractor, the Architect, or other authorized representative of the Contractor or the Owner.

**Exhibit 1**, Article 2.9 of the Subcontract (emphasis added).

> The Subcontractor agrees that in performance of the Subcontract Work it will:
>
> Provide sufficient, safe and proper facilities <u>at all times</u> for the protection of the Subcontract Work and for the <u>inspection</u> of the Subcontract Work by the Contractor and the Architect, or their authorized representatives.

**Exhibit 1**, Article 6.1.3 of the Subcontract (emphasis added).

322.    Neri was also specifically obligated to provide for the testing of sanitary sewers in particular:

> <u>Furnish and install complete</u> all <u>sanitary sewer lines</u> and

> appurtenances including but not limited to trenching, backfilling, fill material, compaction, sheeting and shoring, pipe, manholes w/covers, laterals to within 5'-0" of buildings, construction of inverts, cutting of existing sanitary manholes, cleaning of existing catch basins as noted, adjustments to existing structures to grade as noted on plans, <u>testing and taps into existing sanitary sewer systems</u>, and complete installation of new sewer system as shown. This subcontractor responsible for all coordination with City, other utilities, other work proceeding on site, other contractors, and related work by the City of New Haven for separation of sewer/storm systems.

**Exhibit 1**, Attachment "A" to the Subcontract, Paragraph 6.I (emphasis added).

323.    **Exhibit 609** includes an unsigned receiving ticket and invoices, but no indication that this work was ever approved or authorized by Elm Haven. *See* **Exhibit 609**.

324.    The party alleging that there has been a modification to a contract bears the burden of proof as to that issue. *See, e.g., Lar-Rob Bus Corp. v. Town of Fairfield*, 170 Conn. 397, 402 (1976), *citing* 17A C.J.S. *Contracts* § 588. Neri has not met its burden. Because the work included in **Exhibit 607** is included in Neri's scope of work under the Subcontract, this extra work claim must be denied.

- **Exhibit 610 - Neri Extra Work Claim No. NC-204-78**

325.    **Exhibit 610**, Neri Extra Work Claim No. NC-204-78, in the amount of $5,212.50, is invalid because the work described therein was included in Neri's scope of work under the Subcontract.

326.    Neri was obligated to perform general site and building cuts and fills, mass excavations and rough grading to the new grades specified in the Contract Drawings.

> Perform general site and building cut and fill, mass excavation and <u>rough grading to new grades established by Contract Drawings</u>. Site fill with onsite materials (if deemed suitable) or borrow materials. Building fill with onsite materials (if deemed

RJT/29497/3/761609v1
02/27/06-HRT/