**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____

ELM HAVEN CONSTRUCTION, L.P.          CIVIL NO. 3:01-CV-01307 (WIG)

      Plaintiff

V.

NERI CONSTRUCTION, LLC.

      Defendant/Counterclaim Plaintiff          FEBRUARY 27, 2006
_____

<u>NERI CONSTRUCTION'S REBUTTAL AND
PROPOSED FINDINGS OF FACT/CONCLUSIONS OF LAW
TO ELM HAVEN CONSTRUCTION'S SUBMITTAL
AND
NERI'S PROPOSED FINDINGS OF FACT
REGARDING ITS EXTRA WORK CLAIMS</u>

I.     <u>PROPOSED FINDINGS OF FACT IN REBUTTAL TO EHC</u>:

    A.   <u>UNSUITABLE MATERIALS</u>.

        Neri provides the following as general rebuttal to EHC's position set forth in Section I.D. and Section II.C. of EHC's submittal.  There is specific rebuttal and specific recitation of supporting testimony in the sections of Neri's Extra Work claims which relate to unsuitable materials.

        1.    <u>Proposed Findings of Fact</u>

- The Contract, Paragraph 1.1, indicates that Neri is "to perform the work… in accordance with the Specifications and Drawings prepared by the Architect."

- The Contract, Paragraph 6, Attachment A, indicates that the "subcontractor will furnish and install all labor, materials, equipment, tools and supervision to do all Site Development Work per Contract Drawings and Specifications."

- The Contract, Attachment A, Paragraph g, indicates that "all unsuitable material within cut material <u>and as noted in the Geotechnical Report</u> to be removed from site and legally disposed of."

- The Geotechnical Report does not note that there is to be excavation of unsuitable material from utility trenches.

- In August, 1999 LEA, the design engineer, in response to a request from L. Beckwith, provided its interpretation of the Contract documents' intent regarding pay limits and unsuitable material during utility trench excavation.  LEA clearly indicated that removal and disposal of unsuitables at utility trenches was to be compensated at established unit prices.  **Exhibit 699.**

- EHC established a procedure by which it would review unsuitables and confirm the quantity to be removed, disposed of, and backfilled with suitable material.  Based upon this procedure, EHC paid for the removal and disposal of unsuitables at utility trenches.  **Exhibits 683 & 684, 238, 298.**

- EHC in the spring, 2000 yet again requested from LEA "clarification of the procedure required by specification when unsuitable material is encountered during operations other than building excavation."  **Exhibit 677.**

- LEA, in response to EHC's request, indicated that the removal and replacement of unsuitables should be paid for as an Extra.

- The removal and disposal of unsuitable material from areas other than building excavation was Extra Work to the Contract.

2

2.    Supporting Trial Testimony and Exhibits

- Trial Transcript, September 22, 2005
  p. 14 – Line 13, p. 14 – Line 15

- Trial Transcript, September 23, 2005
  p. 174 – Line 25, p. 180 – Line 14

- Trial Exhibits 662, 665, 677, 683, 684 and 699.

B.    CONFIRMATION OF CHANGE DOCUMENTS.

Neri's sets forth in this section its general rebuttal to EHC's position regarding the development, use and execution of Confirmation of Change documents, in particular reference to EHC's proposed findings Section I, E. The specific position of Neri's proposed finding of fact as to each Extra Work claim relating to each particular Confirmation of Change is set forth in Neri's submittal on its Extra Work claims.

1.    Proposed Findings of Fact

- The Contract does not have any limiting language restricting the type of document that might be used to authorize Neri to perform Extra Work on the Project.

- Neri (Carl Neri and Vincent Neri) discussed with EHC (Jim Canning) the use of the document "Confirmation of Change" to document Neri's performance of Extra Work on the Project.

- The completed, filled out Confirmation of Changes were faxed to Mr. Canning on December 10, 1999.

- Prior to Ivan Carlsen signing the Confirmation of Change documents he called Mr. Canning and reviewed each Confirmation of Change with him.

- As a result of that conversation, Canning instructed Carlsen to sign the Confirmation of Changes and told him to make specific changes and amendments to the document if Canning felt it was required.
- Series of Confirmation of Change documents were signed by Mr. Carlsen on December 11, 1999 and December 17, 1999.

3

- There is no evidence that anyone from EHC told anyone from Neri at the time the Confirmation of Changes were signed that it would be subsequently determined whether the work at issue constituted a valid Extra Work claim.

- There is no evidence that at the time the Confirmation of Changes were signed by Carlsen that EHC objected to the use of the document "Confirmation of Change."

- While Canning instructed Carlsen to make some changes to a few of the Confirmation of Changes prior to Carlsen signing them, none of the Confirmation of Change documents included any limiting language or any reservation of rights language.

- While Canning claims he never reviewed **Exhibit 664**, EHC did not produce any evidence to rebut the fact that the specific Confirmation of Changes listed in **Exhibit 664** were faxed to, and received by, EHC on December 10, 1999.

- EHC representative, Ivan Carlsen, understood that Neri expected it would be paid for the work reflected in the Confirmation of Changes because they had been signed.

2.    <u>Supporting Testimony and Exhibits</u>

- Trial Transcript, September 13, 2005
  p. 44 – Line 7, p. 48 – Line 19
  p. 158 – Line 12, p. 163 – Line 22

- Trial Transcript, September 22, 2005
  p. 155 – Line 5, p. 156 – Line 25

- Trial Transcript, June 13, 2005
  p. 221 – Line 21, p. 222 – Line 25

- Trial Transcript, June 14, 2005
  p. 62 – Line 16, p. 63 – Line 19

- Trial Transcript, October 5, 2005
  p. 133 – Line 12, p. 144 – Line 3

- Trial Exhibit 664.

C.    <u>YEAR 2000 PROGRESS</u>.

    1.    <u>Proposed Findings of Fact</u>

It is important to note that none of the default letters issued by EHC in 2001 regarding the remaining work reference alleged Project delays in prior construction seasons as an underlying reason for a default (**See, Exhibits 148, 152, 158 and 172**). Accordingly, Neri submits that the events of 2000 are irrelevant to the determination of whether or not the alleged defaults in 2001 were proper. Neri respectfully submits that each of the defaults issued in 2001 must be looked at on its own merit. Nevertheless, Neri responds to EHC's 2000 proposed Findings of Facts, and submits the following as rebuttal to Sections I.H, I and J of EHC's submission.

- In March, 2000, EHC issued to Neri a schedule for the completion of the remaining work that EHC acknowledged was "an <u>aggressive</u> site schedule" and "did not allow for delays." (<u>Emphasis</u> <u>added</u>.)

- As of March 21, 2000, EHC acknowledged that there were many delays impacting the progress of the schedule. EHC further indicated that it "anticipates Neri will request compensation for delays and subsequent compensation for the required acceleration to complete the work."

- On May 10, 2000, EHC advised the owner that "several unforeseen conditions, and design conflicts which BCJ has yet to resolve, have <u>dramatically</u> impacted our ability to stay on schedule." (<u>Emphasis</u> <u>added</u>.)

5

- On June 5, 2000, EHC advised the owner regarding Blocks E & F that it "has not received any survey control information from BCJ." EHC went on to indicate further that "the Project has suffered <u>major</u> delays as a result of this lack of information." (<u>Emphasis</u> <u>added</u>.) EHC also indicated "the delays incurred to date … will <u>significantly</u> impact the completion of Blocks E & F…." (<u>Emphasis</u> <u>added</u>.)

- On June 13, 2000, EHC yet again requested that "adequate control point information" be forwarded, and went on to indicate that "the lack of this information has <u>significantly</u> impacted EHC and the Project Schedule." (<u>Emphasis</u> <u>added</u>.)

- Commencing July 20, 2000 and through September 11, 2000 EHC issued 26 Change Orders addressing many of the issues that had been plaguing the Project's completion since the beginning of 2000, never mind 1999.

- Each of these Change Orders addressed the issues that had been delaying the Project.

- Neri, because of the delays resulting from the issues reserved its right to claim additional schedule time as a result of the delays.

- Neri's work as of July-September, 2000 had already been impacted and delayed by the issues plaguing the job when it remobilized to the Project in March, 2000.

- Similar design issues continued into 2001 on the Project.

  2.    <u>Supporting Trial Testimony and Exhibits</u>

- Trial Transcript, June 17, 2005
  p. 123 – Line 17, p. 161, Line 4

- Trial Exhibits 256-283, 624, 626, 655, 659, 637, 638.

6

D.   EHC's PROPOSED CHANGE ORDER NO. 204-55.

Neri submits the following as rebuttal to Section K of EHC's submittal.

a.   Surveying Services:

1.   Proposed Findings of Fact

• The Project was plagued with survey problems from its inception.

• Because of the persistent survey problems, significant costs were incurred to remedy the problems.

• EHC in 1999 (J. Canning) agreed to provide survey control points and to the extent there were discrepancies, EHC agreed to bear the costs.

• Despite the significant survey control problems that even he acknowledged, John Ford assessed this backcharge against Neri based upon the performance of survey work on the Project well prior to his involvement with the Project.

• In assessing the backcharge there is no supporting documentation provided indicating what DTC's costs were for, nor did John Ford have any detailed explanation as to how he calculated this backcharge against Neri.

• In May, 2000, the owner was looking to assess costs against the design team for, amongst other things, lack of survey control on the Project.

• EHC's backcharge against Neri for the survey costs is inappropriate and unsupported.

2.   Supporting Trial Testimony and Exhibits

• Trial Transcript, June 10, 2005
  p. 38 – Line 6, p. 49, Line 8

- Trial Transcript, June 15, 2005
  p. 168 – Line 2, p. 2 – Line 24

- Exhibit 625.

b.  <u>Sonatube Excavation</u>:

    1.    <u>Proposed Findings of Fact</u>

- Excavation for sonatubes was not part of Neri's scope of work.

- EHC paid Neri for sonatube excavation as an extra on the Project.

- EHC's backcharge against Neri for sonatube excavation is inappropriate.

    2.    <u>Supporting Trial Testimony and Exhibits</u>

- Trial Transcript, June 15, 2005
  p. 169 – Line 14, p. 170, Line 13

- Exhibit 267.

c.  <u>Concrete Stairs and Railings</u>:

    1.    <u>Proposed Findings of Fact</u>

- The Contract did not indicate the composition of the steps from the building units.

- EHC requested a clarification of the issue, and having received one, requested that Neri install concrete steps at the building units as an extra to the Contract.

- Prior to the issuance of Change Order No. 55, EHC executed Confirmation of Changes confirming that the work relating to the concrete steps at the buildings was extra to the Contract.

8

- Prior to the issuance of proposed Change Order No. 55, no one from EHC indicated that the work associated with the installation of concrete steps at the building units was part of Neri's scope of work, nor that Neri would be backcharged for this work.

- The Contract does not indicate the installation of hand railings for the stairs at the building units and, thus, this work would have been an extra to Neri's Contract.

- Prior to the issuance of proposed Change Order No. 55, no one from EHC indicated to Neri that the installation of handrails at the units was Neri's scope of work, nor did EHC indicate that it would have others perform the work and backcharge Neri.

- With regard to the patio repair, EHC did not request that Neri make any repair, nor did EHC indicate to Neri that it had performed defective work.

- The patio repair was necessitated by the error of another subcontractor.

- EHC's backcharge against Neri for the concrete stairs and railings is inappropriate.

    2.    <u>Supporting Trial Testimony and Exhibits</u>

- Trial Transcript, June 15, 2005
  p. 170 – Line 20, p. 178, Line 24

- Trial Transcript, June 17, 2005
  p. 2 – Line 18, p. 13 – Line 13

- Exhibit 633.

d.   <u>Street Cleaning</u>:

    1.    <u>Proposed Findings of Fact</u>

- Subsequent to Neri having performed the contractual responsibility, EHC's other subcontractors would track mud on the streets.
- Neri is not responsible to perform clean-up for the other EHC subcontractors.

- EHC's backcharge against Neri for the street cleaning is inappropriate.

    2.    Supporting Trial Testimony and Exhibits

- Trial Transcript, June 17, 2005
  p. 13 – Line 20, p. 15, Line 16

- Exhibit 651.

e.    Waters Construction – Paving – October, 2000:

    1.    Proposed Findings of Fact

- Neri had a signed Contract through its subcontractor, Hammonasset Construction, with Empire Paving to perform the paving in October, 2000.

- EHC was aware of Hammonasset Construction because Hammonasset Construction had previously, through Tilcon, performed paving on the Project in 1999.

- Pursuant to EHC's request, Neri forwarded *via fax* a copy of the executed Contract on October 6, 2000.

- As of and prior to October 6, 2000, Empire was already on the Project performing fine grading of the roads which were ultimately paved by Waters.

- The Contract faxed to John Ford on October 6, 2000 met his requirements in that it contained Ford's required start and completion dates for the paving.

