# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| ELM HAVEN CONSTRUCTION, L.P., | : | CIVIL NO. 3:01-CV-01307 (WIG) |
|     Plaintiff & Counterclaimed- | : | |
|     Defendant | : | |
| | : | |
| v. | : | |
| | : | |
| NERI CONSTRUCTION, LLC, | : | |
|     Defendant, Counterclaimant & | : | |
|     Third-Party Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN CASUALTY COMPANY OF | : | |
| READING, PA., | : | |
|     Third-Party Defendant | : | DECEMBER 11, 2007 |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO ALTER OR AMEND JUDGMENT

The Plaintiff, Elm Haven Construction, L.P. ("Elm Haven" or "Plaintiff") and

Third-Party Defendant, American Casualty Company of Reading, PA. ("American

Casualty"), for all the reasons set forth herein, respectfully request this Court pursuant to

Rule 59(e) to alter or amend the judgment entered on November 27, 2007 to correct its

analysis and calculation of certain back charges and extra work claims awarded to Elm

Haven and Neri Construction, LLC ("Neri").

## FACTS AND PROCEDURAL HISTORY

As set forth in the Court's November 16, 2007 Findings of Fact and Conclusions of Law (hereinafter the "Decision"), this case arises out of a dispute between Elm Haven and Neri related to a subcontract for site work on a housing project in New Haven, Connecticut.  After eighteen days of trial, the Court ultimately concluded that both parties breached the subcontract and, on November 27, 2007, awarded a net judgment in Neri's favor as compensation for certain work performed under the subcontract and work that was beyond the scope of the subcontract.  Elm Haven and American Casualty now respectfully request that the Court, pursuant to Federal Rule of Civil Procedure 59(e), alter or amend certain elements of the net damages awarded to Neri.  Specifically, Elm Haven requests that the Court correct its analyses and calculations underlying certain Elm Haven back charges and Neri extra work claims.

## ARGUMENT

### I.    Legal Standard

Rule 59(e) invests the district court with the power 'to rectify its own mistakes in the period immediately following the entry of judgment.'"  *Greene v. Town of Blooming Grove*, 935 F.2d 507, 512 (2d Cir. 1991) (*quoting White v. New Hampshire Dep't of Employment Security*, 455 U.S. 445, 450 (1982)).  "Although Rule 59(e) does not

FAS/29497/3/834941v1
12/11/07-HRT/

prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment . . . district courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 106 (2d Cir. 2004) (internal quotation marks omitted). The Court must amend the judgment entered against Elm Haven and American Casualty because the Court, based upon the undisputed facts, made mistaken or incorrect calculations concerning certain back charges awarded to Elm Haven and extra work claims awarded to Neri. As a result, the judgment should be altered or amended to correct this clear error of law or fact and to prevent manifest injustice.

II.     **The Judgment Should Be Amended in Order to Increase the Back Charge for Fine Grading and Paving by $31,658 to Accurately Reflect the Amount that Neri Would Have Paid Empire Paving.**

As set forth at pages 60 through 63 of the Court's Decision, the Court allowed Elm Haven's back charge for fine grading and paving work that was performed by Waters Construction in the fall of 2000, but limited the back charge to the sum of $148,081 as opposed to the sum of $182,283 that was sought by Elm Haven. The basis for the Court's ruling was that the back charge should be limited to the amount that Neri would have paid Empire Paving rather than the higher amount that Elm Haven paid to Waters Construction. (See Court's Decision, p. 63, ¶ 99). The Court obtained the

3

$148,081 figure from the "Subcontract Agreement" between Empire Paving and Hammonasset Construction (Ex. 635). However, the subcontract with Empire Paving is a "unit price" subcontract that sets forth estimated quantities of work. Based on the estimated quantities and the unit prices set forth in the Empire Paving subcontract, the "estimated contract amount" was for $148,080.85. (See Ex. 635, p. 2). Accordingly, in order to determine the amount that Neri would have actually paid Empire Paving, the Court must apply Empire Paving's unit prices to the actual quantities of work Neri would have performed under its contract with Elm Haven. The Court must also factor in the value of work items performed by Waters Construction that were not set forth in the subcontract with Empire Paving, but which were part of Neri's contract scope of work with Elm Haven.[1]

