UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------X

ELM HAVEN CONSTRUCTION LIMITED          :
PARTNERSHIP,
                                        :
        Plaintiff & Counterclaimed-Defendant,
                                        :
        vs.                                         No. 3:01CV1307(WIG)
                                        :
NERI CONSTRUCTION, LLC,
                                        :
        Defendant, Counterclaimant &
        Third-Party Plaintiff,          :

        vs.                             :

AMERICAN CASUALTY COMPANY OF            :
READING, PA.,
                                        :
        Third-Party Defendant.
-------------------------------------------------------------X

<u>RULING ON PENDING MOTIONS TO AMEND JUDGMENT</u>

_____Pending before the Court are a Motion to Alter or Amend Judgment filed by Plaintiff,

Elm Haven Construction, L.P. ("Elm Haven") and Third-Party Defendant, American Casualty

Company of Reading, PA. ("American Casualty") [Doc. # 182] and a Motion to Amend filed by

Defendant/Counterclaim Plaintiff, Neri Construction, LLC ("Neri") [Doc. # 181].

        These motions have been filed pursuant to Rule 59(e), Fed. R. Civ. P., which vests the

trial court with the power "to rectify its own mistakes in the period immediately following the

entry of judgment." <u>White v. New Hampshire Dep't of Employment Security</u>, 455 U.S. 445, 450

(1982).   While Rule 59(e) motions should not be used to relitigate matters previously presented

to the court, <u>Bonded Concrete, Inc. v. D.A. Collins Construction Co.</u>, 29 Fed. Appx. 725 (2d Cir.

1

2002), under the circumstances of this case and after carefully considering the arguments raised by the parties, the Court finds that the motions should be granted in part and denied in part, as more fully set forth below.

<u>Elm Haven's Motion to Amend [Doc. # 182]</u>

Elm Haven has raised four grounds for altering the judgment in this case:

(1) that the judgment should be amended to increase the back charge to Elm Haven by $31,658.00 to reflect accurately the amount Neri would have paid Empire for the fine grading and paving work had Empire performed the work instead of Waters Construction;

(2) that the judgment should be reduced by $36,526.00 to reflect contract work performed by PDF that Neri did not perform;

(3) that the judgment should be reduced by $23,245.00, representing the balance of the remaining contract work on Webster Street and Ashmun Street North that Neri did not perform; and

(4) that the judgment should be reduced by $23,232.00 to disallow Neri's extra work claim for plan revisions at the main entrance of the Senior Building in Block G2.

<u>(1) Back Charge for Fine Grading and Paving Work</u>

Elm Haven asserts that the Court erred in limiting the back charge for fine grading and paving work performed by Waters Construction in the fall of 2000 to the sum of $148,081.00, the Empire Paving subcontract price (Ex. 635), which was based upon estimated quantities of work, as opposed to the actual quantities of work ultimately performed by Waters.  (<u>See</u>

2

FF&CL[1] at 60-63). Elm Haven maintains that the Court should have used the quantities of work actually performed by Waters and applied the Empire unit prices to these figures, yielding a subcontract price of $179,739.00 and resulting in a net reduction in the judgment of $31,658.00. (See Ex. 291, Tab 16). Neri responds, inter alia, that damages should be measured at the time of the breach, October 6, 2000, and that there is no correlation between the quantities of work performed by Waters, over which Neri had no control, and what might have been performed by Empire.

The Court appreciates the arguments presented by both sides on this issue. As argued by Elm Haven, the Empire subcontract was in fact based upon estimated quantities and contemplated that adjustments would be made based on "in-place" quantities. However, the estimated quantities turned out to be very close to the actual quantities reported by Waters. For example, the Empire subcontract estimated the total square yardage of quantities for Foote Street, New Street 3, and New Street 4 as 6,054 square yards. Waters installed 5,950 square yards of material. The Empire subcontract estimated the quantities for Parking Lots E, F, and G as 4,001 square yards. Waters installed 4,178 square yards of material. The Empire subcontract estimated the quantities for Webster, Dixwell, Ashmun, and Admiral Streets to be 6,880 square yards. Waters installed 6,879 square yards.[2] When the Empire unit prices are applied to the

---

[1] The Court's Findings of Fact and Conclusions of Law dated November 16, 2007, shall be referred to throughout as "FF&CL".