- Kim Neri, following the fax transmittal of the Contract, spoke with John Ford, in which conversation he confirmed that he had received the Contract. Mr. Ford did not indicate in that conversation that he was proceeding to have the work performed by another contractor.
- Subsequent to Kim Neri's telephone conversation with Mr. Ford, he faxed to Neri his letter indicating that he was having the paving work performed by another contractor.

- EHC's "default letter" taking the paving work from Neri does not indicate that Neri is in default for not commencing the paving work, nor does it recite any contractual provision for deleting the work from Neri and having it performed by another contractor.

- Neri had a Contract, through Hammonasset Construction, to have the paving work performed by Empire for $148,080.85.

- The credit to EHC for the paving work in question should be the $148,080.85 that would have been paid to Empire to have the work completed.

    2.       <u>Supporting Trial Testimony and Exhibits</u>

- Trial Transcript, September 13, 2005
  p. 175 – Line 15, p. 184, Line 19

- Exhibits 635, 636.

f.    <u>Repairs to Sanitary Laterals, Reset Manhole Frames,<br>Sidewalk and Handicap Ramps</u>:

    1.       <u>Proposed Findings of Fact</u>

(i)    <u>Sanitary Lateral Repairs</u>:

- Installed sanitary laterals were inspected and approved prior to Neri backfilling.

- Subsequent to Neri backfilling, the utility companies performed their work during which time the sanitary laterals were damaged.

- Neri was not responsible for scheduling the utilities work.

- The Contract, at Paragraph 3.5, provides that Neri is to be compensated to make repairs to work damaged by others and, thus, if Neri performed these repairs it would have been an Extra to its Contract.

- As of January, 2001, EHC had a pending Change Order to the owner in the amount of $30,000.00 regarding "Lateral Repairs due to Utility/Site Work Contract."

- The EHC Change Order reconciliation attached to **Exhibit 676** clearly sets forth as a pending Change Order the cost for this work, and describes it as "Expenses on Lateral Repairs Caused by Utility."

- EHC backcharge against Neri for the lateral repairs is inappropriate.

    2.    Supporting Trial Testimony and Exhibits

- Trial Transcript, June 15, 2005
  p. 188 – Line 4, p. 192, Line 17

- Exhibit 676.

(ii)    Sidewalk and Handicap Ramps:

- On October 17, 2000, EHC requested that Neri cease work on the handicap ramps at New Street 3, 4, Webster Street and Foote Street until a design fix can be prepared.

- As of October 18, 2000, John Ford indicated to the owner that there were "still outstanding design issues" with regard to these handicap ramps.

- On October 23, 2000, Neri indicated that it was still waiting for the design changes regarding these handicap ramps.

- On October 24, 2000, EHC informed Neri that it was going to have the work relating to these handicap ramps performed by others.  It did not indicate that it intended to backcharge Neri for the performance of this work.

- A redesign was provided in the field to the new contractor, PDF, on October 24, 2000.

- Under its arrangement with Waters Construction/PDF, EHC required that PDF provide signed time-and-material tickets for the performance of the

work associated with these handicap ramps. PDF did not provide any such signed tickets to EHC.

- If Neri had performed this work associated with the redesign it would have been extra to its Contract.

- As of January, 2001, EHC had a pending Change Order for the revised handicap ramps performed by PDF.

- EHC's backcharge against Neri for the sidewalks and handicap ramps is inappropriate.

  2.  Supporting Trial Testimony and Exhibits

- Trial Transcript, June 10, 2005
  p. 49 – Line 21, p. 63, Line 5

- Exhibits 639, 640, 641, 643, 676.

g.  Radius Curb and Bullnose Granite:

  1.  Proposed Findings of Fact

- The Contract plans did not provide for radius curbing in the area in question.

- During Neri's installation of the curbing in accordance with the plans the City of New Haven required that radius curbing be installed.

- The purchasing of this radius curbing was an extra to Neri's Contract.

- EHC's backcharge against Neri for the curb and granite is inappropriate.

    2.    <u>Supporting Trial Testimony and Exhibits</u>

- Trial Transcript, June 17, 2005
  p. 19 – Line 11, p. 24, Line 22

E.    <u>REMAINING WORK IN BLOCK G2, SPRING, 2001</u>.

    1.    <u>Proposed Findings of Fact</u>

Neri submits the following as rebuttal to Section I.L. of EHC's submission.

- The $189,000.00 Change Order executed for the Block G2 work excluded many items, including the performance of topsoil placement at the Townhouses.

- Neri (Carl Neri), on July 19, 2001, received at a job meeting, at which he was in attendance, Schedules dated July 11, 2001 for the completion of Block G2 – Townhouses 1, 2 and 3.

- The only significant work remaining at Townhouses 1, 2 and 3 as of July 11, 2001 was the site concrete. There was a small percentage of work for utility trenching and drainage at Townhouses 1 and 2, which at the time was the subject of some design changes. The significant work remaining was the final grading and concrete work to be performed after the actual Townhouses had been constructed.

- As of July 11, 2001, the site concrete work was not scheduled to start until July 19, 2001 for Townhouse 1, July 24, 2001 for Townhouse 2, and August 13, 2001 for Townhouse 3. This was to allow the other trades to complete certain of their work beforehand.

- Shortly after the July 19, 2001 meeting, Neri was served by EHC with the underlying Complaint in this matter dated July 11, 2001.

- Neri was not afforded the opportunity to perform the site concrete work and the other small remaining work at Block G2.

- EHC ultimately paid Sweeney $149,000.00 to allegedly perform the work remaining at G2.

- Neri's cost to complete the work remaining at Block G2 totaled $9,800.00

    2.    <u>Supporting Trial Testimony and Exhibits</u>

- Trial Transcript, June 7, 2005
  p. 212 – Lines 4-19

- Trial Transcript, September 13, 2005
  p. 9 – Line 17, p. 38, Line 21
  p. 49 – Line 13, p. 65 – Line 10

- Exhibits 653, 654, 655a., 673, 649, 382.

F.    <u>REMAINING ROAD WORK IN SPRING, 2001</u>.

    Neri submits the following as rebuttal to Section I.L. and II.C. of EHC's submittal.

(a)  <u>Ashmum Street (South) – Ashmun, Between Webster and Bristol</u>

    1.    <u>Proposed Findings of Fact</u>

- The bid documents provided to Neri for the Project indicate that Ashmun Street (South), between Webster and Bristol, was part of Phase II of the work, not Phase I, that Neri was being asked to bid. (Throughout the trial this was referred to as Ashmun Street (South).)

- At no point during the negotiation of the Contract did anyone from EHC request that Neri include the roadwork relating to Ashmun Street (South) in its bid.

- Neri's bid did not include pricing for any roadwork in Ashmun Street (South).

- Ashmun Street (South) is depicted on Drawing SS-26.

- Neri did receive Drawing SS-26 from EHC, which drawing shows laterals from Ashmun Street (South) into Block D. EHC specifically requested that Neri include Block D work in its scope.

- Neri needed Drawing SS-26 in order to perform the lateral work from Ashmun Street (South) into Block D.

- Neri's bid included the cost of the lateral work from Ashmun Street (South) into Block D, as part of its Block D schedule of values.

- Drawing SS-26 was revised on September 1, 2000 as SS-26-A, and subsequently on February 2, 2001, May 11, 2001 and October 25, 2001.

- EHC never forwarded to Neri Drawing SS-26-A1 or any of the subsequent revisions thereto.

- Neri would need SS-26-A to properly perform the roadwork at Ashmun Street (South).

- EHC issued Change Order #23 on July 20, 2000 to Neri, which included an increase in price for the base material for "all remaining roadways for the completion of Phase I." Ashmun Street (South) was not listed as one of the remaining roadways.

- EHC thereafter again referenced this issue of the base material for the remaining roadways in its letter of August 10, 2000. Ashmun Street (South) was not listed.

- EHC issued Change Order #39 as a follow-up to its letter of August 10, 2000, to reflect an increase in price for aggregate base for all of the then-remaining roadways. Ashmun Street (South) was not included in the Change Order.

- In January, 2001, when John Ford was evaluating how to handle a credit from Neri for the remaining roadways, he concluded that EHC would lose on any argument that Ashmun Street (South) was included in Neri's scope of work.

- In January, 2001, EHC had a pending Change Order to the owner for the inclusion of Ashmun Street (South) road cost into the Contract.

16

- EHC's demands on April 12, 2001 and April 19, 2001 that Neri perform the work associated with Ashmun Street (South) was improper and wrongful.

- EHC's assessment of a credit against Neri for its cost to perform the Ashmun Street (South) roadwork was improper and wrongful.

- EHC is not entitled to any credit against Neri for its costs to perform the Ashmun Street (South) work, because that work was not part of Neri's scope.

  2.    Supporting Testimony and Trial Exhibits

- Trial Transcript, June 9, 2005
  p. 93 – Line 9, p. 111 – Line 3

- Trial Transcript, June 13, 2005
  p. 9 – Line 7, p. 12 – Line 9
  p. 18 – Line 5, p. 19 – Line 10
  p. 26 – Lines 6-15
  p. 201 – Line 2, p. 204 – Line 2

- Trial Transcript, June 17, 2005
  p. 24 – Line 23, p. 29 – Line 24

- Trial Transcript, September 23, 2005
  p. 169 – Lines 11-24
  p. 198 – Lines 14-25

- Trial Exhibits 256, 274, 685.

(b)  <u>Webster Street</u>.

      1.    <u>Proposed Findings of Fact</u>

- Neri and EHC agreed by fully executed Change Order No. 38 dated August 22, 2000 that the roadway work on Webster Street would be performed after the City of New Haven's CSO work had been completed.

- Neri's obligations under the EHC Contract was to coordinate its work with the CSO work, and not to do something to get the City of New Haven to begin its CSO work, a matter over which Neri had no control.

- The design Drawings for the Webster Street CSO work were not completed until May, 2001.

- As of May, 2001, the City of New Haven had not put the CSO work affecting Webster Street out to bid.

- On May 1, 2001, EHC informed Neri that the Webster Street CSO work would begin on June 11, 2001, which work was expected to be completed within thirty (30) days.

- On May 1, 2001, EHC requested from Neri that it confirm that its Webster Street work would commence on June 18, 2001.

- Neri indicated that it was prepared to perform the Webster Street work in accordance with Change Order No. 38; and when Neri raised the issue of Change Order No. 38 EHC removed the work from Neri's Contract, and had it performed by someone else.

- The CSO work was performed by the contractor EHC had hired to replace Neri to perform the remaining work, including Webster Street.  In fact, it was EHC that hired the contractor directly to perform the CSO work.  The City of New Haven ultimately did not put it out to bid, nor contract with a contractor to have it performed.

- During the spring of 2001, Blocks H & I were being designed, which included the installation of laterals to the units which were to run from Webster Street.   Ultimately, Blocks H & I were constructed by the contractor EHC had hired to replace Neri.

- Thus, during the Spring, 2001, EHC needed to coordinate the performance of the CSO work, the completion of Webster Street and the installation of the full lateral runs into Blocks H & I, and had all of that work performed by Sweeney Excavation.

- In September, 2000 and February, 2001 (Drawings SS-10B and SS-11B), there were revisions to the roadwork Drawings for Webster Street which were never provided to Neri.  The changes made in February, 2001 related to the necessary changes to Webster Street work, because of the design of Blocks H & I.   (See, **Exhibit 634**, General Note, SS-10B and SS-11B.) Neri would have needed these Drawings to properly perform its work at Webster Street.  These Drawings were subsequently revised twice on May 11, 2001 and October 25, 2001.

- EHC's default of Neri, relating to its Webster Street work, was improper and wrongful.

- EHC's assessment of a credit for its cost to perform Neri's Webster Street work with an alternate contractor was improper and wrongful.

- The credit to reflect the fact that Neri was not allowed to complete its Webster Street work should be based on what it would have cost Neri to perform the work.

    2.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 9, 2005
  p. 111, Line 6 – p. 114, Line 22

- Trial Transcript, June 17, 2005
  p. 39, Line 12 – p. 40, Line 18

- Trial Exhibit 272, 378, 634.

(c)  <u>Ashmun Street (North) – Blocks A1, A2 and K1</u>

1.     <u>Proposed Findings of Fact</u>

- Neri's bid included the cost of lateral work in the Blocks.

- Neri's schedule of values, prepared at EHC's direction, shows the cost of the lateral work in the pricing structure for the Blocks.

- During Contract negotiations, EHC requested that Neri remove its costs to perform Blocks A1, A2 and K1 from its bid, and price it as an alternate.

- When EHC requested this, Neri removed its cost to do the lateral work to Blocks A1, A2 and K1 from its bid, and included those costs as part of the alternate price for Blocks A1, A2 and K.

- When EHC requested a credit for Block D, it assessed a credit based on Neri's schedule of values which included the costs of laterals in the Block.