The actual quantities that Neri/Empire Paving would have performed are set forth in Waters Construction's charges to Elm Haven. (See Ex. 291, Tab 16). More particularly, Tab 16 contains the two invoices from Waters to Elm Haven dated November 28 and December 6, 2000, which set forth the actual quantities of work

---

[1] This particular analysis of the facts, as well as the factual analyses set forth in Parts III, IV and V of this Memorandum of Law, was not set forth in Elm Haven's Proposed Findings of Fact, Conclusions of Law and Responses to Defendant's Extra Work Claims ("Elm Haven's Proposed Findings") because the Court ended up not agreeing with Elm Haven's position on the points at issue. As such, the analyses set forth herein are a result of the Court's Decision on these issues. It would have been impossible for Elm Haven to have predicted how the Court was going to rule and then set forth such "fall back" analyses in its Proposed Findings.

4

performed by Waters. (See Bates Nos. EH03864 and EH03866).  Mr. Ford testified that

the work included in the Waters invoices was part of Neri's scope of work under its

contract with Elm Haven, and that these charges were reasonable.  (See J. Ford Direct

Testimony, June 7, 2005, Transcript pp. 90-94).  This testimony was not rebutted by

Neri.  Rather, the sole basis for Neri's defense was that it would have performed this

work with Empire Paving.

As more fully explained below, 1) the application of Empire Paving's unit prices

to the actual quantities of work at issue and 2) the factoring in of the cost to perform

Neri's contract work that was not covered in the Empire Paving subcontract, results in

charges totaling $179,739, and not the "estimated contract amount" of $148,080.85.

The judgment, therefore, should be amended to increase the back charge awarded by the

Court to Elm Haven by the sum of $31,658.  This increased sum of $31,658 that should

have been part of the back charge awarded by the Court against Neri is broken down as

follows:

First, the Empire Paving subcontract sets forth a unit price of $6.08 per square

yard to "fine grade and compact, install 2 inch binder" for Foote Street, New Street 3,

and New Street 4."  (See Ex. 635).  The actual square yardage for this work was 5,950

square yards as set forth in the invoice from Waters dated November 28, 2000 (Bates

No. EH03866).  Although this invoice references 5,950 square yards for "2 inch

5

roadways (binder) Foote Street/New Streets 1 & 2," the references to New Streets 1 and 2 was obviously a clerical error given that the work was performed on New Streets 3 and 4 (See J. Ford Direct Testimony, June 7, 2005, p. 90, referring to blue shaded streets on Ex. 7). As such, applying Empire's unit price of $6.08 to the actual quantity of 5,950 square yards, yields the sum of $36,176 for this particular work, which should be included in the back charge awarded by the Court against Neri.

Second, the Empire Paving subcontract sets forth a unit price of $10.53 per square yard to "fine grade and compact, install 2 inch binder and 1.5 inch finish course" for parking lots G, E and F. (See Ex. 635). The actual square yardage for this work was 4,178 square yards as set forth in the Waters' invoice dated November 28, 2000. (See reference to "1.5 inch parking lots 1 - 3 binder" at Bates No. EH03866). Accordingly, applying Empire Paving's unit price of $10.53 per square yard to the actual quantity of 4,178 square yards, yields a charge of $43,994 for this particular work item, which should be included in the back charge against Neri

Third, the Empire Paving subcontract set forth a unit price of $5 per square yard to "install 2 inch finish course" for Foote Street and New Streets 3 and 4. The actual quantities for this work was 5,950 square yards as set forth in the Water's invoice of November 28, 2000. (See reference to "2 inch roadways (top) Foote Street/New Streets 1 and 2). As referenced above, the reference to New Streets 1 and 2 was an obvious

6

clerical error since the work was actually performed on New Streets 3 and 4.  Applying

Empire's unit price of $5 per square yard to the actual quantity of 5,950 square yards,

yields a charge of $29,750 for this item of work, which should be included in the back

charge against Neri.

Fourth, Waters Construction performed certain work that was part of Neri's

scope of work with Elm Haven, but which was not referenced in Empire Paving's

subcontract.  Specifically, Waters' invoice dated December 6, 2000 (Bates No.