[2] The Court recognizes that the streets listed on the Waters subcontract are slightly different than on the Empire subcontract. However, the quantities of work are virtually identical.

actual quantities installed by Waters, the difference is only $705.00.[3]   The Court will allow a

reduction in the judgment of $705.00.

Elm Haven also seeks to increase the back charge for work that Waters performed, which

it claims was part of Neri's scope of work but not part of the Empire subcontract.   Those items

include:

$1,344.00 for the driveway at the Senior Building in Block G2;

$12,573.40 for the remaining driveways in Blocks E, F, and G;

$1,760.04 for the installation of a tack coat on Gregory Street, Foote Street, Webster

Street, and Ashmun Street;

$1,071.00 for the installation of a tack coat on Foote Street and New Streets 1 and 2;[4]

$11,596.00 for the installation of a 1.5 inch bituminous top course on Canal Street;

$34,395.00 for the installation of a two-inch bituminous top course on Gregory, Foote,

Webster, and Ashmun Streets; and

$10,080.00 for the installation of a "leveling course" for the streets at issue.

Neri responds that the Empire subcontract incorporated by reference Neri's Subcontract

with Elm Haven, as well as Empire's Quotation/Contract (Ex. 76A).   To the extent that the

subcontract called for a tack coat, for example, that was subsumed within Empire's bid, and no

---

[3]   The Court has arrived at that figure for Foote Street, New Street 3, and New Street 4 by
multiplying $11.08 (the unit prices for fine grading, compacting, installing 2-inch binder, and 2-
inch finish course) times the estimated quantity and then the actual quantity and calculating the
difference.   For Parking Lots E, F, and G, the Court multiplied the unit price of $10.53 by the
estimated and actual quantities and then calculated the difference.

[4]   Elm Haven states that the references to New Streets 1 and 2 throughout the Waters'
invoices were in error and that the correct references were to New Streets 3 and 4.

4

further adjustment is warranted.  The only item that was not included was the final leveling course, which Neri maintains was to be paid for by Elm Haven.

As Neri argues, the Empire subcontract provided that all work was to be performed in accordance with the Contract Documents, the Project Manual, the Subcontract between Elm Haven and Neri, inclusive of all Technical Specifications, General Conditions, Specifications and all Supplementary revisions/changes, and all addendums issued to the date of the Empire subcontract.   To the extent that any of these Contract Documents required the Empire subcontract work to be performed in a certain manner, those requirements were incorporated into the subcontract and no further adjustment to the subcontract price is warranted.  Indeed, the description of work set forth in the subcontract specifically indicated that it was "not limited to" the list of work set forth below.  (Ex. 635).  Additionally, the second page of the subcontract, Special Condition No. 09, stated that the proposal from Empire dated 08/07/2000 was part of the subcontract agreement.  (Ex. 635).

The Project Specifications required the application of a tack coat (Ex. 3, § 02510, Pt. 3, ¶ 3.1D), and, therefore, this was part of Empire's scope of work under the subcontract and should have been included in its proposal and pricing.  No adjustment will be made for additional charges by Waters for the application of a tack coat.

Likewise, the proposal from Empire specifically included the driveways for Parking Lots E, F, and G,  (Ex. 76A), and, thus, the installation of these driveways was included in the Empire subcontract.  However, the cost for these driveways at $4.50 per square yard for 1,062 square yards was not included in the estimated subcontract price.  The Court will allow an additional backcharge of $4,779.00, which is the amount Neri would have paid Empire to perform the

5

driveway work.