- There were utility runs from Ashmun Street (South) and all other streets adjacent to Block D, and EHC did not require Neri to install those utility lines to a stub at Block D.

- At the time the alternate was priced up, EHC did not request from Neri a price to provide stub ups of the laterals to Blocks A1, A2 and K1.

- EHC never provided revised Drawings to Neri showing stub ups of the lateral runs to Blocks A1, A2 and K1.

- Design changes were made to the Drawings for Ashmun Street (North) in September, 2000, which Drawings do not show stub ups but rather changed locations for the utility runs amongst other changes.

- These Drawings were subsequently revised in February, 2001 and do not show stub ups.

- EHC issued a schedule on April 2, 2001 showing work on Ashmun Street (North) beginning on April 16, 2001.

- Neri requested copies of revised Drawings to properly construct Ashmun Street (North), and requested from EHC the opportunity to review the impact of the changes.

- EHC forwarded the revised Drawings dated September, 2000 to Neri on April 17, 2001. These Drawings made changes to Neri's work. EHC did not, at that point or any subsequent point, forward to Neri the Drawings with the February, 2001 changes. Moreover, on May 11, 2001, these Drawings were yet again revised to reflect a roadway reduction that EHC was aware as early as 2000 was to occur.

- Moreover, at the time EHC requested that Neri begin performing the Ashmun Street (North) work, it was aware that there was a pending design change regarding the road width which had not been incorporated into the Plans.

- Neri needed the revised Drawings dated September, 2000 and February, 2001 to properly perform its Ashmun Street (North) roadwork.

- Instead of giving Neri all of the necessary revised Drawings, and instead of allowing Neri to assess the impact of the changes on its work, EHC on April 25, 2001 defaulted Neri for its failure to start work on Ashmun Street (North).

- During the Project, EHC requested a price from Neri to install the laterals from New Street 1 to Blocks A1 and A2, and indicated that a credit might subsequently be taken if the alternate was triggered, because the cost had been carried in the alternate.

- EHC issued Change Order No. 4 to Neri to reflect the performance of the work.

- At no time during the negotiation of Change Order No. 4, nor as part of the Change Order language itself, did EHC take the position that the purpose of the Change Order was to carry the lateral from a stub into the Block.

- Thus, in the Spring, 2001, EHC had to coordinate the changes made to the Ashmun Street (North) Drawings, and the installation of full lateral runs in Blocks A1, A2 and K1 now being developed.

2.    Supporting Testimony and Trial Exhibits

- Trial Transcript, June 17, 2005
  p. 29 – Line 25, p. 39 – Line 14

- Trial Transcript, October 5, 2005
  p. 127 – Line 19, p. 129 – Line 21

- Exhibits 630, 632.

G.    NERI'S COST TO COMPLETE THE
      REMAINING WORK IN ROADWAYS AND G2.

1.    Proposed Findings of Fact

- Neri's cost to complete the work remaining to be performed in the Spring, 2001 was $375,074.61.

- Of Neri's total cost to complete, $336,366.61 relates to its cost to complete the remaining road work in Neri's original scope.

- In January, 2001, John Ford calculated the cost of deleting from Neri's Contract the roadways remaining in Neri's scope, at that time to be $332,944.00.

- To the extent that EHC had not taken the remaining work away from Neri, and instead Neri had performed the remaining work, it would have been paid the remaining Contract balance and would have realized the benefit of these payments minus the costs incurred to perform the work.

2.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 13, 2005
  p. 52 – Line 20, p. 63 – Line 5

- Exhibits 649, 627 *(Bates EH 05530).*

H.    <u>AMOUNT DUE NERI ON CONTRACT BALANCE.</u>

1.    <u>Proposed Findings of Fact</u>

- The total adjusted Contract value, without any credit adds or deducts, and including Change Order No. 55, equals $4,428,065.65.

- The parties agree that the payments to date equal $2,822,034.26.

- The parties agree that the credit deduct for Block D should be $254,417.00.

- The credit deduct for the paving in October, 2000 should be pegged at $148,080.85 which is the Contract price it would have cost Neri to perform the work.

- Neri's cost to complete the work remaining in Spring, 2001 would have been $375,074.61 and, thus, that should be the credit deduct for the work remaining.

- During trial, Plaintiff agreed to credit adds for **Exhibit 562** @ $10,000.00, **Exhibit 573** @ $22,276.00, and **Exhibit 603** @ $44,598.78. (EHC has in its post-trial brief acknowledged this $44,598.78 as Extra Work due. Neri's total claim for the Block G electric ductbank, **Exhibit 603**, totals $103,318.89. As such, Neri continues to claim the balance of $58,720.89 for this item.)

- The unpaid Contract balance due Neri is calculated as follows:

$4,428,065.65
( 2,822,034.26)
$1,606,031.40
(    254,417.00)
(    148,080.85)
(    375,074.61)
     10,000.00
     22,276.00
     44,598.00
$    905,333.00

- The unpaid Contract balance due Neri after appropriate credit deducts and credit adds is $905,333.00.

    2.    Supporting Testimony and Trial Exhibits

- Trial Transcript, September 13, 2005
  p. 186 – Line 5, p. 200, Line 12

- Trial Exhibit 660.

I.    PROPOSED CONCLUSIONS OF LAW

What the parties intended to include in the contract is a question of fact. Four D's, Inc. v. Matter, 25 Conn.App. 308 (1991). The meaning of the terms of a contract can be shown by the conduct of the parties. Ruselto v. F-Dyne Electronics Co., Inc., 177 Conn. 149 (1979).

The cause of conduct of the parties can serve to indicate the parties' intent for the purpose of interpreting ambiguous language in the contract. May Centers, Inc. v. Pans Croissant of Enfield Square, Inc., 42 Conn. Supp. 77 (1991).

The intention of the parties to a contract is a question of fact to be determined from the language of the contract, the circumstances attending its negotiation and the conduct of the parties in relation thereto. Voll v. Lafayette Bank and Trust Co., 223 Conn. 419 (1992).

Contract damages are based upon the injured party's expectation interest and are intended to give him the benefit of the bargain, and award damages that

put the injured party in the same position as if the contract had been performed. Vespeli v. Pagliarulo, 212 Conn. 1, 3 (1989).

J.    REQUESTED CONCLUSIONS ON REBUTTAL.

A.    UNSUITABLE MATERIALS.

The Contract documents do clearly indicate how unsuitable material encountered during building excavations should be handled. The documents do not, however, clearly and unambiguously provide how unsuitable material encountered in excavations other than building excavations, i.e., utility excavations, are to be handled. On two separate occasions EHC, first by L. Beckwith and then J. Ford, inquired of the design engineer how the Contract documents dealt with these unsuitable excavations. On both occasions the design engineer indicated that unsuitable material from excavations other than building excavations was to be paid for as an extra.

Subsequent to the design engineer's indication to L. Beckwith, EHC proceeded to set up a procedure to determine unsuitable material and quantify it for payment. Having undertaken this procedure, EHC then paid Neri for the unsuitable material excavated. Payment for these materials was extra to the Contract. EHC proceeded in conformance with that fact until J. Ford, despite getting the same interpretation from the design engineer, decided to stop making payment. To hold that the unsuitable material was not compensable as an extra would completely disregard the design engineer's finding, and would completely disregard how EHC handled the issue on the Project.

B.    ASHMUN STREET (SOUTH).

If Ashmun Street (South) was contemplated by the parties to be part of the Contract, then one has to disregard the following:

(1)    That EHC never specifically requested that Neri include Ashmun Street (South) as part of the Contract;

(2)    That EHC never specifically requested that Neri include any Phase II roadways as part of the Contract;

(3)    That EHC never provided any of the revised Drawings regarding Ashmun Street (South) to Neri.

25

(4)    That when EHC issued a Change Order regarding material affecting all of the remaining roads, it did not include Ashmun Street (South).

(5)    That even John Ford concluded that EHC could not demonstrate that Ashmun Street (South) was included in the Contract.

(6)    That at the same time John Ford came to that conclusion, EHC had a pending Change Order to the owner to add Ashmun Street (South) to the Contract as an extra.

EHC consistently acted as if they understood that Ashmun Street (South) was not part of the Contract scope. The fact is that Ashmun Street (South) was not part of Neri's contractual scope. Accordingly, EHC is not entitled to charge Neri for its costs to perform the work at Ashmun Street (South).

C.    WEBSTER STREET.

The language of the fully executed Change Order was clear. Neri's Webster Street work was not to begin until after the City's CSO work was completed. Despite this clear language, EHC insisted that Neri begin before the CSO work was completed, and when it would not agree to do that EHC pulled the work and gave it to another contractor, who just coincidentally happened to be the same one to perform the CSO work, now for EHC.

EHC pulled the work from Neri and gave it to Sweeney because it could now, through a single contractor – Sweeney, at the same time have the CSO work completed, get Webster Street completed, and have the full lateral runs to Blocks H & I installed. EHC wrongfully declared Neri in default with regard to the Webster Street work, and cannot now look to charge Neri for its costs to complete the work with an alternate subcontractor. Neri was wrongfully precluded from performing the work by EHC and, thus, any credit relating to the work should be determined based upon what it would have cost Neri to perform the work.

D.    ASHMUN STREET (NORTH) – BLOCKS A1, A2 AND K.

L. Beckwith never indicated to Neri during the Contract negotiations nor at the time of Change Order No. 4, that she expected Neri to run laterals to stub ups.  EHC never gave Neri a plan showing the laterals running from Ashmun Street (North) to a terminated point at stub ups.

EHC, during Contract negotiations, knew that Neri included its lateral work in the Block pricing, and that it had carried the cost of the lateral work to the alternate for Blocks A1, A2 and K.  The language of Change Order No. 4 does not indicate that the Change Order relates to bringing the lateral from a stub up into the Block.  All of this is because both EHC and Neri understood that the entirety of the lateral work, from Ashmun Street (North) to Blocks A1, A2 and K, was carried in the alternate price.

When EHC insisted that Neri perform the lateral work, and Neri indicated that it would look to get paid for the work, EHC pulled the roadwork from Neri's Contract and gave it to another contractor, who just coincidentally happened to be the same one that EHC used to develop Blocks A1 and A2.  It was more economical and easier to coordinate, for EHC to have the work performed by a contractor other than Neri.  It could have the revised Ashmun Street (North) work, as well as the A1 and A2 full lateral runs, performed by a single contractor, Sweeney.

II.    NERI UNPAID EXTRA WORK CLAIMS:

1.    EXHIBIT 594 – NERI 013-204-1

    a.    Proposed Findings of Fact

(In general, see Neri's Proposed Findings of Fact set forth in Section I.A. of its Rebuttal to EHC's Proposed Findings of Fact.)

- The Contract does not include as part of its scope of work, excavation of unsuitable material from utility trenches.

- The Geo-Technical report does not indicate the existence of an removal of unsuitable material from utility trenches.

- Neri noticed EHC on March 24, 1999 that it was encountering unsuitable materials while excavating for utility trenches.

- From March 29, 1999 through May 19, 1999, Neri excavated unsuitable material from various utility trenches in the areas designated on Trial Exhibit 594.

- Neri tracked the quantity of these unsuitable soils while the excavation was being performed.

- During the excavations, Neri notified EHC representative Ivan Carlsen when it encountered the unsuitable materials.

- EHC did not respond to Neri's notice of March 24, 1999 until after the excavations, which are the subject of Exhibit 594, were completed.

- Subsequent to the last excavation set forth in Trial Exhibit 594 EHC, in response to Neri's Notice of March 24, 1999, established a procedure on August 19, 1999 by which EHC representative Ivan Carlsen was to review the material and quantify the amount of unsuitable materials.

- Subsequent to the last excavation set forth in Trial Exhibit 594 EHC, on August 3, 1999, established a unit price of $32.50 for the excavation of unsuitable material from utility trenches.

1.    EXHIBIT 594 – NERI 013-204-1  *(continued)*

a.    <u>Proposed Findings of Fact</u> *(cont.)*

- Ivan Carlsen did not track the quantities of unsuitable material, which are the subject of Exhibit 594, because the procedure had not yet been established.

- At subsequent times during the Project EHC, paid for quantities of unsuitable material excavated from utility trenches.

- The removal of the unsuitable soils from the utility trenches as reflected in Trial Exhibit 594 is extra work to the Contract.

- Neri is entitled to be compensated $18,469.42 for the 568.29 cubic yards of unsuitable materials reflected in Trial Exhibit 594.

b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 14 – Line 1, p. 22 – Line 20

- Trial Transcript, October 5, 2005
  pp. 168-172

- Trial Exhibits 238, 298, 594, 662, 683, 684

c.    <u>Rebuttal Position</u>

2.      <u>EXHIBIT 593 – NERI 010-204</u>

    a.      <u>Proposed Findings of Fact</u>

- While progressing with its Contract work in the areas of Units F1-F4 and F27-F28, Neri encountered a site that had been left below Contract grade by the previous subcontractors.