EH03864) sets forth a charge of $1,344 for paving of the "driveway (senior bldg.)," and

the invoice dated November 28, 2000 (Bates No. EH03866) sets forth a charge of

$12,573.40 for the remaining "driveways" at blocks E, F and G.  The total charge for

paving the driveways, therefore, was $13,917.40.  Neri did not dispute that the driveway

work performed by Waters was part of Neri's scope of work with Elm Haven.

Additionally, it is clear that this work was not set forth in the Empire Paving

subcontract.  Moreover, the only evidence of the reasonable cost to do the driveway

work is the charge of $13,917.40 from Waters to Elm Haven, which is a reasonable

charge for the work at issue.  (See John Ford Direct Testimony, June 7, 2005, Transcript

at pp. 91-94).  No evidence was offered by Neri that the charge for the driveway work

was unreasonable.  As such, the back charge to Neri for this work should include the

sum of $13,917.40.

7

Fifth, the Empire Paving subcontract did not contain pricing for the installation of the "tack coat," which is applied to the surface of the binder course before the finish or top course is placed. (See J. Ford Direct Testimony, June 7, 2005, pp. 90-91). The requirement for the tack coat is set forth at specification section 02510.3.1.D (See specification booklet, Ex. 3). This section provides as follows:

> Bituminous courses:  CONNDOT form 815, methods of construction of the surface course shall be in accordance with section 4.06, article 4.06.01, 4.06.02 and 4.06.03.  Placement will not be permitted unless the Contractor has a working asphalt thermometer on site. <u>Provide tack course on binder course before construction of wearing course</u>. [Emphasis supplied].

Water's invoice of December 6, 2000 (Bates No. EHO3864) sets forth a charge of $1,760.04 to install the tack coat for Gregory (also referred to as New Street 1), Foote, Webster and Ashmun Streets. (See J. Ford Direct Testimony, June 7, 2005, p. 92, referring to the charges on this invoice pertaining to the blue cross-hatched areas on Ex. 7). Waters' invoice dated November 28, 2000 (Bates No. EHO3866) sets forth a charge of $1,071 for the tack coat for Foote Street and New Streets 1 and 2.[2] The total charge for the tack coats, therefore, was $2,831.04. No evidence was offered by Neri that this charge was unreasonable or that the tack coat was not required. As such, the

---

[2] As previously stated, the reference to New Streets 1 and 2 was a clerical error in that there is no dispute that the work at issue was performed on New Streets 3 and 4.

FAS/29497/3/834941v1
12/11/07-HRT/

judgment should be amended to include $2,081.04 as part of the back charge against Neri.

Sixth, Waters also installed the 1.5 inch bituminous top course on Canal Street and billed Elm Haven $11,596 for this work based on a unit price of $4 per square yard and actual square yards of 2,899 square yards. (See invoice dated December 6, 2000, Bates No. 03864 and blue cross-hatched section of Canal St. depicted on Ex. 7). Neri's subcontract with Empire Paving did not set forth any pricing for the Canal Street top course. Nor did Neri offer any evidence that this work was not part of its scope of work with Elm Haven or that Waters' charges were unreasonable. Rather, Mr. Ford testified as to the reasonableness of this charge. (See J. Ford Direct Testimony, June 7, 2005, Transcript pp. 91-94). As such, the back charge should include $11,596 for this particular work item.

Seventh, Waters' invoice dated December 6, 2000 includes a charge for the installation of "2 inch bituminous top course (Gregory, Foote, Webster and Ashmun Streets)." As referenced above, Waters' work on Gregory (also known as New Street 1), Foote, Webster and Ashmun Streets is illustrated by the blue cross-hatched areas on Ex. 7. The actual square yardage for this work was 6,879 square yards. Although Waters charged Elm Haven the unit price of $5.30 to install the 2 inch bituminous top course, Empire Paving's subcontract contained a $5 per square yard charge to apply a 2

9

inch top course in other areas.  Accordingly, applying Empire Paving's unit price of $5 per square yard to the actual square yards for this work of 6,879 square yards, yields a charge of $34,395 that Neri would have paid Empire Paving had it performed this work. The judgment, therefore, should be amended to include the sum of $34,395 as part of the back charge against Neri.