Elm Haven also seeks a backcharge of $11,596.00 for the installation of a 1.5-inch bituminous top course on Canal Street. It does not appear that this was included in the Empire subcontract and the Court will allow this additional backcharge.

The more difficult question relates to the leveling course provided by Waters. According to Vincent Neri, in 1999, Elm Haven had approved and executed a release with regard to the roadwork that had been completed around Blocks B and C. (V. Neri Testimony 6/17/05 at 16-17; Ex. 652). LEA and the testing lab had signed off on the roadwork performed by Neri except for a couple of minor areas. Neri maintains that any costs associated with the shimming of these roads should not be back charged to Neri (id. at 17-18) and points to Exhibit 652, a Neri Field Memorandum signed by Ivan Carlsen on December 17, 1999. The memorandum stated that the following items of work conformed to contract specification/requirements and therefore were acceptable and approved for payment: the subgrade, subbase, base, and bituminous concrete binder on Canal Street, New Street 1, New Street 2, and Ashmun Street at Block B. With respect to the finish course, it stated that the bituminous concrete binder had been inspected by EHC/LEA/Material Testing/City and was "approved to receive finish bituminous concrete courses with the exceptions of soft/yielding areas which may require remediation, (see letter dated 12/16/99 to Joe Gagnon/Tilcon from Ivan Carlsen E.H.C.) at no additional cost to Neri." (Ex. 652 (emphasis added)). Apparently, the remediation or shimming would have been accomplished through a leveling course. According to John Ford, however, the leveling course was the responsibility of Neri. (Ex. 291, Tab 16, EH03869).

Elm Haven now argues in its reply brief that the leveling course had nothing to do with

6

the "soft/yielding areas which may require remediation" that were the subject of the Neri Field Memorandum referenced above. (Elm Haven Reply Mem. at 4). However, contrary to the position now asserted, the letter from John Ford dated November 6, 2000, which is part of Elm Haven's trial exhibit in support of this backcharge (Ex. 291, Tab 16), specifically states that Elm Haven had determined that the binder pavement installed by Neri on Ashmun, Canal, Webster, and New Street 1 and 2, was "low in several areas" and required shimming to correct the deficiencies. (Ex. 291, Tab 16, No. EH03869).

The Court finds that Elm Haven is bound by Ivan Carlsen's signature on the letter which indicated that the remediation course would be at no cost to Neri. Moreover, this is an issue on which Elm Haven had the burden of proof. In light of the conflicting testimony, the Court finds that burden has not been met. Therefore, this extra charge will not be allowed.

The total adjustment that the Court will allow for this item is $17,080.00.

(2) Work Performed by PDF That Neri Did Not Perform

Elm Haven next seeks an adjustment of $36,526.00 for contract work performed by PDF, other than for the installation of the handicap ramps, which it claims Neri did not perform. Elm Haven maintains that the Court erroneously assumed that the entire $65,800.00 charged by PDF to Waters was for handicap ramp work, which the Court had disallowed. Rather, Elm Haven asserts that more than half of the work performed by PDF, or $36,526.00 worth of work, was for site concrete work that was part of Neri's original scope of work and was never performed by Neri. Neri responds that the evidence of record shows that it did perform this work, which was the included in Change Order Nos. 204-16, -40, and -47, and that no adjustment is warranted.

Elm Haven has derived this figure from Exhibit 376 as follows:

| | |
|---|---|
| Line 112, Site Concrete - New Street 3 | $7,140.00 |
| Line 116, Site Concrete - New Street 4 | $7,320.00 |
| Line 198, CO # 16[5] - Concrete Driveway Aprons | $2,240.00 |
| Line 223, CO # 40 - Added cost for Handicap Ramps | $13,515.00 |
| Line 230, CO # 47 - Add Sidewalk - New Streets 3 & 4 | $6,311.00 |
| TOTAL | $36,526.00 |

The last three items were part of change orders on Phase 1B that were not contested by Elm Haven. (See Elm Haven's Proposed Claims Grid). Indeed, the parties stipulated that "all change orders issued by Elm Haven to Neri, with the exception of Change Order No. 204-55, should be factored into the adjusted contract value." (Joint Trial Memorandum ¶ 5A.m.). The case was tried in accordance with this express stipulation, and the full amount of these change orders was factored into the adjusted Subcontract Price. The Court will not allow this issue to be litigated for the first time after trial and after judgment has entered. No reduction in the judgment will be made for work allegedly not performed by Neri that was part of these change orders.