- Neri informed EHC that in order for Neri's work to continue it would need to bring the site to grade.

- EHC directed Neri to perform the work.

- Neri performed the work and kept track of the labor and equipment hours to perform the work.

- EHC representative Ivan Carlsen observed Neri performing the backfilling of these particular foundations.

- Neri priced this extra work using the approved labor and equipment rates.

- Neri is entitled to be paid $4,489.12 for the performance of this work.

- Neri is entitled to be paid an additional $757.38 in markup for this work.

    b.      <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 22 – Line 21, p. 28 – Line 10

- Trial Exhibits 593, 593A

    c.      <u>Rebuttal Position</u>

3.    <u>EXHIBIT 598 – NERI 017</u>

    a.    <u>Proposed Findings of Fact</u>

- The performance of work relating to rigid insulation was specifically excluded from Neri's scope of work.

- While Neri was performing its work on the Project it was determined that rigid insulation had not been installed at particular Units, as reflected in Trial Exhibit 598.

- Neri reported to EHC that the rigid insulation had not been installed.

- Neri informed EHC that to progress its work that Neri would perform the work associated with the rigid insulation, keep track of its labor and equipment hours, and submit tickets for payment.

- To perform this Contract work Neri was required to hand-excavate for the installation of the rigid insulation.

- EHC representative Ivan Carlsen observed Neri's performance of this work.

- Neri tracked its labor and equipment hours to perform the work.

- Neri priced its labor and equipment hours using the approved hourly rates.

- This work associated with rigid insulation was extra work to the Contract.

- Neri is entitled to be compensated a total of $21,833.31 to perform the work associated with the rigid insulation.

3.    <u>EXHIBIT 598 – NERI 017</u>  *(continued)*

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 28 – Line 11, p. 34 – Line 1

- Trial Exhibits 1 (Rider A, p. 10 of 10), 598

    c.    <u>Rebuttal Position</u>

4.     <u>EXHIBIT 599 – NERI NC-019</u>

   a.     <u>Proposed Findings of Fact</u>

(In general, see Neri's Proposed Findings of Fact set forth in Section I.A. of its Rebuttal to EHC's Proposed Findings of Fact.)

- The Contract does not include as part of its scope of work excavation of unsuitable material from utility trenches.

- The Geo-Technical report does not indicate the existence of and removal of unsuitable material from utility trenches.

- Neri encountered unsuitable material while excavating utility trenches on April 19, April 21 and June 10, 1999.

- Neri had previously on March 24, 1999 put EHC on notice regarding unsuitable material in utility trenches.

- Upon encountering the unsuitable material it notified EHC.

- While excavating the unsuitable material, Neri tracked the quantity.

- EHC representative Ivan Carlsen observed Neri performing this unsuitable excavation.

- EHC did not respond to Neri's notice of March 24, 1999 until after these excavations were completed.

- Subsequent to the excavation EHC set a price of $32.50 per cubic yard for excavation of unsuitable material from utility trenches on August 3, 1999.

- Subsequent to these excavations, EHC established a procedure by which Ivan Carlsen would track unsuitable quantities.

- During these excavations, Ivan Carlsen did not track the quantities because the procedure was not yet in place.

33

4.     <u>EXHIBIT 599 – NERI NC-019</u>  *(continued)*

      a.     <u>Proposed Findings of Fact</u> *(cont.)*

- In other locations subsequent to these excavations, EHC paid for the removal of unsuitable material from utility trenches.

- The removal of the unsuitable material from the utility trenches as reflected in Trial Exhibit 599 is extra work to the Contract.

- Neri is entitled to be compensated $17,473.37 for this work.

- Neri is entitled to a markup of $1,747.33 for this work.

      b.     <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 34 – Line 2, p. 11 – Line 19

- Trial Transcript, October 5, 2005
  pp. 168-172

- Trial Exhibits 298, 599, 599A, 662, 683, 684

      c.     <u>Rebuttal Position</u>

5.    <u>EXHIBIT 602 – NERI NC-023-207-1</u>

    a.    <u>Proposed Findings of Fact</u>

- EHC instructed Neri, by construction change directive, to install stone and filter fabric at the sewer main at New Streets 2, 3 and 4.

- This work was extra work to the Contract.

- EHC requested that Neri submit a price on a linear foot basis for the work.

- Neri on April 29, 1999 submitted its price of $24 per linear foot for the requested extra work.

- Neri performed the work on May 5, 1999 and May 18, 1999.

- The total quantity of work was verified by EHC representative Ivan Carlsen.

- Neri is entitled to be paid $19,860.00 for this work.

- <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 41 – Line 20, p. 49 – Line 19

- Trial Transcript, October 5, 2005
  p. 176 – Line 18, p. 178 – Line 13

- Trial Exhibits 602, 602A, 602B

    c.    <u>Rebuttal Position</u>

35

6.     <u>EXHIBIT 560 – NERI NC-051</u>

    a.     <u>Proposed Findings of Fact</u>

- Neri was contractually required to perform the testing of water services after the taps had been installed by the water authority.

- EHC requested that Neri test the water services before the taps were installed to accelerate the completion of the work at Blocks B & C.

- In order to achieve this EHC requested that Neri air test the water services - a method different than originally contemplated to satisfy the contractual requirement.

- Neri and EHC agreed that the added cost to air test the water services was $450.00 per service.

- Neri air tested nine (9) water services, and EHC confirmed by signed Ticket Neri's performance of that work.

- Neri is entitled to be compensated $4,050.00 for this work.

- Neri is entitled to a markup of $727.87 for this work.

    b.     <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 49 – Line 20, p. 52 – Line 23

- Trial Exhibit 560

    c.     <u>Rebuttal Position</u>

7.  EXHIBIT 561 – NERI NC-052

    a.  Proposed Findings of Fact

(In general, see Neri's Proposed Findings of Fact set forth in Section I.A. of its Rebuttal to EHC's Proposed Findings of Fact.)

- The Contract does not include as part of its scope of work excavation of unsuitable material from utility trenches.

- The Geo-Technical report does not indicate the existence of and removal of unsuitable material from utility trenches.

- Neri encountered unsuitable material during its excavation of water services at the locations set forth in Trial Exhibit 561.

- In accordance with the procedure set forth in Trial Exhibit 662, Ivan Carlsen had LEA review the material because EHC and Neri could not come to an agreement.

- LEA reviewed the material, deemed it unsuitable and confirmed that a quantity of 208 cubic yards of material had been excavated.

- EHC established a rate of $32.50 per cubic yard for the excavation of unsuitable material from utility trenches.

- At the established rate of $32.50, Neri is entitled to be compensated $6,760.00 for this work.

- At other locations on the Project EHC compensated Neri for unsuitable excavation from trenches based upon Ivan Carlsen's review of the quantity and his signature on a Daily Ticket.

7.    <u>EXHIBIT 561 – NERI NC-052</u>  *(continued)*

b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 52 – Line 24, p. 57 – Line 14

- Trial Transcript, September 22, 2005
  p. 20 – Line 14, p. 23 – Line 3

- Trial Transcript, October 5, 2005
  pp. 168-172

- Trial Exhibits 298, 561, 561A, 662, 683, 684

c.    <u>Rebuttal Position</u>

8.      <u>EXHIBIT 562 – NERI 55-207-1</u>

      a.      <u>Proposed Findings of Fact</u>

- EHC has agreed that the amount of $10,000.00 should be paid.

9.      <u>EXHIBIT 563 – NERI 056-207-1</u>

    a.      <u>Proposed Findings of Fact</u>

- EHC executed a Confirmation of Change and requested that Neri accelerate the installation of granite curb at Block B.

- EHC by executed Confirmation of Change, agreed to compensate Neri for this work at a price of $7.85 per linear foot.

- Neri accelerated its performance of 2,833.34 linear feet of curbing by adding two additional crews.

- Neri is entitled to be compensated $22,241.71 for the accelerated installation of the granite curb.

    b.      <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 60 – Line 7 through p. 65 – Line 10

- Trial Exhibits 563, 563A, 563B

    c.      <u>Rebuttal Position</u>

40

10.    <u>EXHIBIT 564 – NERI 056-207-4</u>

     a.    <u>Proposed Findings of Fact</u>

(In general, see Neri's Proposed Findings of Fact set forth in Section I.B. of its Rebuttal to EHC's Proposed Findings of Fact.)

- EHC and Neri discussed and agreed to use the document Confirmation of Change to memorialize the performance of extra work in the late 1999 period.

- EHC, after reviewing the Confirmation of Change for this work, authorized its representative Ivan Carlsen to execute it for this work.

- EHC authorized, by executed Confirmation of Change, Neri to accelerate its concrete work at Block B by adding additives to the concrete mix.

- EHC confirmed that the work was authorized additional work by the executed Confirmation of Change.

- EHC agreed to compensate Neri for the concrete additives by execution of a Confirmation of Change.

- EHC agreed by execution of a Confirmation of Change to compensate Neri at $7.45 per cubic yard for the concrete additives.

- Neri performed the work because EHC had executed the Confirmation of Change.

- Neri's concrete supplier required the use of additives.

- Based on the total cubic yards of concrete additives evidenced by Neri's supplier tickets, Neri is entitled to be compensated $4,954.64 for this work.

- EHC did not dispute that the work was extra at the time it executed the Confirmation of Change, nor did EHC include any reservation of rights language in the executed Confirmation of Change.

10.     <u>EXHIBIT 564 – NERI 056-207-</u>4 *(continued)*

      b.     <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 69 – Line 4, p. 73 – Line 10

- Trial Transcript, September 13, 2005
  pp. 44-48

- Trial Transcript, September 22, 2005
  p. 59 – Line 11, p. 61 – Line 14

- Trial Transcript, October 5, 2005
  p. 176 – Lines 7-17

- Trial Exhibit 564

      c.     <u>Rebuttal Position</u>

11.    <u>EXHIBIT 565 - NERI 058-207-1</u>

      a.    <u>Proposed Findings of Fact</u>

(In general, see Neri's Proposed Findings of Fact set forth in Section I.B. of its Rebuttal to EHC's Proposed Findings of Fact.)

- EHC and Neri discussed and agreed to use the document Confirmation of Change to memorialize the performance of extra work in late 1999.

- EHC, after reviewing the Confirmation of Change for this work, authorized its representative Ivan Carlsen to execute it for this work.

- Neri was required by EHC pursuant to the executed Confirmation of Change to perform certain additional work relating to the removal and reinstall of granite curbing on the Project at Canal Street, Stations 8 + 40 to 8 + 157.4 due to layout plan discrepancies during the acceleration period in late 1999.

- EHC confirmed that this work was authorized additional work by the executed Confirmation of Change.

- EHC authorized, by executed Confirmation of Change, Neri to perform the extra work associated with the removal and reinstall of the granite curbing.

- EHC agreed, by executed Confirmation of Change, to compensate Neri on a time-and-materials basis for the work associated with the removal and reinstall of the granite curbing.

- EHC had previously indicated that Ivan Carlsen was authorized "to sign tickets to verify time for additional work."

- Neri performed the additional work referenced in this Exhibit because EHC had executed the Confirmation of Change.

- Neri tracked its labor and equipment hours to perform this extra work.

43

11.    <u>EXHIBIT 565 - NERI 058-207-1</u>  *(continued)*

a.    <u>Proposed Findings of Fact</u> *(cont.)*

- Ivan Carlsen reviewed and confirmed the labor and equipment hours submitted by Neri.

- Neri is entitled to be compensated $4,239.68 for the work relating to this Exhibit.

- EHC did not contest that the work was extra at the time it executed the Confirmation of Change**,** nor did it include any reservation of rights language in the executed Confirmation of Change.

b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 73 – Line 21 through p. 76 – Line 5
  p. 76 – Lines 22-23

- Trial Transcript, September 13, 2005
  pp. 44-48

- Trial Transcript, September 22, 2005
  p. 61 – Line 25, p. 66 – Line 13

- Trial Transcript, October 5, 2005
  p. 164 – Line 4, p. 167 – Line 1

- Trial Exhibit 550, 565

c.    <u>Rebuttal Position</u>

12.    <u>EXHIBIT 566 - NERI 059-207-1</u>

    a.    <u>Proposed Findings of Fact</u>

(In general, see Neri's Proposed Findings of Fact set forth in Section I.B. of its Rebuttal to EHC's Proposed Findings of Fact.)

- EHC and Neri discussed and agreed to use the document Confirmation of Change to memorialize the performance of extra work in the late 1999 period.

- EHC, after reviewing the Confirmation of Change for this work, authorized Ivan Carlsen to execute it for this work.

- There existed a discrepancy between the Contract Drawings and the CSO Drawings which impacted two catch basins.

- Neri was required, pursuant to the executed Confirmation of Change by EHC, to perform certain additional work relating to relocating of the two (2) catch basins on the Project at New Street #1 and Canal Street.

- EHC confirmed that this work was authorized additional work by the executed Confirmation of Change.