Finally, Waters' invoice of December 6 sets forth a charge of $10,080 for the installation of a "leveling course" for the streets at issue.  (See J. Ford Direct Testimony, June 7, 2005, Transcript pp. 92-93).  The charge was based on 88.5 tons of material at the unit price of $80 per ton.  The necessity for this work was explained by Mr. Ford in his letter to Neri dated November 6, 2000.  (See Ex. 291, Tab 16, Bates No. EH03869).  No evidence was offered by Neri that this work was not required or that the charges for the leveling course were unreasonable.

In summary, the correct back charge amount that the Court should have awarded based upon the undisputed evidence, is broken down as follows:

| | |
|---|---|
| Fine grade, compact, install 2" binder for Foote Street, New St. 3 and New St. 4 | $36,176 |
| Fine grade, compact, install 2" binder and 1.5" finish course for parking lots G, E, F | $43,994 |

FAS/29497/3/834941v1
12/11/07-HRT/

| | |
|---|---|
| Install 2" finish course for Foote St., New St. 3 and New St. 4 | $29,750 |
| Driveways | $13,917 |
| Tack Coat | $2,831 |
| 1.5" bituminous top course Canal St. | $11,596 |
| 2" bituminous top course (Gregory, Foote, Webster and Ashmun) | $34,395 |
| Leveling course | <u>$7,080</u> |
| TOTAL | $179,739 |

Accordingly, there is a difference of $31,658 between the mistaken back charge of $148,081 that is set forth in the Court's Decision at page 63 versus the correct back charge amount of $179,739 that the Court should have awarded based upon the actual quantities and the actual scope of work that was performed on the Project for the fine grading and paving work at issue.[3] The Court, therefore, should alter or amend the judgment so as to reduce the net recovery to Neri by $31,658. As the judgment now stands, Elm Haven only receives a back charge for the estimated fine grading and paving

---

[3] Although the Empire Paving subcontract included unit pricing of $5.65/sy to "fine grade and compact, install 2 inch binder" for Webster, Dixwell, Ashmun and Admiral Streets, the work on these streets was not performed by Waters. Rather, this work was performed by Sweeney in the spring of 2001. Accordingly, these particular work items do not come into play in analyzing the appropriate back charge for work that was performed by Waters.

11

work performed on the Project, not the actual fine grading and paving work. The Court

must revise the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure

so as to prevent this manifestly unjust and clearly erroneous result. *See Munafo*, 381

F.3d at 106.


**III.    The Judgment Should Be Altered or Amended in Order to Decrease Neri's
Base Contract Recovery by $36,526 for Contract Work that Neri Did Not
Perform.**

The evidence is clear and undisputed that Neri did not perform certain site

concrete and handicap ramp work that was either part of its original scope of work under

the subcontract or for which it received approved change orders from Elm Haven. By

not recognizing these facts, the Court's decision awarded Neri the value of work that it

did <u>not</u> perform. As such, in order to avoid the manifest injustice and to correct clear

factual and legal errors, Neri's base contract recovery should be reduced by the sum o f

$36,526.

Elm Haven sought to back charge Neri the sum of $65,800 for removing and

replacing sidewalk and handicap ramps. This item is addressed at pages 66 through 67

of the Court's Decision. As more fully set forth in Elm Haven's Proposed Findings at

paragraph 203, page 89, Waters subcontracted this work to PDF Construction Company.

The work included various concrete related items as set forth on PDF's invoice to Elm

FAS/29497/3/834941v1
12/11/07-HRT/

Haven dated December 13, 2000. (See Ex. 291, Tab 19, Bates No. EH03917). As noted in this invoice, the work involved handicap ramps, granite curbing, concrete stairs and miscellaneous repairs. Further, explanations and descriptions of this work are set forth behind Tab 19 of Ex. 291, Bates Nos. EH03919 through EH03934.