The remaining two items are for site concrete work performed on New Streets 3 and 4. Part of the work performed by PDF for Waters did involved site concrete work on New Street 3. The back-up documentation to PDF's bill (Ex. 291, Tab 19, EH 03917-EH03935) shows that on November 6, 2000, PDF charged Waters $6,014.29 for pouring and finishing concrete stairs on New Street 3. It appears that this was general site work within Neri's original scope of work and

---

[5] This refers to change orders of Phase 1B, which were previously referenced as 204-16, 204-40, and 204-47.

the Court will allow a back charge in this amount. The Court cannot ascertain from PDF's back-up documentation what portion of any additional invoices related to concrete site work on New Streets 3 and 4, as opposed to the installation of handicap ramps. Therefore, the Court will disallow any further back charge.

### (3) Work on Webster and Ashmun Street That Neri Did Not Perform

Elm Haven argues that the undisputed evidence shows that the Court mistakenly included the sum of $23,245.18 in its calculation of the balance due Neri, which represents work never performed by Neri. Instead, Elm Haven asserts that this work was performed by Sweeney and cites lines 221 and 222 of Exhibit 376, which pertain to Change Order Nos. 204-38 and 204-39. Again, the parties stipulated that the full amount of these change orders was to be factored into the Subcontract Price. Elm Haven cannot now seek to litigate an issue that it stipulated to prior to trial. This requested adjustment is denied.

### (4) Neri's Extra Work Claim for Plan Revisions at the Main Entrance of the Senior Building

Lastly, Elm Haven urges the Court to disallow Neri's extra work claim in the amount of $23,232.00 for additional work performed at the entrance area to the Senior Building as a result of plan revisions issued by the Project Engineer. Elm Haven maintains that it is entitled to a credit for the value of the work that Neri would have performed based on the original plans, and since Neri failed to meet its burden in this respect, the entire extra work claim should be disallowed. The Court disagrees.

Elm Haven is correct that Neri had the burden of proving its extra work claims. The job invoice for the first day of work described this extra work as "redo work main entrance to Senior Building - Blk G," thus suggesting that some of the original work had already been performed

and was being redone.   (Ex. 612 (emphasis added)).   The Court found that Neri had carried its

burden of proving its entitlement to this extra work in the amount of $23,232.00, for which an

extra work order should have been issued by Elm Haven, but was not. To the extent that Elm

Haven believed that it should receive a credit against this extra work claim for work that was

within Neri's original scope of work, it had the burden of proof in this regard.  It was not Neri's

burden to disprove part of this claim.  Moreover, to disallow this extra work claim in its entirety

would be an overly harsh result, as the undisputed testimony established that most, if not all, of

this extra work was necessitated by design changes and revisions for which Elm Haven was

responsible, not Neri.  Accordingly, the Court will disallow this requested adjustment.

<u>Neri's Motion to Amend [Doc. # 181]</u>

     Neri raises two issues in its motion to amend:

     (1) that the credit given to Elm Haven for Neri's costs to complete Ashmun Street North

should have been $99,455.00, not $121,560.00, which was the figure used by the Court (<u>see</u>

FF&CL at 86, ¶ 177); and

     (2) that the Court erred in finding that Neri had agreed to a deduction of $14,885.00 for

the Canal Street sidewalk (east side) since this work was not shown as "outstanding" on Exhibit

668 (<u>see</u> FF&CL at 32, ¶ 94).