- EHC, by executed Confirmation of Change, authorized Neri to perform the work associated with the relocation of the two catch basins.

- EHC agreed, by executed Confirmation of Change, to compensate Neri on a time-and-materials basis for the work associated with the relocation of the two catch basins.

- Neri completed the additional work referenced in this Exhibit because EHC had executed a Confirmation of Change.

- Neri tracked its labor and equipment hours to perform this work.

- Ivan Carlsen reviewed, confirmed and signed off on the labor and equipment hours submitted by Neri.

12.    <u>EXHIBIT 566 - NERI 059-207-1</u>  *(continued)*

    a.    <u>Proposed Findings of Fact</u> *(cont.)*

- EHC had previously indicated that Ivan Carlsen was authorized "to sign tickets to verify time for additional work."

- EHC did not dispute that the work was extra at the time it executed the Confirmation of Change**,** nor did it include any reservation of rights language in the executed Confirmation of Change.

- Neri is entitled to be compensated $4,837.75 for the work relating to this Exhibit.

- Neri is entitled to a markup of $752.48 for this work.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 85 – Line 18, p. 80 – Line 6 through p. 81 – Line 25

- Trial Transcript, June 28, 2005
  p. 35 – Line 2 through p. 36 – Line 13

- Trial Transcript, September 13, 2005
  pp. 44-48

- Trial Transcript, October 5, 2005
  p. 161 – Line 19, p. 164 – Line 2

- Trial Exhibit 550, 566, 682

    c.    <u>Rebuttal Position</u>

-

13.    <u>EXHIBIT 567 - NERI 060-207-1</u>

      a.    <u>Proposed Findings of Fact</u>

(In general, see Neri's Proposed Findings of Fact set forth in Section I.B. of its Rebuttal to EHC's Proposed Findings of Fact.)

- EHC and Neri discussed and agreed to use the document Confirmation of Change to memorialize the performance of extra work in late 1999.

- EHC, after reviewing the Confirmation of Change for this work, authorized Ivan Carlsen to execute it for this work.

- Neri was required, by executed Confirmation of Change, by EHC to perform certain additional work relating to the excavation and install six (6) sets of Cast-In-Place concrete steps on the Project at Block B townhouse units 20, 21, 22, 23, 26 and 27.

- EHC authorized Neri, by executed Confirmation of Change, to perform the work associated with the excavation and install of the concrete steps.

- EHC agreed, by executed Confirmation of Change, to compensate Neri on a time-and-materials basis for the work associated with the excavation and install of the concrete steps.

- EHC confirmed that this work was authorized additional work by the executed Confirmation of Change.

- Neri completed the additional work referenced in this Exhibit and tracked its labor and equipment hours to perform the work because of the executed Confirmation of Change.

- Ivan Carlsen reviewed the labor and equipment hours and approved them.

- Neri is entitled to be compensated $2,366.31 for the work relating to this Exhibit.

47

13.    <u>EXHIBIT 567 - NERI 060-207-1</u>  *(continued)*

    a.    <u>Proposed Findings of Fact</u>  *(cont.)*

- EHC did not dispute that the work was extra at the time it executed the Confirmation of Change**,** nor did it include any reservation of rights language in the signed Confirmation of Change.

- Neri is entitled to a markup of $333.66 for this work.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 97 – Line 1

- Trial Transcript, September 13, 2005
  pp. 44-48

- Trial Exhibit 567

    c.    <u>Rebuttal Position</u>

-

14.    EXHIBIT 568 - NERI 061-207-1

   a.    Proposed Findings of Fact

(In general, see Neri's Proposed Findings of Fact set forth in Section I.B. of its Rebuttal to EHC's Proposed Findings of Fact.)

- EHC and Neri discussed and agreed to use the document Confirmation of Change to memorialize the performance of extra work in late 1999.

- EHC, after reviewing the Confirmation of Change for this work, authorized Ivan Carlsen to execute it for this work.

- Neri was required by EHC, pursuant to an executed Confirmation of Change, to perform certain additional work relating to the removal and stockpiling of underground concrete structures and vaults in conflict with the granite curbing on the east side of Canal Street.

- EHC confirmed that this work was authorized additional work by the executed Confirmation of Change.

- EHC authorized, by executed Confirmation of Change, Neri to perform the work associated with the removal and stockpiling of underground concrete structures and vaults in conflict with the granite curbing.

- EHC agreed, by executed Confirmation of Change, to compensate Neri for the work associated with the removal and reinstallation of the granite curbing.

- Neri tracked its labor and equipment rates to perform this work while it was being performed.

- Neri completed the additional work referenced in this Exhibit and tracked its labor and equipment hours to perform the work because of the executed Confirmation of Change.

- Neri is entitled to be compensated $3,777.57 for the work relating to this Exhibit.

- Neri is entitled to a markup of $457.20 for this work.

14.    <u>EXHIBIT 568 - NERI 061-207-1</u>  *(continued)*

    a.    <u>Proposed Findings of Fact</u>  *(cont.)*

- EHC did not dispute that the work was extra at the time it executed the Confirmation of Change**,** nor did it include any reservation of rights language in the signed Confirmation of Change.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 101 – Line 15, p. 98 – Line 4 through p. 99 – Line 15

- Trial Transcript, September 13, 2005
  pp. 44-48

- Trial Exhibit 568

    c.    <u>Rebuttal Position</u>

15.    EXHIBIT 569 - NERI 062-207-1

    a.    Proposed Findings of Fact

(In general, see Neri's Proposed Findings of Fact set forth in Section I.B. of its Rebuttal to EHC's Proposed Findings of Fact.)

- EHC and Neri discussed and agreed to use the document Confirmation of Change to memorialize the performance of extra work in late 1999.

- EHC, after reviewing the Confirmation of Change for this work, authorized Ivan Carlsen to execute it for this work.

- Neri was required by EHC, pursuant to an executed Confirmation of Change, to perform certain additional work relating to the removal and hauling of solid concrete and brick pavement on the Project at Ashmun Street, Stations 7+00 to 14+50.

- The boring logs in the Geo-Technical report in the area where the solid brick and concrete pavement was found do not indicate the existence of such solid brick and concrete pavement.

- EHC, by executed Confirmation of Change, authorized Neri to perform the work associated with the removal and hauling of the concrete and brick pavement.

- EHC, by executed Confirmation of Change, agreed to compensate Neri for the work associated with the removal and hauling of the concrete and brick pavement.

- EHC confirmed that this work was authorized additional work by the executed Confirmation of Change.

- Neri performed this work with the expectation that it would be paid because of the executed Confirmation of Change.

- Neri completed the additional work referenced in this Exhibit.

- EHC and Neri developed the quantity of 2,100 cubic yards for this work.

15.    <u>EXHIBIT 569 - NERI 062-207-1</u>  *(continued)*

      a.    <u>Proposed Findings of Fact</u> *(cont.)*

- Neri is entitled to be compensated $50,999.94 for the work relating to this Exhibit.

- Neri is entitled to a markup of $9,165.71 for this work.

- EHC did not dispute that the work was extra work at the time it executed the Confirmation of Change**,** nor did it include any reservation of rights language in the signed Confirmation of Change.

- EHC paid for the performance of this same work elsewhere on the Project.

      b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 111 – Line 4
  p. 106 – Line 1 through p. 107 - Line 1
  p. 110 – Lines 13-19

- Trial Transcript, September 13, 2005
      pp. 44-48

- Trial Transcript, September 22, 2005
      p. 46 – Line 19, p. 48 – Line 18

- Trial Transcript, October 5, 2005
      p. 172 – Line 23, p. 176 – Line 2

- Trial Exhibit 569

      c.    <u>Rebuttal Position</u>

- 

16.    <u>EXHIBIT 570 - NERI 063-207</u>

a.    Proposed Findings of Fact

- Neri was required by EHC to perform additional work relating to the excavation and install of precast concrete foundation for the elliot switch on the Project at K-1 Alternate and B due to revised UI plan during the acceleration period in late 1999.

- EHC authorized Neri to perform the work associated with the excavation and install of the precast concrete foundation.

- EHC had previously indicated that Ivan Carlsen was authorized "to sign tickets to verify time for additional work."

- Ivan Carlsen of EHC signed Neri's Receiving Ticket relating to the work referenced in this Exhibit on 1/20/00.

- EHC agreed to compensate Neri for the work associated with the excavation and install of the precast concrete foundation.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $1,738.21 for the work relating to this Exhibit.

- Neri is entitled to a markup of $281.66 for this work.

b.    Supporting Testimony and Trial Exhibits

- Trial Transcript, June 14, 2005
  p. 114 – Line 15, p. 114 – Lines 18-21

- Trial Transcript, September 22, 2005
  p. 58 – Line 6, p. 59 – Line 10

- Trial Exhibit 550, 570

c.    Rebuttal Position

17.     <u>EXHIBIT 572 - NERI 064-207</u>

    a.     <u>Proposed Findings of Fact</u>

- Neri was required by EHC to perform additional work relating to the cutting of bituminous paving on the Project at Ashmun Street from New Street #2 to Webster Street to account for a design change in the width of the roadway.

- EHC authorized Neri to perform this work.

- EHC agreed to compensate Neri for this work.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $1,379.99 for the work relating to this Exhibit.

- Neri is entitled to a markup of $188.85 for this work.

    b.     <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 119 – Line 24
  p. 117 – Lines 1-18
  p. 117 – Line 21 through p. 118 – Line 2

- Trial Exhibit 572

    c.     <u>Rebuttal Position</u>

54

18.     <u>EXHIBIT 573- NERI 064-207-1</u>

    a.     <u>Proposed Findings of Fact</u>

• EHC has agreed to make payment of $22,000.00 which reflects the balance due Neri for this item.

    b.     <u>Supporting Testimony and Trial Exhibits</u>

    c.     <u>Rebuttal Position</u>

19.    <u>EXHIBIT 574 - NERI 065-207-2</u>

    a.    <u>Proposed Findings of Fact</u>

(In general, see Neri's Proposed Findings of Fact set forth in Section I.B. of its Rebuttal to EHC's Proposed Findings of Fact.)

- EHC and Neri discussed and agreed to use the document Confirmation of Change to memorialize the performance of extra work in late 1999.

- EHC, after reviewing the Confirmation of Change for this work, authorized Ivan Carlsen to execute it for this work.

- Neri was required by EHC, pursuant to an executed Confirmation of Change, to supply certain additional processed subbase relating to the replacement of 3" off-site process on the Project at Ashmun Street due to removal of concrete and brick pavement.

- EHC authorized, by executed Confirmation of Change, Neri to supply this additional processed sub-base.

- EHC, by executed Confirmation of Change, agreed to compensate Neri for the work associated with the supplying of the additional material.

- EHC confirmed that this work was authorized additional work by the executed Confirmation of Change.

- Neri supplied EHC with the Valley Sand & Gravel invoice slips for said materials.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $6,128.85 for the work relating to this Exhibit.

- Neri is entitled to a markup of $1,101.48 for this work.

- EHC did not dispute that this work was extra work at the time the Confirmation of Change was executed, nor did it include any reservation of rights language in the signed Confirmation of Change.

19.    <u>EXHIBIT 574 - NERI 065-207-2</u>  *(continued)*

        b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 125 – Line 4, p. 123 – Line 7 through p. 124 – Line 23

- Trial Exhibit 574 and 574A

        c.    <u>Rebuttal Position</u>

20.    <u>EXHIBIT 575 - NERI 065-207-4</u>

    a.    <u>Proposed Findings of Fact</u>

- Neri was required by EHC to perform additional work relating to the removal and disposal of unsuitable materials on the Project in Block B at Canal Street and New Street #1.

- EHC authorized Neri to perform the work associated with the removal and disposal of the unsuitable material.

- EHC agreed to compensate Neri for the work associated with the removal and disposal of the unsuitable material.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $6,750.00 for the work relating to this Exhibit.

- Neri is entitled to a markup of $1,213.11 for this work.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 128 – Lines 21-22
  p. 125 – Line 24 through p. 126 – Line 21
  p. 127 – Line 17 through p. 128 – Line 17

- Trial Transcript, September 13, 2005
  pp. 44-48

- Trial Exhibit 575 and 575A

    c.    <u>Rebuttal Position</u>

21.    <u>EXHIBIT 576 – NERI 067-207-1</u>

a.    <u>Proposed Findings of Fact</u>

(In general, see Neri's Proposed Findings of Fact set forth in Section I.B. of its Rebuttal to EHC's Proposed Findings of Fact.)

- EHC and Neri discussed and agreed to use the document Confirmation of Change to memorialize the performance of extra work in late 1999.

- Neri was required by EHC to make revisions to the concrete aprons on the Project at Block B to reconcile a conflict between the Contract Drawings and the City of New Haven requirements.

- EHC, after reviewing the Confirmation of Change for this work, authorized its representative Ivan Carlsen to execute a Confirmation of Change for this work.

- EHC authorized Neri to perform the work associated with the revisions by way of an executed Confirmation of Change.

- EHC agreed to compensate Neri for the work associated with the revisions by way of an executed Confirmation of Change.

- Neri and EHC agreed in the executed Confirmation of Change that the additional cost to perform the revisions would be $850 per apron.

- EHC confirmed that this work was authorized additional work by the executed Confirmation of Change.

- Neri performed the work because EHC had issued a signed Confirmation of Change for the work.

- EHC did not dispute that the work was extra at the time it executed the Confirmation of Change, nor did it include any reservation of rights language in the signed Confirmation of Change.

- Neri completed the revisions to nine (9) aprons in the area of Block B.

21.    EXHIBIT 576 – NERI 067-207-1  *(continued)*

a.    Proposed Findings of Fact  *(cont.)*

- Neri is entitled to be compensated $7,650 for the revisions to the concrete aprons.

- Neri is entitled to be compensated a total of $9,024.86 after markup for the work associated with the revisions.

b.    Supporting Testimony and Trial Exhibits

- Trial Transcript, June 14, 2005
        p. 129 – Line 4, p. 133 – Line 23

- Trial Transcript, September 22, 2005
        p. 38 – Line 13, p. 40 – Line 12

- Trial Transcript, September 13, 2005
        pp. 44-48

- Trial Transcript, October 5, 2005
        p. 155 – Line 11, p. 156 – Line 10

- Trial Exhibits 576, 576A

c.    Rebuttal Position

22.    <u>EXHIBIT 577 – NERI 067-207-2</u>

    a.    <u>Proposed Findings of Fact</u>

- EHC, by executed Confirmation of Change (Exhibit 567), authorized Neri to perform extra work related to the installation of concrete landings at the Units.

- EHC agreed, by Confirmation of Change, to compensate Neri for this extra work on a time-and-materials basis.

- Neri tracked its labor and equipment costs to perform this extra work.

- Neri is entitled to be paid $2,008.34 for this extra work.

- Neri is entitled to a markup of $238.39 for this work.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 133 – Line 24 through p. 142 – Line 11

- Trial Exhibits 567, 577, 577A

    c.    <u>Rebuttal Position</u>

23.    EXHIBIT 578 – NERI 068-207-1

    a.    Proposed Findings of Fact

(In general, see Neri's Proposed Findings of Fact set forth in Section I.B. of its
Rebuttal to EHC's Proposed Findings of Fact.)

- EHC and Neri discussed and agreed to use the document Confirmation of
  Change to memorialize the performance of extra work in late 1999.

- Neri was required by EHC to make revisions to the handicap ramps on the
  Project at Block B to account for City of New Haven requirements that
  were not reflected in the Contract Drawings.

- EHC, after reviewing the Confirmation of Change for this work,
  authorized Ivan Carlsen to execute it for this work.

- EHC authorized Neri to perform the extra work associated with the
  revisions by execution of a Confirmation of Change.

- EHC agreed to compensate Neri for the extra work associated with the
  revisions by execution of a Confirmation of Change.

- EHC confirmed that this work was authorized additional work by the
  executed Confirmation of Change.

- Neri and EHC agreed in the executed Confirmation of Change to a price
  of $795/ramp to account for the required revisions.

- Neri performed the work because EHC had issued a signed Confirmation
  of Change for the work.

- Neri completed revisions to ten (10) ramps in Block B.

- Neri is entitled to be compensated $7,950 for the work on the revised
  ramps.

- Neri is entitled to be compensated a total of $9,378.77 after markup for the
  work associated with the revised ramps at Block B.

62

23.    <u>EXHIBIT 578 – NERI 068-207-1</u>  *(continued)*

    a.    <u>Proposed Findings of Fact</u>  *(cont.)*

- EHC did not dispute that the work was extra at the time it executed the Confirmation of Change**,** nor did it include any reservation of rights language in the signed Confirmation of Change.

    b.    <u>Supporting Documentation</u>

- Trial Transcript, June 14, 2005
  p. 142 – Line 13, p. 157 – Line 17

- Trial Transcript, September 13, 2005
  pp. 44-48

- Trial Transcript, September 22, 2005
  p. 40 – Line 13, p. 44 – Line 4

- Trial Transcript, October 5, 2005
  pp. 156-161

- Trial Exhibits 578, 578A

    c.    <u>Rebuttal Position</u>

24.    EXHIBIT 580 – NERI 069-207-1

    a.    Proposed Findings of Fact

(In general, see Neri's Proposed Findings of Fact set forth in Section I.B. of its Rebuttal to EHC's Proposed Findings of Fact.)

- EHC and Neri discussed and agreed to use the document to Confirmation of Change to memorialize the performance of extra work in late 1999.

- EHC, after reviewing the Confirmation of Change for this work, authorized Ivan Carlsen to execute it for this work.

- EHC directed Neri to import topsoil to the Project for use at Block B by execution of a Confirmation of Change.

- EHC agreed that the work of importing the topsoil for use at Block B was extra work by execution of a Confirmation of Change.

- EHC authorized Neri to import topsoil for use at Block B.

- EHC agreed to pay Neri a unit price of $19.85/yard to import topsoil for use at Block B.

- Neri had topsoil delivered for use at Block B because EHC had issued a signed Confirmation of Change for the work.

- EHC by Change Order paid Neri for the performance of work.

- EHC has not compensated Neri, however, for 477 yards of topsoil delivered to the Project, and not included in a previously executed Change Order for the Project.

- Neri is entitled to be paid $9,494.19 for the topsoil delivered.

- Neri is entitled to be paid a total of $11,200.49 after markup for the topsoil delivered.

- EHC did not dispute that the work was extra at the time it executed the Confirmation of Change, nor did it include any reservation of rights language in the signed Confirmation of Change.

24.    EXHIBIT 580 – NERI 069-207-1  *(continued)*

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
    p. 157 – Line 18, p. 163 – Line 1

- Trial Transcript, September 13, 2005
    pp. 44-48

- Trial Transcript, September 22, 2005
    p. 44 – Line 5, p. 46 – Line 18

- Trial Exhibit 580
    (EHC Change Order)

    c.    <u>Rebuttal Position</u>

25.    EXHIBIT 581 – NERI 070-207

   a.    Proposed Findings of Fact

- EHC directed Neri by executed Confirmation of Change to place temporary pavement at the intersections of Ashman Street / Webster Street and Ashman Street / New Street as part of the Block B work during late 1999.

- EHC Authorized Neri by executed Confirmation of Change to perform the placement of temporary pavement.

- EHC by executed Confirmation of Change agreed that this was additional work to the Contract.

- EHC by executed Confirmation of Change directed that the work be performed on a time-and-materials basis.

- Neri tracked the labor, equipment and materials costs to perform this temporary pavement.

- Neri is entitled to be paid $20,584.75 for its costs to perform this work.

- Neri is entitled to a total of $23,619.10 which includes markup for this work.

   b.    Supporting Testimony and Trial Exhibits

- Trial Transcript, June 14, 2005
         p. 169 – Line 11, p. 181 – Line 17

- Trial Exhibits 581, 582, 582A

   c.    Rebuttal Position

26.  <u>EXHIBIT 582 – NERI</u>

    a.  <u>Proposed Findings of Fact</u>

- EHC directed Neri, by executed Confirmation of Change, to place temporary pavement at the intersections of Ashmun / Webster Streets and Ashmun / New Streets as part of the Block B work in late 1999.

- EHC authorized Neri, by executed Confirmation of Change, to perform the work necessary to place the temporary pavement.

- EHC confirmed that this work was extra by executing a Confirmation of Change.

- EHC directed that this work be performed on a time-and-materials basis.

- Neri tracked the labor and equipment hours relating to the placement of the base material for the temporary pavement.

- Neri is entitled to be paid $2,489.00 for this work.

    b.  <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 169 – Line 11 through p. 181 – Line 15

- Trial Exhibits 581, 582, 582A

    c.  <u>Rebuttal Position</u>

27.    EXHIBIT 555 – NERI 22-207-1

    a.    Proposed Findings of Fact

(In general, see Neri's Proposed Findings of Fact set forth in Section I.A. of its Rebuttal to EHC's Proposed Findings of Fact.)

- The Contract does not include as park of its scope excavation of unsuitable material from utility trenches.

- The Geo-Technical report does not indicate the existence of, and removal of, unsuitable material from utility trenches.

- EHC and Neri agreed to a unit price of $32.50 per cubic yard for unsuitable material for utility trenches.

- EHC directed Neri to have the EHC representative, Ivan Carlsen, review suspected unsuitable material and quantify it if determined to be unsuitable.

- EHC authorized Ivan Carlsen to execute tickets for extra work.

- Based solely on Mr. Carlsen's determination and quantification, EHC paid during the course of the Project for unsuitable excavation from utility trenches in other areas.

- Neri encountered unsuitable material in utility trench excavations for Units C24, 25, 26, 27 and 28.

- Neri tracked the quantity of unsuitable material removed from the utility trenches at these locations.

- EHC representative Ivan Carlsen reviewed the material, deemed it unsuitable, and confirmed the quantity.

- Having confirmed the quantity, Ivan Carlsen executed Neri's Receiving Ticket for the extra work.

- The confirmed quantity of unsuitable material removed from the locations total 128.18 cubic yards.

27.    <u>EXHIBIT 555 – NERI 22-207-1</u>  *(continued)*

    a.    <u>Proposed Findings of Fact</u>  *(cont.)*

- Neri is entitled to be compensated $4,165.85 for the removal of the material.

- Neri is also entitled to recover a markup totaling $748.69 for the work performed.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
        p. 181 – Line 18, p. 185 – Line 15

- Trial Transcript, June 14, 2005
        (Beckwith Testimony)

- Trial Transcript, September 22, 2005
        p. 15 – Line 8, p. 18 – Line 9

- Trial Transcript, October 5, 2005
        pp. 168-172

- Trial Exhibits 298, 550, 555, 555A, 555B, 662, 683, 684

    c.    <u>Rebuttal Position</u>

28.    EXHIBIT 556 – NERI 22-207-1-C

    a.    Proposed Findings of Fact

(In general, see Neri's Proposed Findings of Fact set forth in Section I.A. of its Rebuttal to EHC's Proposed Findings of Fact.)

- The Contract does not include as park of its scope excavation of unsuitable material from utility trenches.

- The Geo-Technical report does not indicate the existence of, and removal of, unsuitable material from utility trenches.

- EHC and Neri agreed to a unit price of $32.50 per cubic yard for unsuitable material for utility trenches.

- EHC directed Neri to have the EHC representative, Ivan Carlsen, review suspected unsuitable material and quantify it if determined to be unsuitable.

- EHC authorized Ivan Carlsen to execute tickets for extra work.

- Based solely on Mr. Carlsen's determination and quantification, EHC paid during the course of the Project for unsuitable excavation from utility trenches in other areas.

- Neri encountered unsuitable material in utility trench excavations for Units C19, 20, 21, 22 and 23.

- Neri tracked the quantity of unsuitable material removed from the utility trenches at these locations.

- Ivan Carlsen reviewed the material, deemed it unsuitable and confirmed the quantity tracked by Neri.

- Having confirmed the quantity Ivan Carlsen executed Neri's Receiving Ticket for the extra work.

- The confirmed quantity of unsuitable material removed from these locations totals 151.05 cubic yards.

28.    <u>EXHIBIT 556 – NERI 22-207-1-C</u>

    a.    <u>Proposed Findings of Fact</u>  *(cont.)*

- Neri is entitled to be compensated $4,909.12 for the removal of the material.

- Neri is entitled to recover a markup totaling $882.27 for the work performed.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 185 – Line 16, p. 188 – Line 6

- Trial Transcript, June 14, 2005
  (Beckwith Testimony)

- Trial Transcript, September 22, 2005
  p. 18 – Line 10, p. 20 – Line 13

- Trial Transcript, October 5, 2005
  pp. 168-172

- Trial Exhibit 298, 556, 662, 683, 684

    c.    <u>Rebuttal Position</u>

29.  EXHIBIT 557 – NERI 039-207-2-B

a.  Proposed Findings of Fact

- EHC required Neri to return to the completed Block B area to install granite curbing that it could not install during the completion of Block B in late 1999, because a telephone pole had not been relocated.

- To perform this work, Neri had to change its method of operation and hand-excavate for the installation of the curbing in this particular area.

- This work was extra to the Contract because Neri was required to incur increased costs to perform its work.

- As a result of being required to return to this location and change its method of installation, Neri was required to expend increased costs.

- Neri tracked the increased labor and equipment hours to perform this work.

- Neri priced up its labor and equipment hours using the approved labor and equipment rates.

- Neri is entitled to be compensated $1,880.00 for the increased costs associated with the installation of the granite curbing in this location.

- Neri is entitled to a markup of $239.02 for this work.

b.  Supporting Testimony and Trial Exhibits

- Trial Transcript, June 14, 2005
       p. 188 – Line 7, p. 191 – Line 25

- Trial Exhibits 557, 557A

c.  Rebuttal Position

30.    EXHIBIT 583 – NERI 074-207-2-B

    a.    Proposed Findings of Fact

- Subsequent to Neri's completion of work in Block B & C, granite curb and sidewalks were damaged.

- EHC required Neri to repair the damaged curb and sidewalk.

- Neri indicated that since the damage occurred subsequent to Neri's completion of work in the affected area, it was extra work and Neri expected to be compensated.

- The Contract, Paragraph 3.5, indicates that Neri is to get paid by EHC to repair work damaged by others.

- Neri performed the repair work and tracked its labor and equipment hours.

- Neri priced its labor and equipment hours using the rates approved by EHC.

- Neri is entitled to be compensated $2,079.21 for this repair work.

- Neri is entitled to a markup of $294.35 for this work.

    b.    Supporting Testimony and Trial Exhibits

- Trial Transcript, June 14, 2005
  p. 192 – Line 1, p. 194 – Line 20

- Trial Exhibit 1 (Paragraph 3.5), 583

    c.    Rebuttal Position

31.    <u>EXHIBIT 584 – NERI 076-207-3-C</u>

    a.    <u>Proposed Findings of Fact</u>

- Subsequent to Neri's completion of Block C, finished granite curb was damaged by SNET.

- EHC required Neri to repair the curb damaged by SNET.

- Neri indicated that this repair work was extra work for which it intended to be compensated.

- The Contract, Paragraph 3.5, provides that Neri is to get paid by EHC to repair work damaged by others.

- Neri performed the repair work and tracked its labor and equipment hours to perform the work.

- Neri priced its labor and equipment hours using the approved labor and equipment rates.

- Neri is entitled to be compensated $2,240.00 for the repair work to the damaged curb.

- Neri is entitled to be compensated $300.06 as markup for this repair work.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 194 – Line 21, p. 200 – Line 1

- Trial Exhibits 1 (Paragraph 3.5), 584, 584A

    c.    <u>Rebuttal Position</u>

32.    <u>EXHIBIT 585 - NERI 076-207-6-B</u>

    a.    <u>Proposed Findings of Fact</u>

- Neri was required by EHC to perform additional work relating to revisions made to parking lot entrance and apron at Block C.

- EHC directed Neri to perform the work associated with the revisions to the Block C parking lot entrance and apron.

- EHC agreed to compensate Neri for the work associated with the revisions to the Block C parking lot entrance and apron.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $5,951.60 for the work relating to this Exhibit.

- Neri is entitled to a markup of $758.26 for this work.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 15, 2005
  p. 16 – Line 13
  p. 13 – Lines 9-13
  p. 14 – Line 19 through p. 15 – Line 25

- Trial Transcript, June 28, 2005
  p. 110 – Line 14 through p. 112 – Line 14

- Trial Exhibit 585

    c.    <u>Rebuttal Position</u>

33.    <u>EXHIBIT 586 - NERI 207-115</u>

     a.    <u>Proposed Findings of Fact</u>

- Neri was required by EHC pursuant to a field directive to perform additional work relating to the loading and removal of metal posts, stumps, brush and other debris from the Project.

- EHC's Ivan Carlsen directed Neri to perform the work associated with the removal and loading of various debris at Webster Street and Canal Street.

- EHC agreed to compensate Neri on a time-and-materials basis for the work associated with the removal and loading of various debris at Webster Street and Canal Street.

- Neri tracked its labor and equipment hours to perform this work.

- EHC had previously indicated that Ivan Carlsen was authorized "to sign tickets to verify additional work."

- Ivan Carlsen signed Neri's Job Invoice acknowledging the labor and equipment hours submitted by Neri for this work.

- Neri completed the extra work referenced in this Exhibit.

- This work was authorized extra work.

- Neri is entitled to be compensated $1,496.36 for the work relating to this Exhibit.

- Neri is entitled to a markup of $187.94 for this work.

     b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 115, 2005
  p. 20 – Line 3, p. 17 – Lines 3-25

- Trial Transcript, September 22, 2005
       p. 48 – Line 19, p. 53 – Line 2

- Trial Exhibit 550, 586, 586A, and 586B

34.   EXHIBIT 587 - NERI 207-126

    a.    Proposed Findings of Fact

- Neri was required by EHC to perform additional work relating to the removal and disposal of stockpiled unsuitable materials on the Project at the east side of Canal Street.

- EHC authorized Neri to perform the work associated with the removal and disposal of unsuitable materials on the east side of Canal Street.

- EHC agreed to compensate Neri for the work associated with the removal and disposal of the unsuitable materials on the east side of Canal Street.

- Neri completed the additional work referenced in this Exhibit.

- Neri tracked the quantity of material while it was being removed.

- Neri is entitled to be compensated $4,351.50 for the work relating to this Exhibit.

- Neri is entitled to a markup of $782.05 for this work.

    b.    Supporting Testimony and Trial Exhibits

- Trial Transcript, June 15, 2005
  p. 25 – Line 4
  p. 20 – Line 11 through p. 23 – Line 12
  p. 23 – Line 15 through p. 24 – Line 13

- Trial Exhibit 587 and 587B

    c.    Rebuttal Position

35.    <u>EXHIBIT 588 - NERI 207-129</u>

    a.    <u>Proposed Findings of Fact</u>

- Neri was required by EHC to perform additional work relating to the installation of the anti-tracking pad at the staging area on the Project at K-1.

- EHC authorized Neri to perform the work associated with the installation of the anti-tracking pad at the K-1 (alternate) staging area.

- EHC agreed to compensate Neri for the work associated with the installation of the anti-tracking pad at the K-1 staging area.

- Neri supplied EHC with Neri and Tilcon invoice slips for said materials and equipment.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $1,097.88 for the work relating to this Exhibit.

- Neri is entitled to a markup of $155.60 for this work.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 15, 2005
  p. 28 – Line 17
  p. 25 – Line 19 through p. 26 – Line 25
  p. 27 – Line 4 through p. 28 – Line 14

- Trial Exhibit 588 and 588B

    c.    <u>Rebuttal Position</u>

36.    EXHIBIT 590 - NERI 207-138

    a.    Proposed Findings of Fact

- Neri was required by EHC to perform additional work relating to repairs of handicap ramp at Canal Street and New Street #2 based upon an on-site field revision.

- EHC authorized Neri to perform the work associated to the repair of the handicap ramp at Canal Street and New Street #2 based upon an on-site field revision.

- EHC agreed to compensate Neri for the work associated with the repair of the handicap ramp at Canal Street and New Street #2.

- Neri completed the additional work referenced in this Exhibit.

- Neri tracked the labor and equipment hours to complete this work and priced it up using the approved rates.

- Neri is entitled to be compensated $945.00 for the work relating to this Exhibit.

- Neri is entitled to a markup of $115.53 for this work.

    b.    Supporting Testimony and Trial Exhibits

- Trial Transcript, June 15, 2005
  p. 30 – Line 21, p. 29 – Lines 2-21

- Trial Transcript, June 28, 2005
  p. 121 – Line 11 through p. 123 – Line 9

- Trial Exhibit 590 and 590A

    c.    Rebuttal Position

37.    <u>EXHIBIT 592 - NERI 207-146</u>

a.     <u>Proposed Findings of Fact</u>

- Neri was required by EHC to perform additional work relating to the resetting of three (3) manholes on the Project at the intersection at Ashmun Street and New Street #1.

- EHC authorized Neri to perform the work associated with the resetting of the three (3) manholes.

- EHC agreed to compensate Neri for the work associated with the resetting of the three (3) manholes.

- Neri completed the additional work referenced in this Exhibit.

- Neri tracked the labor and equipment hours to perform this work and priced it up using the approved rates.

- Neri is entitled to be compensated $2,224.00 for the work relating to this Exhibit.

- Neri is entitled to a markup of $340.71 for this work.

b.     <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 15, 2005
  p. 36 – Line 4, p. 32 – Line 6 through p. 35 – Line 20

- Trial Exhibit 592

c.     <u>Rebuttal Position</u>

38.    EXHIBIT 595 - NERI 015-204

    a.    Proposed Findings of Fact

- EHC required Neri to perform additional work relating to the coring of existing brick sanitary laterals on the Project at Block G, Units 11-16 and 17-22.

- EHC authorized Neri to perform the additional work associated with the coring of the existing brick sanitary laterals at Units 11-16 and 17-22 in Block G.

- EHC agreed to compensate Neri at the rate of $291.00 for the work associated with the coring of existing single wall brick sanitary laterals in Units 11-16 and 17-22 in Block G.

- Ivan Carlsen approved and acknowledged the extra work performed and acknowledged that the work performed by Neri was double wall brick sanitary, thus approving the $437.00 price.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $874.00 for the work relating to this Exhibit.

- Neri is entitled to a markup of $157.08 for this work.

    b.    Supporting Testimony and Trial Exhibits

- Trial Transcript, June 15, 2005
  p. 40 – Line 3, p. 38 – Line 5 through p. 39 – Line 12

- Trial Transcript, September 22, 2005
  p. 53 – Line 6, p. 54 – Line 2

- Trial Exhibit 595 and 595A

    c.    Rebuttal Position

39.  **EXHIBIT 597 - NERI 015-204-G**

   a.  **Proposed Findings of Fact**

- EHC required Neri to perform additional work relating to the installation of sanitary chimneys/risers at existing laterals on Foote Street for Units 17-22 in Block G.

- EHC authorized Neri to perform the work associated with the installation of sanitary chimneys/risers at existing laterals on Foote Street for Units 17-22 in Block G.

- EHC agreed to compensate Neri at the rate of $153.00 each for the work associated with the installation of sanitary chimneys/risers at existing laterals on Foote Street for Units 17-22 in Block G.

- Ivan Carlsen approved and acknowledged the extra work performed by Neri.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $918.00 for the work relating to this Exhibit.

- Neri is entitled to a markup of $164.98 for this work.

   b.  **Supporting Testimony and Trial Exhibits**

- Trial Transcript, June 15, 2005
  p. 40 – Line 15, p. 40 – Line 21 through p. 41 – Line 12

- Trial Exhibit 595A, 597

   c.  **Rebuttal Position**

40.   <u>EXHIBIT 600 - NERI 019-204-1-G</u>

      a.    <u>Proposed Findings of Fact</u>

(In general, see Neri's Proposed Findings of Fact set forth in Section I.A. of its Rebuttal to EHC's Proposed Findings of Fact.)

- Neri was required by EHC to perform additional work relating to the removal and replacement of unsuitable material at the parking lot in Block G.

- EHC authorized Neri to perform the work associated with the removal and replacement of unsuitable material at the parking lot in Block G.

- LEA reviewed the material, determined that it was in fact unsuitable, and confirmed that the quantity of material was 747 cubic yards.

- EHC agreed to compensate Neri for the work associated with the removal and replacement of unsuitable material at the parking lot in Block G.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $ 30,625.00 for the work relating to this Exhibit.

      b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 115, 2005
  p. 44 – Lines 3-9, p. 42 – Line 5 through p. 45 – Line 14

- Trial Exhibit 600, 600A, 600B and 600C

      c.    <u>Rebuttal Position</u>

41.     <u>EXHIBIT 601 - NERI 019-204-2-G</u>

     a.     <u>Proposed Findings of Fact</u>

(In general, see Neri's Proposed Findings of Fact set forth in Section I.A. of its Rebuttal to EHC's Proposed Findings of Fact.)

- The excavation of unsuitable material from trenches was not part of the Contract scope.

- Neri was required by EHC to perform unsuitable excavation for a water service at New Street #4.

- EHC authorized Neri to perform the work associated with replacement fill for the water service in Block G at New Street #4.

- EHC agreed to compensate Neri for the work associated with replacement fill for the water service in Block G at New Street #4.

- Neri completed the additional work referenced in this Exhibit and tracked the quantity of unsuitable material.

- Neri informed EHC of this unsuitable material but EHC did not track it. Ivan Carlsen was off the Project at this point.

- At the rate of $32.50 per cubic yard, Neri is entitled to be compensated $1,925.00 for the work relating to this Exhibit.

     b.     <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 15, 2005
  p. 54 – Line 23
  p. 49 – Line 15 through p. 51 – Line 7
  p. 53 – Line 10 through p. 54 – Line 20

- Trial Exhibit 601 and 601A

     c.     <u>Rebuttal Position</u>

42.    <u>EXHIBIT 605 - NERI 045-204-1</u>

    a.    <u>Proposed Findings of Fact</u>

- Neri was required by EHC to perform additional work requiring a lump sum price adjustment for materials for Blocks E, F and G which were purchased in smaller quantities because of work done out of sequence.

- EHC authorized Neri to adjust pricing for materials purchased in smaller quantities for Blocks E, F and G because of work done out of sequence.

- EHC agreed to compensate Neri for the lump sum price adjustment for materials.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $1,533.64 for the work relating to this Exhibit.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 15, 2005
  p. 57 – Lines 14-15, p. 56 – Line 15 through p. 57 – Line 10

- Trial Exhibit 605

    c.    <u>Rebuttal Position</u>

43.    <u>EXHIBIT 607 - NERI 075-204-1-E</u>

    a.    <u>Proposed Findings of Fact</u>

- EHC required Neri to perform additional work relating to the construction of chimney foundations at existing foundations for E4, E6 and E13

- EHC authorized Neri to perform the work associated with the construction of chimney foundations at existing foundations for E4, E6 and E13.

- Neri tracked its labor and equipment hours to perform this work.

- Ivan Carlsen of EHC acknowledged the performance of this work and confirmed the labor and equipment hours.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $6,509.25 for the work relating to this Exhibit.

- Neri is entitled to a markup of $1,442.31 for this work.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 15, 2005
  p. 71 – Line 17, p. 70 – Line 7 through p. 71 – Line 10

- Trial Exhibit 607

    c.    <u>Rebuttal Position</u>

44.    <u>EXHIBIT 608 - NERI 204-56</u>

    a.    <u>Proposed Findings of Fact</u>

- Neri was required by EHC to perform additional work relating to the removal of stockpiled unsuitable materials from Block E.

- EHC authorized Neri to perform the work associated with the removal of the stockpiled unsuitable materials from Block E.

- EHC agreed to compensate Neri for the work associated with the removal of the stockpiled unsuitable material at Block E.

- Neri completed the additional work referenced in this Exhibit and tracked the quantity.

- EHC confirmed the quantity of stockpiled unsuitable material removed from Block E.

- Neri is entitled to be compensated $9,009.30 for the work relating to this Exhibit.

- Neri is entitled to a markup of $1,619.15 for this work.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 15, 2005
  p. 74 – Line 7, p. 72 – Line 6 through p. 74 – Line 25

- Trial Exhibit 608 and 608A

    c.    <u>Rebuttal Position</u>

45.    <u>EXHIBIT 609 - NERI 204-57</u>

   a.    <u>Proposed Findings of Fact</u>

- Neri was required by EHC to assist one of EHC's other contractors, and the EHC subcontractor to perform additional work relating to the exposing of all sewer laterals at New Street #4 to check for breakage and to allow for testing.

- EHC authorized Neri to perform the work associated with the exposing of all sewer laterals at New Street #4 to check for breakage and to allow for testing.

- EHC agreed to compensate Neri for the work associated with the exposing of all sewer laterals at New Street #4 to check for breakage and to allow for testing.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $1,668.23 for the work relating to this Exhibit.

- Neri is entitled to a markup of $224.91 for this work.

   b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 15, 2005
  p. 76 – Line 24, p. 75 – Line 23 through p. 76 – Line 21

- Trial Exhibit 609 and 609A

   c.    <u>Rebuttal Position</u>

46.     <u>EXHIBIT 610 - NERI 204-78</u>

    a.     <u>Proposed Findings of Fact</u>

- Neri was required by EHC to perform additional work relating to the lump sum adjustment for supplying extra fill needed for Block G grade changes.

- EHC authorized Neri to use a lump sum price adjustment for extra fill needed for Block G grade changes.

- EHC agreed to compensate Neri for the lump sum price adjustment for the extra fill needed for the Block G grade changes.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $5,212.50 for the work relating to this Exhibit.

    b.     <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 15, 2005
  p. 83 – Line 24
  p. 77 – Line 25 through p. 79 – Line 24
  p. 80 – Line 18 through p. 83 – Line 12

- Trial Exhibit 610

    c.     <u>Rebuttal Position</u>

47.    <u>EXHIBIT 611 - NERI 204-87</u>

a.    <u>Proposed Findings of Fact</u>

- Neri was required by EHC to perform additional work relating to the additional fill required for the grade changes in Block F at Units F5, F6, F7, F8, F11, F21 and F22.

- EHC authorized Neri to perform the work associated with the additional fill required for the grade changes in Block F at Units F5, F6, F7, F8, F11, F21 and F22.

- EHC agreed to compensate Neri for the work associated with the additional fill required for the grade changes in Block F at Units F5, F6, F7, F8, F11, F21 and F22.

- EHC compensated Neri for the additional stairs, but not the grade changes associated therewith.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $2,445.00 for the work relating to this Exhibit.

b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 15, 2005
  p. 85 – Line 14, p. 84 – Line 7 through p. 85 – Line 8

- Trial Transcript, October 5, 2005
  p. 167 – Line 3

- Trial Exhibit 611

c.    <u>Rebuttal Position</u>

48.    EXHIBIT 613 - NERI 204-131

    a.    Proposed Findings of Fact

- As a result of the negotiations and the executed Change Order relating to the Block G revisions, which affected Townhouses #1, #2 and #3, EHC and Neri agreed that Neri was only to remove the first 250 cubic yards of unsuitable material from the foundations as part of the revised Block G townhouse work.

- Thereafter, Neri would be compensated at the established rate of $35.00 per cubic yard for material beyond 250 cubic yards that had to be removed.

- Neri was required by EHC to excavate and refill for unsuitable materials at Block G affecting Townhouse #1 beyond 250 cubic yards.

- Neri completed the additional work referenced in this Exhibit.

- The quantity of material removed beyond 250 cubic yards was confirmed by EHC.

- Neri is entitled to be compensated $19,155.55 for the work relating to this Exhibit.

    b.    Supporting Testimony and Trial Exhibits

- Trial Transcript, June 15 2005
  p. 89 – Line 6, p. 86 – Line 12 through p. 89 – Line 10

- Trial Transcript, September 13, 2005
  p. 17 – Line 17, p. 18 – Line 25

- Trial Exhibit 613

    c.    Rebuttal Position

91

49.    <u>EXHIBIT 614 - NERI 204-134</u>

    a.    <u>Proposed Findings of Fact</u>

- Neri was required by EHC to perform additional work relating to the loading and hauling of excess fill from stockpile at Canal Street and Lock Street.

- EHC authorized Neri to perform the work associated with the loading and hauling of excess fill from stockpile at Canal Street and Lock Street.

- EHC agreed to compensate Neri for the work associated with the loading and hauling of excess fill from stockpile at Canal Street and Lock Street.

- Neri provided EHC with Neri and Midway Trucking invoices detailing the amount of loads of stockpiled material taken off-site.

- Neri completed the additional work referenced in this Exhibit.

- Neri is entitled to be compensated $5,340.00 for the work relating to this Exhibit.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 15, 2005
  p. 93 – Line 22, p. 92 – Line 16 through p. 93 – Line 18

- Trial Exhibit 614

    c.    <u>Rebuttal Position</u>

50.     EXHIBIT 615 - NERI 204-135

    a.     Proposed Findings of Fact

- EHC and Neri agreed that as part of Neri's revised scope for the Block G Townhouses, Neri was required to remove only the first 250 cubic yards pursuant to the Block G Change Order.

- Townhouse #2 was excavated subsequent to Townhouse #1.

- Neri had achieved the maximum of 250 cubic yards during the excavation of Townhouse #1.

- Neri was required to excavate additional unsuitable material at Townhouse #2 in Block G.

- Neri completed the additional work referenced in this Exhibit.

- Neri tracked the quantity of unsuitable material excavated from Townhouse #2.

- Neri is entitled to be compensated $25,025.00 for the work relating to this Exhibit.

    b.     Supporting Testimony and Trial Exhibits

- Trial Transcript, June 15, 2005
  p. 97 – Line 13, p. 96 – Line 10 through p. 97 – Line 7

- Trial Transcript, September 13, 2005
  p. 17 – Line 17, p. 18 – Line 25

- Trial Exhibit 615, 615A and 615B

    c.     Rebuttal Position

51.    <u>EXHIBIT 616 – NERI</u>

    a.    <u>Proposed Findings of Fact</u>

- EHC and Neri agreed that as part of Neri's revised scope of work for the Block G Townhouses, Neri was required to remove only the first 250 cubic yards pursuant to the Block G Change Order.

- Townhouse #3 was excavated subsequent to Townhouse #1.

- Neri had achieved the maximum of 250 cubic yards during the excavation of Townhouse #1.

- Neri was required to excavate additional unsuitable material at Townhouse #3 in Block G.

- Neri completed the work referenced in this Exhibit.

- Neri tracked the quantity of unsuitable material excavated from Townhouse #3.

- Neri is entitled to be compensated $26,145.00 for this Extra Work.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 15, 2005
  p.  89

- Trial Transcript, September 13, 2005
  p.  17 – Line 17, p. 18 – Line 25

- Exhibits 616, 616A

    c.    <u>Rebuttal Position</u>

52.    <u>EXHIBIT 603 – NERI 028-204-1-**G**</u>

a.    <u>Proposed Findings of Fact</u>

- EHC directed Neri to perform extra work relating to the installation of the underground electrical conduit at the Senior Building.

- EHC directed Neri to perform this extra work on a time-and-materials basis.

- Neri tracked its labor and equipment hours to perform this work.

- Neri submitted daily tickets setting forth the labor and equipment hours relating to this work.

- EHC representative Ivan Carlsen observed Neri performing this work.

- EHC representative Ivan Carlsen reviewed Neri's daily tickets and made changes, if necessary, based upon his observation of Neri's performance of the work.

- EHC representative Ivan Carlsen signed the daily tickets approving and acknowledging the labor and equipment hours submitted by Neri.

- EHC representative Ivan Carlsen signed daily tickets approving and acknowledging the extra work performed by Neri.

- Based upon the signed daily tickets approved by EHC representative Ivan Carlsen, Neri is entitled to be compensated $103,318.89 for this extra work.

- In January, 2001 EHC had a pending Change Order with the owner in the amount of $125,000.00 for this work.

52.     <u>EXHIBIT 603 – NERI 028-204-1-9</u>  *(continued)*

b.     <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 103 – Line 2, p. 110 – Line 15

- Trial Transcript, September 22, 2005
  p. 55 – Line 11, p. 58 – Line 5

- Trial Exhibits 603, 603A, 603B, 603C, 603D, 603E, 603F, 603G, 603H, 603I, 603J, 603K, 603L, 603M, 603N, 603O, 603P, 603Q, 603R, 603S, 603T, 603U, 603V, 603W, 603X, 603Y, 603Z, 603AA, 685

c.     <u>Rebuttal Position</u>

53.    <u>EXHIBIT 612 – NERI 204-130</u>

    a.    <u>Proposed Findings of Fact</u>

- Neri was required because of several revisions to perform extra work to the main entrance of the Senior Building.

- These revisions were ongoing on an almost daily basis during the performance of the work.

- Neri tracked its labor and equipment hours to perform the work associated with these revisions.

- Neri priced up its labor and equipment using the approved rates.

- Neri is entitled to be compensated $19,994.61 for this extra work.

- Neri is entitled to $3,237.29 in markup for this work.

    b.    <u>Supporting Testimony and Trial Exhibits</u>

- Trial Transcript, June 14, 2005
  p. 110 – Line 16, p. 121 – Line 20

- Trial Exhibit 612

    c.    <u>Rebuttal Position</u>

III.    <u>NERI'S TOTAL CLAIM</u>:

- Neri is entitled to an unpaid Contract balance of $905,333.00.

- Neri is entitled to payment for its Extra Work claims totaling $587,815.71 (Exhibit 660). (Exhibit 660 carries a total for the Extra Work claims of $632,413.71 which is now reduced because EHC has in its post-trial brief acknowleged $44,598.00 due for Extra Work on Exhibit 603. The balance of $58,720.89 for Exhibit 603 remains in the unpaid Extra Work section.)

- EHC is liable to Neri for $1,493,148.00, exclusive of prejudgment interest (Exhibit 660).

- Neri timely filed its claim against EHC's payment bond surety, American Casualty Co. of Redding PA ("American Casualty").

- American Casualty is liable to Neri for $1,493,148.00, exclusive of prejudgment interest.

- Prejudgment interest of $597,259.20, calculated from July 11, 2001 to July 11, 2005, is due Neri from EHC and American Casualty.

**NERI CONSTRUCTION, LLC**

_____
**John J. O'Brien, Jr. (CT04856)**
**PECK & O'BRIEN, P.C.**
433 Silas Deane Highway, Second Floor
Wethersfield, CT 06109-2115
Telephone: (860) 563-5500
Facsimile: (860) 563-5520
**Attorney for Defendant/Counterclaim Plaintiff**

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 28th day of February, 2006, the foregoing was

mailed to plaintiff's counsel of record:

Richard Twilley, Esq.
Pepe & Hazard LLP
Goodwin Square
225 Asylum Street
Hartford, CT 06103-4302

_____
JOHN J. O'BRIEN, JR.

06.02.27 Neri.Elm Haven.Neri's Rebuttal & Proposed Findings of Fact-Conclusions of Law to Elm Haven's Submittal