In its Decision, the Court rejected this back charge on the basis that the handicap ramp work at issue was either the subject of a design change or a change order issued to Neri. As such, the Court "excused" Neri from the performance of this work because it supposedly would have been an extra to the subcontract had Neri performed it. Although Elm Haven obviously disputes the Court's finding that the handicap ramp work at issue would have entitled Neri to a change order, it does not seek to challenge this finding for purposes of this motion. Rather, the evidence is undisputed that there was remaining concrete, driveway apron, sidewalk and handicap ramp work that was part of Neri's original scope of work or the subject of approved change orders issued to Neri that Neri did not perform. PDF's work was not limited solely to the handicap ramps that were addressed by the Court in its decision. Rather, PDF's work included all of the remaining concrete items in the areas at issue. The concrete work items at issue, and the value for said items that Neri did not perform, are set forth as part of Ex. 376. More particularly, the relevant line items from Ex. 376 are as follows:

|                                                   |          |
|---------------------------------------------------|----------|
| Line 112, Site Concrete – New St. 3               | $ 7,140  |
| Line 116, Site Concrete – New St. 4               | $ 7,320  |
| Line 198, CO 16 Concr. drive – aprons             | $ 2,240  |
| Line 223, CO 40 Added cost to handicap ramps      | $13,515  |
| Line 230, CO 47 New St. 3 & 4, add sidewalk       | $ 6,311  |
| TOTAL                                             | $36,526  |

Elm Haven also directs the Court's attention to the "Comments" column set forth at Ex. 376 for these particular work items. Said "Comments" refer to line 239 of Ex. 376, which is the line that totals all of the Waters related back charges that Elm Haven was claiming against Neri. As stated above, the Waters' charges totaling $65,800 include the PDF charges for the concrete site work Neri did not perform.

The total sum of $36,526 referenced above was erroneously included in the Court's determination of the final contract price of $4,008,074, taking into account all change orders, deleted work and Neri extra work claims to which Elm Haven has agreed. (See paragraph 128 of the Court's Decision). But once the Court rejected the total back charge claim by Elm Haven of $65,800 for the PDF concrete work, it should have factored into its calculations of the so-called "final contract price" the value of Neri's original concrete scope items and approved change orders for concrete/handicap ramp work that Neri did not perform, which, as stated above, totals $36,526. By not

14

making this adjustment, the Court is effectively awarding Neri money for work that it did not perform.  Clearly, it could not have been the Court's intention to award money to Neri for work that it did not perform.  As such, the judgment should be amended or altered to correct such a mistake in law and fact and to prevent manifest injustice to Elm Haven.  *See Munafo*, 381 F.3d at 106.

IV.     **The Judgment Should Be Altered or Amended to Reduce Neri's Contract Recovery by $23,245.18 for the Undisputed Balance of Remaining Contract Work on Webster Street and Ashmun Street North that Neri Did Not Perform.**

The undisputed evidence confirms that the Court mistakenly included the sum of $23,245.18 in its calculation of Neri's contract "balance" due of $1,186,040 as referenced at paragraph 128 (pg. 70) of the Court's Decision.  It would be a mistake of law and/or fact for the Court to allow Neri to recover money for contract work it did not perform. Such an adjustment is necessary in order to avoid the manifest injustice of forcing Elm Haven to pay for work that Neri did not perform.

Elm Haven asserted a "cost-to-complete" amount of $302,736 for the costs incurred by Elm Haven to have Sweeney Excavation complete the Webster Street work in the spring of 2001. (See Court's Decision pp. 75-77).  The Court decided at paragraph 155 of its Decision that Neri was justified in not commencing work on Webster Street as

15

directed by Elm Haven because the CSO work had not been completed. Nevertheless, the Court recognized that the work was completed by another contractor (Sweeney), but it limited Elm Haven's recover to the amount it would have paid Neri to complete the work, which the Court found to be $168,268. The Court relied upon Ex. 376, line items 118 through 121, to arrive at the figure of $168,268 for Neri's value of the remaining work on Webster Street.

The Court also decided at paragraph 177 of the Decision that Neri was not responsible for Sweeney's costs on Ashmun North and, as such, the Court limited Elm Haven to a credit of $121,560 that Elm Haven would have supposedly paid Neri had Neri finished Ashmun North.

The Court, however, mistakenly failed to include appropriate sums from line items 221 and 222 of Ex. 376 in its calculation of the value of the remaining work on Webster Street and Ashmun Street that was not performed by Neri. Line items 221 or 222 pertain to approved change orders 204-38 (Ex. 272) and 204-39 (Ex. 274). The Court included the total value of these change orders in its determination of the adjusted contract price at paragraph 128 of the Decision. However, when the Court decided not to award Elm Haven's cost to Sweeney to perform this work, it should have reduced the remaining value for these approved change orders from the calculation of the "balance due" Neri of $1,186,040.

16

Change order 204-38 (Ex. 272) was for the total amount of $46,600, which involved various revisions to Foote Street, Webster Street and the removal of existing trees. As of the spring of 2001, when the Webster Street work was given to Sweeney, all of the work on Foote Street and the removal of the existing trees had been completed. The remaining value of Change Order 204-28 of $4,660 as set forth in Ex. 276, therefore, related only to Webster Street. As such, $4,660 should be deducted from Neri's contract recovery because Neri did not perform this remaining work.

With respect to Change Order 204-39 (Ex. 274), it involved the supply of a Grade C subbase material at Foote Street, New Street 3, New Street 4, Ashmun Street North, Admiral Street, Dixwell Avenue and Webster Street for a total sum of $51,153. Neri completed this work at Foote St., New St. 3 and New St. 4. The Court awarded Elm Haven the costs it incurred to have Sweeney complete Admiral and Dixwell Streets (*see* Court's Decision at ¶¶ 39 and 143). But because the Court did not award Elm Haven the sum it paid Sweeney to perform the Ashmun Street North and Webster Street portions of this work, the Court should have allocated that portion of the remaining $26,178 for Change Order 204-39 (*see* Ex. 376, Line Item 222) that related to Ashmun Street North and Webster Street (as compared to the other streets referenced in this change order) and then deducted that sum from Neri's contract recovery. Basic

17

mathematical analysis confirms that $18,585.18 of the total remaining value of $26,178

relates to Ashmun and Webster Street.  The math analysis is as follows:

The information from Change Order 204-39 confirms that it involved a total of

2,936 lineal feet of roadway.

| | |
|---|---|
| Foote Street from Sta 0+00 to 10+35 | 1,035 ft (1035-000) |
| New Street 3 from 0+14 to 3+32 | 318 ft (332-014) |
| New Street 4 from 0+14 to 3+42 | 328 ft (342-014) |
| Ashmun Street and Cul de Sac from 0+21 to 6+00 | 579 ft (600-021) |
| Admiral Street from 0+24 to 1+83 | 159 ft (183-024) |
| Dixwell Avenue 450 feet[4] | 30 ft |
| Webster Street from 6+03 to 10+90 | 487 ft (1090-603) |
| | |
| Total equivalent roadway length | 2,936 ft |

Change Order 204-39 also referenced a total quantity of material of 5,780 tons.

Therefore, the number of tons per foot of roadway is 5,780 tons/2,936 ft., or 1.97

tons/ft.

The Change Order also states that the unit price per ton for material is $8.85/ton.

Therefore, based on the Court's finding that Elm Haven's cost to complete should be

limited to how much Elm Haven would have paid Neri, an additional $18,585.18 should

---

[4] The change order references Dixwell Avenue as 450 feet, but the contract plans require that only a 2 foot wide section of Dixwell Avenue was to be worked on, as compared to the normal 30 feet for the other roadways.  Accordingly, the square foot area of this portion of Dixwell is 450 FT x 2FT = 900SF.  The Court must then divide the 900SF by 30FT wide to get the equivalent roadway length of 30 feet.

FAS/29497/3/834941v1
12/11/07-HRT/

be deducted from Neri's contract claim for work under Change Order 204-39 that Neri did not perform.

Ashmun St. 579 ft x. 1.97 tons/ft x $8.85/ton = $10,094.58

Webster St. 481 ft x. 1.97 tons/ft x $8.85/ton = $  8,490.00

$18,585.18

In summary, the amounts that should be deducted from Neri's contract recovery for the unperformed work is $4,660 for Change Order 204-38 and $18,585.18 for Change Order 204-39, or a total of $23,245.18.

**V.      The Judgment Should Be Altered or Amended in Order to Disallow Neri's Extra Work Claim for Plan Revisions at the Main Entrance to the Senior Building in Block G2.**

In its Decision, the Court found that Neri was entitled to recover on its extra work claim in the amount of $23,232 for additional work performed at the entrance area to the senior building due to plan revisions that were issued by the project engineer.  (*See* Decision at pp. 141-144, ¶¶ 306-310.)  However, Neri did not submit any evidence of the credit Elm Haven should receive against this extra work claim for the value of the work in this area based upon the original design documents that Neri did not perform. Neri, therefore, has not met its burden of proof with respect to the quantification of this extra work claim.  From the evidence on the record, it is not possible to determine the

19

value of the original scope of work for the entrance area without engaging in pure speculation. As such, Neri has not met its burden of proof with respect to establishing the value of this extra work claim. The claim, therefore, should have been rejected on the basis of inadequate quantification.

The only evidence offered by Neri concerning this work was comprised of the ten job invoices and the field notes attached to the job invoices covering the time prior from October 25 through November 17, 2000. (See Ex. 612). No evidence was offered that Neri performed any work in this area prior to October 25, 2000. Indeed, the evidence was to the contrary as testified to by Vincent Neri when he stated that he discovered conflicts that required the design changes when Neri first "got out to the site there." (Transcript, June 15, 2005, pp. 112-113).

Although the Court found that Neri proved entitlement to this extra work claim, no evidence exists by which to measure the value of this work with reasonable certainty given that Neri presented no evidence of the credit for the original scope that Neri did not perform. "Damages are an essential element of a [party's] proof before [that party] is entitled to recover." *Falco v. James Peter Assocs., Inc.*, 165 Conn. 442, 445 (1973). "To authorize a recovery . . . facts must exist and be shown by the evidence which affords a reasonable basis for measuring the [a party's] loss. The [party has] the burden of proving the nature and extent of the loss . . . . Mathematical exactitude in the proof

20

of damages is often impossible, but the plaintiff must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate . . . . Proof of damages should be established with reasonable certainty and not speculatively and problematically . . . . Damages may not be calculated based on a contingency or conjecture." *Carrano v. Yale-New Haven Hospital*, 279 Conn. 622, 650 (2006) (citation omitted) (internal quotation marks omitted). Neri has failed to remove the proof of damages beyond the realm of speculation. As this portion of the judgment has no basis in law or fact, the Court should amend or alter the judgment by reducing Neri's recovery on its extra work claims by $23,232.

## CONCLUSION

For all the foregoing reasons, Elm Haven and American Casualty respectfully request that the Court alter or amend the judgment by reducing the net damages awarded to Neri as follows:

1.  Increase the back charge awarded to Elm Haven to reflect actual quantities of fire grading and paving that Empire Paving would have performed.                                            $31,658

2.  Decrease the contract balance due Neri to reflect original contract scope of work and approved change order work

FAS/29497/3/834941v1
12/11/07-HRT/

related to site concrete that Neri did not perform.                    $36,526

3.  Decrease the contract balance due Neri to reflect the value of

remaining approved change order work on Ashmun Street

North and Webster Street that Neri did not perform.        $23,245.18

4.  Deny Neri's extra work claim for Block G2 revisions at main

entrance to senior building.                                          $23,232

Total Reduction to Damages    $114,661.18

Based upon such reductions to Neri's net damages, the Court's calculations

concerning prejudgment interest should be adjusted accordingly.

PLAINTIFF and THIRD-PARTY
DEFENDANT:
ELM HAVEN CONSTRUCTION, L.P. and
AMERICAN CASUALTY COMPANY OF
READING, PA


By:    ct04647
        Thomas G. Librizzi
        Federal Bar No.: ct04647
        Pepe & Hazard LLP
        Goodwin Square
        225 Asylum Street
        Hartford, CT  06103-4302
        Telephone No.: (860) 241-2680
        Facsimile No.:  (860) 522-2796
        TLibrizzi@pepehazard.com

FAS/29497/3/834941v1
12/11/07-HRT/

## <u>CERTIFICATION</u>

I hereby certify that on December 11, 2007, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

By:___ct04647_____
        Thomas G. Librizzi
        Fed. Bar No. ct04647
        Pepe & Hazard LLP
        Goodwin Square
        225 Asylum Street
        Hartford, CT  06103
        Phone:  (860) 522-5175
        Fax:  (860) 522-2796
        E-mail: tlibrizzi@pepehazard.com

FAS/29497/3/834941v1
12/11/07-HRT/