<u>(1) Ashmun Street North Credit</u>

     Neri contends that the balance-to-finish figure that should have been used by the Court is

$99,455.00, as set forth in Elm Haven's Exhibit 376, as opposed to $121,560.00, which the Court

took from Neri's Exhibit 627.  The Court agrees that the figure of $99,455.00 should have been

used.

Elm Haven defaulted Neri on the Ashmun Street North roadwork at the end of April 2001. Exhibit 627 bears a date of January 16, 2001, almost four months before Neri was defaulted on this particular sitework. Indeed, Exhibit 645, Elm Haven's Application and Certification for Payment to the Owner, which reflects significantly higher scheduled values than those carried by Neri,[6] indicated that, as of May 20, 2001, the balance-to-finish was only $105,147.00. Exhibit 376, on which Neri relies, was prepared by Elm Haven after this litigation had commenced and reflects a balance-to-finish, based upon Neri's original scheduled values, of $99,455.00. Although there was evidence in the record to support the credit originally allowed by the Court, the Court agrees that the $99,455.00 figure more accurately reflects Neri's balance to finish as of the default date. Thus, the credit to Elm Haven should be reduced by $22,105.00 plus the five percent (5%) mark-up for overhead, or $1,105.00, for a total reduction of $23,210.00.

<u>(2) Canal Street Sidewalk (East Side)</u>

As requested by the Court, following eighteen days of trial, Elm Haven provided the Court with a detailed claims grid, accompanied by 238 pages of proposed findings of fact and conclusions of law. The ninth item on the claims grid clearly indicates "Deleted Work - Canal Street - Sidewalk (east side) - (14,885)." On page four of the claims grid, Elm Haven supported this credit by referencing Subcontract provision Article 2.6, Exhibit 376, and Finding of Fact 22. Item 77 on Exhibit 376 indicates that Neri carried a scheduled value for this work of $29,770.00, that 50% or $14,885.00 of the work had been completed, with a balance to finish of $14,885.00.

---

[6] Presumably these figures reflected some of Sweeney's higher scheduled values. <u>See</u> Ex. 403.

Exhibit 376 then clearly states that this $14,885.00 worth of work had been deleted.  Neri never

contested this credit at trial or in its proposed Findings of Fact and Conclusions of Law.

Neri now points to Exhibit 668 as evidence that this work must have been completed

because it was not listed on this exhibit.  This exhibit, which was prepared by Neri, states that it

is a proposal that relates to the changes made at Block G and the credit for work at Block D.

The east side of Canal Street, however, is not part of Block D or Block G.  Therefore, the fact

that this work was not listed in this exhibit does not establish that the work had already been

performed.  The Court finds that the evidence supports its credit to Elm Haven of $14,885.00

and, therefore, denies Neri's motion to amend in this regard.

### Conclusion

In conclusion, for the reasons set forth above, Elm Haven's Motion to Alter or Amend the

Judgment [Doc. # 182] is granted in part and denied in part, and Neri's Motion to Amend [Doc. #

181] is granted in part and denied in part.  Elm Haven is entitled to a decrease in the Judgment in

the amount of $23,094.00;   Neri is entitled to an increase in the Judgment in the amount of

$23,210.00, resulting in a net increase of $116.00.  Accordingly, the Clerk is directed to prepare

an Amended Judgment in favor of Neri Construction, LLC, and against Elm Haven Construction,

L.P., and American Casualty Company of Reading, PA, jointly and severally, in the amount of

$772,915.00, plus prejudgment interest at the rate of ten percent (10%) per annum, or $211.76

per day, from January 1, 2002, until the date the Amended Judgment is entered.   Additionally,

the Stay of Proceedings to Enforce Judgment, entered on December 18, 2007, is hereby lifted.

In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil

Procedure 73, the parties in this case consented to have the Undersigned conduct any and all

proceedings in this case, including the entry of a final Judgment.  Therefore, this is not a recommended ruling.


   SO ORDERED, this   17th   day of January, 2008, at Bridgeport, Connecticut.


   /s/ *William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge